# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**EMILY LEE, JAMIE HOAGLAND,** and
**ABBEY HOAGLAND**, Individually and as Co-
Administrators of the **ESTATE OF MALINDA
HOAGLAND**
c/o Bosworth Law LLC
123 South Broad Street, Suite 1100
Philadelphia, PA 19109

                             *Plaintiffs,*

   v.

**COUNTY OF CHESTER**
313 West Market Street
West Chester, PA 19380

   *And*

**CHESTER COUNTY CHILDREN, YOUTH
& FAMILIES**
601 Westtown Road, Suite 310
West Chester, PA 19380

   *And*

**COMMONWEALTH OF PENNSYLVANIA**
801 Market Street, 6th Floor
Philadelphia, PA 19107

   *And*

**COUNTY OF MONROE**
Administrative Building
One Quaker Plaza
Stroudsburg, PA 18360

   *And*

**MONROE COUNTY OFFICE OF
CHILDREN & YOUTH**
730 Phillips Street
Stroudsburg, PA 18360

**CIVIL ACTION NO. 2:24-cv-4180**

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**(continued on next page)**

*And*

**COATESVILLE AREA SCHOOL DISTRICT**
3030 C G Zinn Road
Thorndale, PA 19372

*And*

**NORTH BRANDYWINE MIDDLE SCHOOL**
256 Reeceville Road
Coatesville, PA 19320

*And*

**UPPER DUBLIN SCHOOL DISTRICT**
1580 Fort Washington Avenue
Maple Glen, PA 19002

*And*

**HORACE S. SCOTT MIDDLE SCHOOL**
800 Olive Street
Coatesville, PA 19320

*And*

**ADELAIDE GRACE**, in her official and
individual capacities,
730 Phillips Street
Stroudsburg, PA 18360

*And*

**EVE LARGE**, in her official and individual
capacities,
601 Westtown Road, Suite 310
West Chester, PA 19380

*And*

**DOUG WAEGEL**, in his official and individual
capacities,
601 Westtown Road, Suite 310
West Chester, PA 19380

*And*

**CATHERINE VAN VOOREN**, in her official and individual capacities,
3030 C G Zinn Road
Thorndale, PA 19372

*And*

**TOMAS HANNA**, in his official and individual capacities,
3030 C G Zinn Road
Thorndale, PA 19372

*And*

**KATHRYN LAMOTHE**, in her official and individual capacities,
800 Olive Street
Coatesville, PA 19320

*And*

**LAURIE SMITH**, in her official and individual capacities,
1580 Fort Washington Avenue
Maple Glen, PA 19002

*And*

**STEVEN M. YANNI**, in his official and individual capacities,
1580 Fort Washington Avenue
Maple Glen, PA 19002

*And*

**EUGENIA ROBERTS**, in her official and individual capacities,
256 Reeceville Road
Coatesville, PA 19320,

*Defendants.*

3

## AMENDED COMPLAINT

Plaintiffs, Emily Lee, Jamie Hoagland, and Abbey Hoagland, individually and as Co-Administrators of the Estate of Malinda Hoagland, by and through their attorneys, Thomas E. Bosworth, Esq. of Bosworth Law LLC, allege as follows:

## INTRODUCTION

1.     This case arises out of the unspeakable torture, starvation, physical abuse, sexual abuse, psychological torment, and death of Malinda Hoagland at the tender age of 12. The affirmative actions and conduct of the defendants, schools, educators, and youth services workers responsible for Malinda's safety and wellbeing, resulted in Malinda being placed in a home environment that was remarkably dangerous and which subjected Malinda to the daily risk of serious bodily injury and death at the hands of a known, convicted child abuser. Shockingly, the defendants had actual knowledge that Malinda was residing with a known, convicted child abuser. Nevertheless, the defendants repeatedly released Malinda into the care of this person—who was not related to Malinda—which allowed Malinda to be serially abused, tormented, and ultimately killed.  These defendants saw the signs of Malinda's abuse with their own eyes: black eyes, unexplained injuries, red marks, and severe weight loss, to name a few.

2.     The nature of the abuse Malinda endured was horrific. For example, she was forced to strip naked in this adult's bedroom, chained to furniture, beaten with a belt, forced to have lotion rubbed all over her body by this adult, kicked, punched, screamed at, laughed at, forced to sleep on the floor, and intentionally starved. Adding insult to injury, much of this abuse was filmed by Malinda's perpetrators on numerous surveillance cameras inside this house of horrors. In addition to affirmatively placing and releasing Malinda into a known dangerous home environment over and over again, the defendants also enacted and utilized policies, customs, and practices with

4

regard to reporting and investigating child abuse that were woefully inadequate and unlawful. These policies, customs, and practices directly resulted in Malinda's abuse, starvation, torture, and ultimate death.

3.      An autopsy performed on Malinda Hoagland following her death concluded that Malinda died from starvation and multiple blunt force injuries. The autopsy revealed approximately 75 bruises throughout Malinda's body as well as contusions, ulcers, and pressure sores. The autopsy further revealed injuries to Malinda's brain, heart, lungs, liver, pancreas and intestines. Healing fractures of the pelvic bone, lower vertebrae, right forearm, and both thigh bones were discovered on autopsy.

4.      The civil action filed here is brought to obtain the full and complete measure of damages recoverable as a direct result of the atrocious and reprehensible disregard exhibited by the defendants to this poor child, who no longer has a voice.

## PARTIES

5.      Plaintiff, Emily Lee, sister of Malinda Hoagland, is an adult citizen and resident of the Commonwealth of Pennsylvania, and can be contacted through her counsel, Thomas E. Bosworth, Esquire of Bosworth Law LLC, 123 South Broad Street, Suite 1100, Philadelphia, Pennsylvania 19109.

6.      Plaintiff, Jamie Hoagland, sister of Malinda Hoagland, is an adult citizen and resident of the Commonwealth of Pennsylvania, and can be contacted through her counsel, Thomas E. Bosworth, Esquire of Bosworth Law LLC, 123 South Broad Street, Suite 1100, Philadelphia, Pennsylvania 19109.

7.      Plaintiff, Abbey Hoagland, sister of Malinda Hoagland, is an adult citizen and resident of the Commonwealth of Pennsylvania, and can be contacted through her counsel, Thomas

E. Bosworth, Esquire of Bosworth Law LLC, 123 South Broad Street, Suite 1100, Philadelphia, Pennsylvania 19109.

8.      Plaintiffs, Emily Lee, Jamie Hoagland, and Abbey Hoagland are co-administrators of the Estate of Malinda Hoagland. *See* Final Decree of Court of Common Pleas of Chester County (7/8/24), attached as Exhibit "A."

9.      Defendant, County of Chester, is a county within the Commonwealth of Pennsylvania with its principal place of business located at 313 West Market Street, West Chester, Pennsylvania 19380.

10.      Defendant, Chester County Children Youth & Families ("Chester County CYF"), is a department and agency within Chester County with its principal place of business located at 601 Westtown Road, Suite 310, West Chester, Pennsylvania 19380.

11.      Defendant, Commonwealth of Pennsylvania ("Pennsylvania"), is a commonwealth within the United States of America. Defendant, Pennsylvania, is responsible for the oversight, management, funding, staffing, and operations of ChildLine, which Pennsylvania operates through Pennsylvania's Department of Human Services, with a principal place of business located at 801 Market Street, 6th Floor, Philadelphia, Pennsylvania 19107.

12.      Defendant, County of Monroe, is a county within the Commonwealth of Pennsylvania with its principal place of business located at Administrative Building, One Quaker Plaza, Stroudsburg, Pennsylvania 18360.

13.      Defendant, Monroe County Office of Children & Youth ("Monroe County OCY"), is a department and agency within Monroe County with its principal place of business located at 730 Phillips Street, Stroudsburg, Pennsylvania 18360.

14.     Defendant, Coatesville Area School District ("CASD"), is a municipal corporation or other corporate entity organized in and incorporated in the Commonwealth of Pennsylvania, with its principal place of business located at 3030 C G Zinn Road, Thorndale, Pennsylvania 19372.

15.     At all times material hereto, defendant CASD has owned, operated, managed, staffed, overseen, supervised, controlled, and maintained responsibility for and over North Brandywine Middle School and Horace S. Scott Middle School.

16.     Defendant, North Brandywine Middle School, is a private corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 256 Reeceville Road, Coatesville, Pennsylvania 19320.

17.     Defendant, Horace S. Scott Middle School, is a private corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 800 Olive Street, Coatesville, Pennsylvania 19320.

18.     Defendant, Upper Dublin School District, is a municipal corporation or other corporate entity organized in and incorporated in the Commonwealth of Pennsylvania, with its principal place of business located at 1580 Fort Washington Avenue, Maple Glen, Pennsylvania 19002.

19.     Defendant, Adelaide Grace, in both her individual and official capacities, is and was at all times material hereto, the Director of Monroe County Office of Children & Youth, with an address at 730 Phillips Street, Stroudsburg, Pennsylvania 18360.

20.     At all times relevant herein, Adelaide Grace acted under the color of the laws, statutes, and regulations of the Commonwealth of Pennsylvania

21.     Defendant, Eve Large, in both her individual and official capacities, is and was at all times material hereto, the Director of Chester County Children, Youth & Families, with an

7

address at 601 Westtown Road, Suite 310, West Chester, PA 19380.

22.    At all times relevant herein, Eve Large acted under the color of the laws, statutes, and regulations of the Commonwealth of Pennsylvania.

23.    Defendant, Doug Waegel, in both his individual and official capacities, was at all times material hereto, the Director of Chester County Children, Youth & Families, with an address at 601 Westtown Road, Suite 310, West Chester, PA 19380.

24.    At all times relevant herein, Doug Waegel acted under the color of the laws, statutes, and regulations of the Commonwealth of Pennsylvania.

25.    Defendant, Catherine Van Vooren, in both her individual and official capacities, is and was at all times material hereto, the Superintendent of the Coatesville Area School District, with an address at 3030 C G Zinn Road, Thorndale, PA 19372.

26.    At all times relevant herein, Catherine Van Vooren acted under the color of the laws, statutes, and regulations of the Commonwealth of Pennsylvania.

27.    Defendant, Tomas Hanna, in both his individual and official capacities, was at all times material hereto, the Superintendent of the Coatesville Area School District, with an address at 3030 C G Zinn Road, Thorndale, PA 19372.

28.    At all times relevant herein, Tomas Hanna acted under the color of the laws, statutes, and regulations of the Commonwealth of Pennsylvania.

29.    Defendant, Kathryn Lamothe, in both her individual and official capacities, was at all times material hereto, the school Principal at Horace C. Scott Middle School 6th Grade Center, with an address at 800 Olive Street, Coatesville, PA 19320.

30.    At all times relevant herein, Kathryn Lamothe acted under the color of the laws, statutes, and regulations of the Commonwealth of Pennsylvania.

31.    Defendant, Laurie Smith, in both her individual and official capacities, is and was

at all times material hereto, the Superintendent of the Upper Dublin School District, with an address at 1580 Fort Washington Avenue, Maple Glen, PA 19002.

32.     At all times relevant herein, Laurie Smith acted under the color of the laws, statutes, and regulations of the Commonwealth of Pennsylvania.

33.     Defendant, Steven M. Yanni, in both his individual and official capacities, was at all times material hereto, the Superintendent of the Upper Dublin School District, with an address at 1580 Fort Washington Avenue, Maple Glen, PA 19002.

34.     At all times relevant herein, Steven M. Yanni acted under the color of the laws, statutes, and regulations of the Commonwealth of Pennsylvania.

35.     Defendant, Eugenia Roberts, in both her individual and official capacities, was at all times relevant hereto, the school Principal at North Brandywine Middle School, with an address at 256 Reeceville Road, Coatesville, PA 19320.

36.     At all times relevant herein, Eugenia Roberts acted under the color of the laws, statutes, and regulations of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

37.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiffs' claims arise under The Fourteenth Amendment to the United States Constitution, The Eighth Amendment to the United States Constitution, and 42 U.S.C. § 1983.

38.     This Court has subject matter jurisdiction over all state-law claims pled in this action pursuant to 28 U.S.C. § 1367.

39.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants can be found in, reside, and/or transact business in this District.

40.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events and/or omissions giving rise to the claims occurred in this District.

## **FACTS**

41.　Malinda Hoagland died on May 4, 2024, at the tender age of 12, after being subjected to years of torture, physical abuse, sexual abuse, violence, humiliation, and psychological torment.

**A.　Defendants knew that Cindy Warren, a known and convicted-criminal child abuser, was living with Malinda Hoagland full-time in violation of an existing custody agreement.**

42.　Cindy Warren, who is not related in any way to Malinda Hoagland, began dating Malinda Hoagland's father, Rendell Hoagland, in or around the Fall of 2019. At this time, Malinda was 8 years old.

43.　In December 2000, a 2 year-old child who was living with Cindy Warren was transported to Pocono Medical Center with a slew of traumatic injuries, including brain bleeds, bruises throughout the child's body, and a tear extending from the child's vagina to the child's anus. After arrival to Pocono Medical Center, this child was transferred to Children's Hospital of Philadelphia, where the child ultimately died from these injuries.

44.　At the time of this child's death, defendants, Pennsylvania, Monroe County and Monroe County OCY were monitoring this child's wellbeing due to safety concerns with the child in Cindy Warren's care.

45.　In 2007, Cindy Warren was criminally charged by Monroe County for abusing her 3 year-old son after a neighbor called police with concerns that the child had extensive bruising throughout the child's body.

46.　A law enforcement investigation ensued, which revealed that Cindy Warren participated in the serial beating, starvation and forced exercise of this child.

47.　Specifically, according to a phone call to Monroe County OCY on January 5, 2007, the 3 year-old child was "covered in bruises" and "doesn't talk because he is abused, is locked in

a bedroom for days at a time," and "has not been seen outside for day."

48.     According to this same phone call to Monroe County OCY, this child had been "locked outside his residence while the older children are at school" and "the older children were allowed to physically beat the 3 year old male child."

49.     On January 5, 2007, when detectives visited Cindy Warren's residence, they encountered this 3 year-old child who they described as "only wearing his underwear" and covered in "multiple bruises, lacerations, ligature marks and a burn mark" as well as "multiple contusions to the victim's head."

50.     During this investigation into the 3 year-old child in 2007, Warren told law enforcement that her then-husband had caused the death of the aforementioned 2 year-old child back in December 2000. Cindy Warren admitted to authorities that she played a role in the death of the aforementioned 2 year-old child in December 2000.

51.     In March 2007, Cindy Warren pled guilty to the felony crime of Endangering Welfare of Children in violation of 18 Pa. C.S. § 4304. As a result, Warren was sentenced to a maximum of 7 years in prison.

52.     As of 2007, defendants, Pennsylvania, Monroe County, Monroe County OCY, and Adelaide Grace were aware of and knew that Cindy Warren was an unfit and unsafe person to be around any minor child by virtue of her guilty plea to Endangering the Welfare of Children, the facts underlying that conviction (*i.e.* starvation, beating, and forced exercise of a child), and her admitted prior involvement in the death of the aforementioned 2 year-old child in December 2000.

53.     As Director of Monroe County OCY in 2007, defendant, Adelaide Grace had knowledge that Cindy Warren was an unfit and unsafe person to exercise control or to reside with any minor child by virtue of Cindy Warrant's guilty plea.

54.     As of 2007, defendants, Pennsylvania, Monroe County, Monroe County OCY, and

11

Adelaide Grace knew and were subjectively aware of the fact that Cindy Warren posed a substantial risk of bodily harm and death to any child under Cindy Warren's care, custody, supervision, or control.

55.     As of 2007, defendant Adelaide Grace, the Director of Monroe County OCY, held knowledge and was aware that Cindy Warren was a threat to the physical, emotional, and psychological safety of children and posed a substantial and imminent risk of severe bodily harm and death to any child under Cindy Warren's care, custody, supervision, or control.

56.     In Fall 2019, Malinda Hoagland's biological father, Rendell Hoagland, met and began to date Cindy Warren. Soon after meeting, Rendell Hoagland and Cindy Warren began to reside together in Monroe County, Pennsylvania.

57.     At the time that Rendell Hoagland and Cindy Warren met and began dating, defendants, Pennsylvania, Monroe County, Monroe County OCY, and Adelaide Grace knew about the presence of Cindy Warren in the life of Malinda Hoagland—who was then 8 years old—because there was already an existing and open case being handle by Monroe County and Monroe County OCY involving a custody dispute between Rendell Hoagland and Malinda Hoagland's biological mother.

58.     By virtue of the 2019 custody action between Rendell Hoagland and Malinda Hoagland's mother, defendants, Monroe County, Monroe County OCY, and Adelaide Grace learned that Cindy Warren was living with Malinda Hoagland, who was 8 years old at the time.

59.     As of 2019, defendants, Monroe County, Monroe County OCY, and Adelaide Grace, knew that Malinda Hoagland, an 8 year-old child was living with, supervised by, and under the care of an admitted and convicted child abuser: Cindy Warren.

60.     In 2019, Adelaide Grace, acting through her individual and official capacities, held actual knowledge that Cindy Warren was a convicted child abuser and posed a severe threat of

imminent harm to Malinda Hoagland.

61.     In 2019, Adelaide Grace, acting through her individual and official capacities, knowingly and intentionally ignored these clear warnings and took affirmative action with callous indifference to Malinda Hoagland's life by intentionally placing Malinda Hoagland under the direction, control, and home of an unsupervised convicted child abuser, Cindy Warren.

62.     In 2019, defendants, Monroe County, Monroe County OCY, and Adelaide Grace took affirmative action, through implementation of custody procedures and parameters overseen and managed by Monroe County OCY and Adelaide Grace, of intentionally placing Malinda Hoagland in a home where defendants, Monroe County, Monroe County OCY, and Adelaide Grace, knew that Malinda Hoagland was at a substantial risk of serious bodily injury and death by living with Cindy Warren.

63.     The affirmative and intentional actions of defendants, Monroe County, Monroe County OCY, and Adelaide Grace, of placing Malinda Hoagland in a home under the care of Cindy Warren rendered Malinda Hoagland more vulnerable to danger than had Monroe County OCY and Adelaide Grace not acted, through implementation of custody procedures and parameters, to place Malinda Hoagland in a home with Cindy Warren.

64.     The affirmative and intentional actions of defendant, Adelaide Grace, acting in her personal and individual capacity, of placing Malinda Hoagland in a home under the care of Cindy Warren was an intentional abuse of her power while acting under the color of Pennsylvania law to place Malinda Hoagland under the supervision, control, and immediate proximity of a known convicted child abuser and to inflict traumatic harm, torture, and death upon a young child.

65.     The affirmative and intentional actions of defendants, Monroe County, Monroe County OCY, and Adelaide Grace of placing Malinda Hoagland in a home under the care of Cindy Warren constituted a misuse of these defendants' authority which increased the risk of danger to

Malinda Hoagland.

66.     On July 27, 2000, Rendell Hoagland and Malinda Hoagland's biological mother entered into a Custody Agreement regarding Malinda Hoagland which stated, among other things, that:

> The minor child shall not be left in the care of Cindy Warren, Father's fiancé, for any period of time exceeding one (1) hour unless expressly agreed upon by Mother and Father through written communication. For each year that passes from the date of this stipulation, Cindy Warren shall be permitted an additional two (2) hours in which she shall be permitted to supervise the minor child without another individual present.

67.     At all times material hereto, defendants, Chester County, Chester County CYF, Monroe County, Pennsylvania, Monroe County OCY, Adelaide Grace, Eve Large, and Doug Waegel, knew of the existence of this custody agreement because they had each viewed this custody which was available to them on the official court docket and within their internal computer system(s).

68.     Defendants, Monroe County OCY and Monroe County, were the arbiters, enforcers, and overseers of this custody provision. By virtue of their authority and affirmative acts in enforcing and implementing this provision of the agreement, these defendants knowingly placed Malinda Hoagland in a home with Cindy Warren. Based on the severe risk of danger posed to children by Cindy Warren, Cindy Warren should never have been placed in a home with Malinda Hoagland by Monroe County OCY and Monroe County.

69.     Defendant, Adelaide Grace, recklessly and callously ignored the provisions of the 2000 custody agreement and intentionally placed Malinda Hoagland into the hands of a known convicted child abuser, which culminated in the inexcusable torture and death of an innocent child.

**B.      Malinda's school officials and educators repeatedly release Malinda into a dangerous home environment where defendants knew Malinda was living with a known and convicted-criminal child abuser who was abusing Malinda.**

70.     In August 2021, Malinda Hoagland was enrolled in the Upper Dublin School

District. At this time, Malinda Hoagland remained living with Cindy Warren and her biological father, Rendell Hoagland.

71.     At no time between the July 2020 implementation of a custody agreement and August 2021 (when Malinda Hoagland) was enrolled in the Upper Dublin School District did Monroe County or Monroe County OCY confirm or ensure that this custody agreement was being followed, which was their duty and obligation.

72.     To the contrary, Defendant, Adelaide Grace, callously and recklessly ignored this custody agreement while acting under the color of her position as director of Monroe County OCY, despite having knowledge of its provisions and contents.

73.     On October 13, 2021, Malinda Hoagland was physically abused by Rendell Hoagland and Cindy Warren by being made to stand against a wall with her hands behind her back for hours.

74.     On November 1, 2021, Cindy Warren and Rendell Hoagland were discussing a large bruise on Malinda Hoagland's body because she had an upcoming pediatrician's appointment. Warren texted Rendell Hoagland: "And u better hope they don't ask her about that bruise." Warren also texted Rendell Hoagland: "it is huge cause she gonna have to get undressed n shit for her physical."

75.     In response to these text messages from Warren, Rendell Hoagland responded by acknowledging that the bruise could result in "the people" being called about his and Warren's mistreatment and abuse of Malinda.

76.     At this time that Warren and Rendell Hoagland were exchanging text messages on November 1, 2021, Malinda Hoagland also had a large bruise on her leg and another bruise on her arm.

77.     On November 2, 2021, Malinda Hoagland attended a child well visit with a

pediatrician. At this time, Malinda was 10 years old. This was Malinda's last well visit before her death over two years later in May 2024.

78.     Throughout Malinda Hoagland's attendance and enrollment in the Upper Dublin School District, Malinda exhibited obvious signs of physical and psychological abuse while at school.

79.     Despite Malinda displaying obvious signs of physical and psychological abuse while at school at the Upper Dublin School District, the teachers and authorities who were responsible for Malinda's wellbeing at school, including Upper Dublin School District Superintendents Steven M. Yanni and Laurie Smith, repeatedly placed Malinda into the care and custody of Rendell Hoagland and Cindy Warren despite knowing that they were the perpetrators of abuse against Malinda.

80.     Throughout Malinda's entire time enrolled in the Upper Dublin School District, the teachers and authorities, including Steven M. Yanni and Laurie Smith, the Superintendents of the Upper Dublin School District, who were responsible for Malinda's wellbeing, knew that she resided in a home with Cindy Warren who was a convicted child abuser, was unrelated to Malinda, and had zero parental or custodial rights with respect to Malinda. Despite knowing this, the teachers and authorities who were responsible for Malinda's wellbeing at school repeatedly and recklessly placed Malinda into the care and custody of Cindy Warren which increased the risk of danger to Malinda and exposed Malinda to a danger that she would not have otherwise encountered.

81.     At no time throughout Malinda's enrollment in the Upper Dublin School District did Cindy Warren ever provide or produce to the Upper Dublin School District any documentation confirming or ensuring that Cindy Warren had legal rights to reside with, supervise, care for, or take into her custody, Malinda Hoagland.

82.     At all times throughout Malinda Hoagland's enrollment at Upper Dublin School District, both Steven M. Yanni and Laurie Smith were in actual possession of documentation which clearly indicated that Malinda was under the residence, supervision, care, and custody of a known convicted child abuser.

83.     At all times throughout Malinda Hoagland's enrollment at Upper Dublin School District, both Steven M. Yanni and Laurie Smith recklessly and callously ignored clear warning signs based on state-required documentation within their possession and control that Malinda Hoagland was under the residence, supervision, care, and custody of a known convicted child abuser.

84.     At all times throughout Malinda Hoagland's enrollment at Upper Dublin School District, the teachers and authorities responsible for her wellbeing, including Steven M. Yanni and Laurie Smith, had the authority to release (or not release) Malinda Hoagland with any adult(s), including but not limited to Cindy Warren and Rendell Hoagland.

85.     Each time that the teachers and authorities, including Steven M. Yanni and Laurie Smith, responsible for Malinda Hoagland's wellbeing at the Upper Dublin School District released Malinda to Rendell Hoagland or Cindy Warren, this was an affirmative misuse of their authority.

86.     In April 2022, Malinda Hoagland was removed from the Upper Dublin School District and transferred to the Coatesville Area School District ("CASD") where she began attending King's Highway Elementary School.

87.     As required by law, CASD, learned and obtained information, at the time of Malinda Hoagland's enrollment at CASD that Malinda was residing full-time with Cindy Warren who was a convicted child abuser and who had zero legal rights to supervise, care for, or maintain custody over Malinda.

88.     Despite knowing Malinda was residing full-time with an adult (Cindy Warren) who

was a convicted child abuser, not related to Malinda, and who had zero legal rights to supervise, care for, or maintain custody over Malinda, CASD repeatedly and serially misused its authority by releasing Malinda Hoagland from school to a convicted child abuser who was not related to Malinda, and who had zero legal rights to supervise, care for, or maintain custody over Malinda. Each improper act of releasing Malinda to this horrid environment increased the risk of danger to Malinda and posed a substantial risk of bodily harm and death to Malinda to which she otherwise would not have been subjected.

89.    As superintendents over CASD, Catherine Van Vooren and Tomas Hanna were in actual possession of state-required documentation which indicated that Malinda Hoagland was under the residence, supervision, care, custody, and control of a known convicted child abuser, Cindy Warren.

90.    As superintendents over CASD, Catherine Van Vooren and Tomas Hanna had the authority to release (or not release) Malinda Hoagland and other CASD students into the supervision and control of other persons, including Cindy Warren and Rendell Hoagland.

91.    As superintendents over CASD, Catherine Van Vooren and Tomas Hanna intentionally and callously ignored the documentation within their possession that Malinda Hoagland was under the supervision, control, and residence of Rendell Hoagland and Cindy Warren and affirmatively acted to release Malinda Hoagland into their custody, where she was tortured, abused, and subjected to egregious deeds, including but not limited to sexual abuse.

92.    On May 11, 2022, Malinda Hoagland underwent a physical examination conducted by the CASD.

93.    In or around the Fall of 2022, Malinda began attending Scott 6th Grade Center.

94.    At this time, Kathryn Lamothe served as school principal at Scott 6th Grade Center.

95.    On September 8, 2022, CASD records revealed that Malinda had an unexcused

absence from school. CASD never received any records indicating or confirming that Malinda missed school on this date due to illness or some other legitimate reason. Despite never receiving any such confirmation, CASD, including Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe, intentionally and repeatedly released Malinda back into the care of Cindy Warren and Rendell Hoagland.

96.    Throughout the Fall of 2022, Malinda Hoagland routinely and repeatedly showed up to school hungry, famished, and without enough food. Malinda communicated this directly to the adults employed by CASD and responsible for her wellbeing at school, including lunch-room personnel. Evidence that CASD knew that Malinda was not receiving enough food at home includes the fact that CASD employees, including lunch-room personnel, routinely provided Malinda extra food to eat.

97.    During this time, CASD officials, including Kathryn Lamothe, Catherine Van Vooren, and Tomas Hanna, had knowledge based on these reports to CASD employees, that Malinda was exhibiting clear signs of malnutrition and starvation, yet callously betrayed the trust of its students by affirmatively acting to increase the risk of Malinda Hoagland's torture and abuse.

98.    During this time, CASD officials, including Kathryn Lamothe, Catherine Van Vooren, and Tomas Hanna, intentionally ignored these clear warning signs of suspected child abuse and responded by knowingly releasing Malinda each day into the home, custody, care, and supervision of Rendell Hoagland and Cindy Warren.

99.    Despite knowing that Malinda Hoagland was being starved at home by Rendell Hoagland and Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda), CASD, including Kathryn Lamothe, Catherine Van Vooren, and Tomas Hanna, routinely, repeatedly, and intentionally released Malinda into the care of Rendell Hoagland and Cindy Warren, which placed Malinda at an increased risk of danger. This was a misuse of the

authority of CASD.

100.    Malinda's starvation became so severe that she began hoarding food in her locker at school.

101.    On November 23, 2022, Rendell Hoagland and Cindy Warren punished Malinda for hoarding food in her locker at school by making Malinda stand still and hold books over her head.

102.    On November 29, 2022, Malinda was absent from school at CASD which CASD erroneously marked an "excused" absence despite never receiving any medical confirmation that Malinda was actually sick. Despite never receiving any such confirmation, CASD, including Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe, intentionally released Malinda back into the care of Cindy Warren and Rendell Hoagland which placed Malinda at an increased risk of danger and was a misuse of CASD's authority to release Malinda to adults from school.

103.    On December 8, 2022, Malinda was absent from school without excuse.

104.    On December 9, 2022, video footage reveals that Malinda was tormented and threatened by Cindy Warren at her home.

105.    On December 11, 2022, Rendell Hoagland submitted a note to CASD for Malinda's absence from school on December 8, 2022. This was an absence "without excuse." Despite receiving no legitimate excuse for Malinda's absence from school on December 8, 2022—which, at that point, was a pattern of absenteeism—CASD, including Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe, misused their authority by again releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

106.    On December 20, 2022, Malinda was absent from school without excuse.

107.    In 2023, Malinda Hoagland attended North Brandywine Middle School, which is a

part of CASD.

108.     Throughout her time at North Brandywine Middle School, Malinda Hoagland had 25 "unexcused" absences and 10 "excused" absences. Neither North Brandywine Middle School nor CASD ever received any documentation or confirmation that any of these 35 absences from school were legitimate in any way. Also, throughout this time period when Malinda was excessively absent from school, when she was at school, she was displaying obvious and clear signs of physical abuse, psychological abuse, and starvation. CASD and North Brandywine Middle School themselves repeatedly documented Malinda's absences as "illegal absence."

109.     Despite knowing that Malinda displayed these obvious signs of mistreatment coupled with zero documentation confirming the legitimacy of 25 absences, North Brandywine Middle School and CASD repeatedly misused their authority by intentionally releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

110.     On January 4, 2023, Malinda was absent from school without excuse.

111.     On January 5, 2023, Malinda was absent from school without excuse.

112.     On January 9, 2023, Malinda was absent from school without excuse.

113.     On January 10, 2023, Rendell Hoagland sent CASD and North Brandywine Middle School a note purporting to excuse Malinda's absences from school on January 4 and 5, 2023 stating that Malinda was not "feeling well." Neither CASD nor North Brandywine Middle School ever received confirmation that either of Malinda's absences from school on January 4 or 5, 2023, were legitimate or caused by a real illness. Despite never receiving this required documentation, North Brandywine Middle School and CASD intentionally misused their authority by releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

114.    Despite having actual knowledge of Malinda's unexcused absences and displaying obvious signs of starvation, physical abuse, and psychological abuse, Eugenia Roberts callously ignored these clear warnings and betrayed the trust of Malinda by affirmatively and recklessly releasing Malinda 35 times into the hands of Rendell Hoagland and Cindy Warren.

115.    Despite having actual knowledge of Malinda's unexcused absences and displaying obvious signs of starvation, physical abuse, and psychological abuse, Eugenia Roberts, acting under color of her authority under Pennsylvania law, consciously decided to ignore Malinda's absences and affirmatively decided to release Malinda into the hands of Rendell Hoagland and Cindy Warren.

116.    On January 17, 2023, Malinda was forced by Cindy Warren to do pushups. While doing these pushups, Warren repeatedly kicked Malinda.

117.    The following day, January 18, 2023, Malinda was absent from school and brought to a Tower Health Urgent Care center where she was treated for an abscessed and infected finger. Drainage was taken from the abscess and sent to pathology for screening, and antibiotics were prescribed. This is the last time Malinda was seen by any medical professional prior to her May 2024 death.

118.    On January 20, 2023, Malinda was again absent from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Eugenia Roberts misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

119.    On January 26, 2023, Malinda was again absent from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required

by law, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Eugenia Roberts misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

120.   On January 27, 2023, Malinda was again absent from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Eugenia Roberts misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

121.   On February 1, 2023, Malinda was again absent from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Eugenia Roberts misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

122.   On February 17, 2023, Malinda was illegally absent from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Eugenia Roberts misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

123.   On February 22, 2023, Malinda was again illegally absent from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as

required by law, CASD and North Brandywine Middle School misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

124.    On February 23, 2023, Malinda was again absent illegally from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Eugenia Roberts misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

125.    On March 7, 2023, North Brandywine Middle School and CASD sent a Notice to Rendell Hoagland and Cindy Warren regarding Malinda's string of illegal and unexcused absences. In this letter, North Brandywine Middle School and CASD stated that Malinda had "an unacceptable number of school absences" and that this matter "could be sent for truancy hearings."

126.    On March 9, 2023, Malinda Hoagland was unlawfully absent from school without excuse.

127.    On March 10, 2023, Malinda Hoagland was unlawfully absent from school without excuse.

128.    On March 13, 2023, photos depict Malinda Hoagland with obvious bruising to her right eye, injury to the white of the eye, and a severe injury consistent with a rugburn on Malinda's forehead travelling from the center hairline to her eyebrow through the right side of Malinda's face.

129.    On March 14, 2023, Malinda was again absent illegally from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna,

24

and Eugenia Roberts misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

130.   This pattern of inexcusable absences spanning multiple months was an affirmative and conscious decision by Catherine Van Vooren, Tomas Hanna, and Eugenia Roberts to recklessly ignore and turn a blind eye to clear and unequivocal signs of imminent child abuse and endangerment.

131.   On March 14, 2023, the school nurse for CASD/North Brandywine Middle School affirmatively called Rendell Hoagland and Cindy Warren and left a voicemail message regarding Malinda's absences from school. In this telephone message, the school nurse stated that Malinda would not be permitted to return to school without a doctor's note explaining her excessive absences.

132.   Neither Rendell Hoagland nor Cindy Warren ever provided a doctor's note despite CASD and North Brandywine Middle School's demand for the same.

133.   Despite the fact that CASD and North Brandywine Middle School knew that a doctor's note was required to explain Malinda's absences, subsequent to informing Rendell Hoagland and Cindy Warren on March 14, 2023, that Malinda would not be allowed back in school without such a note, subsequent to providing this notice, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Eugenia Roberts, repeatedly and recklessly misused their authority by releasing Malinda from school to Rendell Hoagland and Cindy Warren.

134.   On March 15, 2023, Malinda was again absent illegally from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Eugenia Roberts recklessly misused their authority by subsequently releasing Malinda from

25

school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

135.    On March 16, 2023, Malinda was again absent illegally from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD, North Brandywine Middle School, Catherine Van Vooren, Laurie Smith, and Eugenia Roberts recklessly misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

136.    On this same day, March 16, 2023, in private communications, Cindy Warren suggested to Rendell Hoagland that they "pull" Malinda out of school given that CASD and North Brandywine Middle School had informed them that Malinda could not return to school without a doctor's note. Around this same time, Rendell Hoagland and Cindy Warren were unsuccessful in obtaining a note from Malinda's pediatrician; the pediatrician would not provide Warren and Hoagland a note because the pediatrician had not seen Malinda "in years."

137.    On March 17, 2023, Malinda was again absent illegally from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Eugenia Roberts recklessly misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

138.    Throughout Malinda's entire time at CASD and North Brandywine Middle School, Malinda had incomplete vaccination records. Despite knowing Malinda had not received numerous vaccinations as required by law, CASD and North Brandywine Middle School repeatedly and recklessly misused their authority by releasing Malinda from school to Rendell

Hoagland and Cindy Warren.

139.     On April 4, 2023, principal, Kathryn Lamothe, sent a letter addressed to Rendell Hoagland entitled "OFFICIAL NOTIFICATION OF FIRST UNLAWFUL ABSENCE." Copied on this letter was CASD Supervisor of Pupil Services and CASD Guidance Counselor.

140.     In this letter, Principal Lamothe consciously misrepresented the number of absences Malinda had incurred. Specifically, Principal Lamothe stated that Malinda had been absent without lawful excuse on January 26, February 22, February 23, and March 8. However, in reality, Malinda had been unlawfully absent all of those days as well as on January 4, January 5, January 9, January 20, January 27, February 1, February 17, March 9, March 10, March 14, March 15, March 16, and March 17, totaling seventeen (17) illegal absences.

141.     In this letter, Principal Lamothe stated: "Commonwealth of Pennsylvania law and School Board Policy require daily attendance."

142.     In this letter, Principal Lamothe also stated: "Please be aware that upon three (3) days of unexcused absences, your child will be deemed to be officially truant. Upon six (6) or more days of unexcused absences, your child will be deemed to be habitually truant."

143.     In this letter, Principal Lamothe stated: "Habitual truancy constitutes a summary offense under the PA Public School Code for which penalties may be imposed, as described in the enclosure regarding penalties for violations."

144.     Based on Principal Lamothe's own April 4, 2023 letter, and per her iteration of CASD and Pennsylvania policy, as of the date of this April 4, 2023 letter, Malinda Hoagland was, in fact and by law, habitually truant in violation of the Pennsylvania Public School Code.

145.     Principal Lamothe's shocking failure to keep correct documentation regarding unexcused absences and to take timely affirmative action in rendering Malinda habitually truant affirmatively placed Malinda under the continued supervision and control by Malinda's abusers.

146.     Principal Lamothe's shocking failure to initiate timely affirmative action regarding Malinda's truancy increased Malinda's risk of harm and directly subjected her to unfathomable torture, sexual abuse, and injuries.

147.     Despite knowing that Malinda Hoagland was habitually truant as of April 4, 2023, CASD, North Brandywine Middle School, Principal Lamothe, Catherine Van Vooren, and Tomas Hanna, knowingly misused their authority by continuing to release Malinda into the care of Rendell Hoagland and Cindy Warren.

148.     At all times material hereto, CASD, North Brandywine Middle School, Principal Lamothe, Catherine Van Vooren, and Tomas Hanna employed a policy, custom, and practice of ignoring state-mandated truancy law and truancy reporting requirements.

149.     As a direct result of CASD's, North Brandywine Middle School's, Kathryn Lamothe's, Catherine Van Vooren's, and Tomas Hanna's unlawful policy, custom, and practice of ignoring state-mandated truancy law and reporting requirements, no magisterial district judge was ever notified—as required—by CASD and North Brandywine Middle School of Malinda Hoagland's truancy. This resulted in an increased risk of danger to Malinda and, in fact, subjected her to sustained physical abuse, sexual abuse, torture, and starvation at the hands of Cindy Warren and Rendell Hoagland.

150.     As a direct result of CASD's, North Brandywine Middle School's, Catherine Van Vooren's, Tomas Hanna's, and Kathryn Lamothe's unlawful policy, custom, and practice of ignoring state-mandated truancy law and reporting requirements, CASD, North Brandywine Middle School, and Kathryn Lamothe erroneously marked and labeled Malinda Hoagland as non-truant when, in fact, she was habitually truant as early as January 27, 2023. This resulted in an increased risk of danger to Malinda and, in fact, subjected her to sustained physical abuse, sexual abuse, torture, and starvation at the hands of Cindy Warren and Rendell Hoagland.

28

151.     In Principal Lamothe's April 4, 2023 letter, she stated: "In addition, any excused absences of 10 cumulative days will require a notification that indicates Malinda Hoagland was seen by a doctor or licensed practitioner of the healing arts."

152.     At all times material hereto, CASD and North Brandywine Middle School employed an unlawful custom, policy, and practice of ignoring state-mandated medical requirements for students, including the rule that "any excused absences of 10 cumulative days will require a notification that indicates Malinda Hoagland was seen by a doctor or licensed practitioner of the healing arts."

153.     As a direct result of CASD's and North Brandywine Middle School's unlawful policy, custom, and practice of ignoring state-mandated medical requirements for students, Rendell Hoagland and Cindy Warren were permitted to repeatedly take custody of Malinda unlawfully—without ever having provided a doctor's note—and torture, starve, beat, and abuse Malinda.

154.     During Malinda's enrollment at CASD and North Brandywine Middle School, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe knowingly and intentionally ignored the well- established rule that required a doctor's note due to Malinda's ten (10) absences. This was a repeated and sustained violation by CASD and North Brandywine Middle School that spanned weeks and months, all the while resulting in Malinda's continued torture, physical abuse, sexual abuse, and starvation.

155.     On April 11, 2023, exactly one week after Principal Lamothe's April 4, 2023 letter, Principal Lamothe sent another letter addressed to Rendell Hoagland, which was entitled: "OFFICIAL NOTIFICATION OF SECOND UNLAWFUL ABSENCE." Copied on this letter was CASD Supervisor of Pupil Services and CASD Guidance Counselor.

156.     In this April 11, 2023 letter, Principal Lamothe misrepresented the number of

absences Malinda had had. Specifically, Principal Lamothe stated that Malinda had been absent without lawful excuse on March 9, March 10, March 13, and March 14. However, in reality, Malinda had been unlawfully absent all of those days as well as on January 4, January 5, January 9, January 20, January 27, February 1, February 17, February 22, February 23, March 8, March 15, March 16, and March 17.

157.    Despite knowing and recognizing, per her own April 11, 2023 letter, that Malinda Hoagland's absences deemed her "habitually truant" as a matter of law requiring submission to a Magisterial District Judge, as a result of CASD's and North Brandywine Middle School's unlawful policy, custom, and practice of ignoring state-mandated truancy laws and reporting requirements, Malinda Hoagland's habitual truancy was never reported by CASD or North Brandywine Middle School to appropriate authorities subsequent to Principal Lamothe's April 11, 2023 letter. This persistent violation by CASD and North Brandywine Middle School resulted in Malinda's continued torture, physical abuse, sexual abuse, and starvation spanning from April 11, 2023 until her death over one year later in May 2024.

158.    Principal Lamothe's shocking failure to keep correct documentation regarding unexcused absences and to take timely affirmative action in rendering Malinda habitually truant affirmatively placed Malinda under the continued supervision and control by Malinda's abusers.

159.    Principal Lamothe's shocking failure to initiate timely affirmative action regarding Malinda's truancy increased Malinda's risk of harm and directly subjected her to continued unfathomable torture, sexual abuse, and injuries.

160.    At all times material hereto, CASD and North Brandywine Middle School failed to properly train all of its employees and agents, including Principal Lamothe, on the legal requirements and reporting requirements related to students' absences from school, truancy, and medical-related documentation supporting school absences. This failure to train was deliberately

indifferent, continuous, and persistent over a period of years spanning from 2021 through 2024, including while Malinda was a student at CASD and North Brandywine Middle School. This persistent and deliberately indifferent failure to train directly resulted in Malinda Hoagland's systemic physical abuse, sexual abuse, mental torment, torture, and starvation at the hands of Cindy Warren and Rendell Hoagland.

161.     Had CASD not employed the unlawful and unconstitutional policies, customs, and practices outlined *supra*, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland prior to her death and she would be alive today.

162.     Had CASD not employed the unlawful and unconstitutional policies, customs, and practices outlined *supra*, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland, saving her from weeks, months, and years of unfathomable torture, physical abuse, sexual abuse, mental torment, and starvation.

163.     Had North Brandywine Middle School not employed the unlawful and unconstitutional policies, customs, and practices outlined *supra*, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland prior to her death and she would be alive today.

164.     Had North Brandywine Middle School not employed the unlawful and unconstitutional policies, customs, and practices outlined *supra*, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland, saving her from weeks, months, and years of unfathomable torture, physical abuse, sexual abuse, mental torment, and starvation.

165.     Had CASD not engaged in the affirmative actions and conduct outlined *supra* by repeatedly releasing Malinda Hoagland from school into  the care and custody of Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell

Hoagland, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland prior to her death and she would be alive today.

166.   Had CASD not engaged in the affirmative actions and conduct outlined *supra* by repeatedly releasing Malinda Hoagland from school into the care and custody of Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland, saving her from weeks, months, and years of unfathomable torture, physical abuse, sexual abuse, mental torment, and starvation.

167.   Had North Brandywine Middle School not engaged in the affirmative actions and conduct outlined *supra* by repeatedly releasing Malinda Hoagland from school into the care and custody of Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland prior to her death and she would be alive today.

168.   Had North Brandywine Middle School not engaged in the affirmative actions and conduct outlined *supra* by repeatedly releasing Malinda Hoagland from school into the care and custody of Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland, saving her from weeks, months, and years of unfathomable torture, physical abuse, sexual abuse, mental torment, and starvation.

169.   Had Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe not engaged in the affirmative actions and conduct outlined *supra* by repeatedly releasing Malinda Hoagland from school into the care and custody of Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland, Malinda Hoagland would have been

lawfully removed from the custody of Cindy Warren and Rendell Hoagland prior to her death and she would be alive today.

170.    Had Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe not engaged in the affirmative actions and conduct outlined *supra* by repeatedly releasing Malinda Hoagland from school into the care and custody of Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland, saving her from weeks, months, and years of unfathomable torture, physical abuse, sexual abuse, mental torment, and starvation.

171.    Had Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe not employed the unlawful and unconstitutional policies, customs, and practices outlined *supra*, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland prior to her death and she would be alive today.

172.    Had Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe not employed the unlawful and unconstitutional policies, customs, and practices outlined *supra*, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland, saving her from weeks, months, and years of unfathomable torture, physical abuse, sexual abuse, mental torment, and starvation.

**C.    Defendants, Chester County, Chester County CYF, Eve Large, Doug Waegel and Pennsylvania ignore their legal obligations to investigate known abuse of Malinda and intentionally release Malinda into a dangerous home environment where defendants knew Malinda was living with a known and convicted-criminal child abuser who was abusing Malinda.**

173.    On June 1, 2023, defendants, Pennsylvania, Chester County, Chester County CYF, Eve Large, and Doug Waegel received a report "with concerns for Malinda" through ChildLine.

174.    Per this June 1, 2023 report, defendants, Pennsylvania, Chester County, Chester

County CYF, Eve Large, and Doug Waegel learned that Malinda Hoagland had a "healing bruise below her left eye that raised concerns with mandated reporters when [Malinda] provided multiple different explanations."

175.   Per this June 1, 2023 report, defendants, Pennsylvania, Chester County, Chester County CYF, Eve Large, and Doug Waegel learned that Malinda "seemed down."

176.   Per this June 1, 2023 report, defendants, Pennsylvania, Chester County, Chester County CYF, Eve Large, and Doug Waegel, learned that Malinda had come to school with "an abrasion on her face earlier in the year" and that the reporter "had not been provided with an explanation for the injury by the child's father or stepmother."

177.   At all times material hereto, defendants, Pennsylvania, Chester County, Chester County OCY, Eve Large, and Doug Waegel employed a policy, custom, and practice of ignoring and disregarding legally- mandated algorithms and rules for investigating suspected child abuse, including by engaging in one or more of the following unlawful and unconstitutional policies, customs, and practices: (a) ignoring the identity and child-abuse history of all adults residing in the home of children who are reported to have been suspected child-abuse victims; (b) disregarding known background checks of convicted child abusers who reside within the home of children who are reported to have been suspected child-abuse victims; (c) deliberately choosing to make telephone calls to the homes where children are suspected to be abused (as opposed to a required in-home visit) in an effort to save money; and (d) disregarding and ignoring documented and easily-accessible court documents, including but not limited to custody actions and disputes, involving adults within the home of children who are reported to have been suspected child-abuse victims.

178.   These unlawful and unconstitutional policies, practices and customs employed by defendants, Pennsylvania, Chester County, Chester County CYF, Eve Large, and Doug Waegel directly resulted in Malinda Hoagland's systemic physical abuse, sexual abuse, mental torment,

torture, and starvation at the hands of Cindy Warren and Rendell Hoagland.

179.    Had defendants, Pennsylvania, Chester County, Chester County CYF, Eve Large, and Doug Waegel not employed these unlawful and unconstitutional policies, customs, and practices outlined *supra*, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland prior to her death and she would be alive today.

180.    Had defendants, Pennsylvania, Chester County, Chester County CYF, Eve Large, and Doug Waegel not employed these unlawful and unconstitutional policies, customs, and practices outlined *supra*, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland, saving her from weeks, months, and years of unfathomable torture, physical abuse, sexual abuse, mental torment, and starvation.

181.    On June 2, 2023, in response to receipt of the June 1, 2023 report that Malinda was being abused, an employee of defendant, Chester County CYF, directly called and spoke with Cindy Warren.

182.    During this phone call, the Chester County CYF employee learned that Malinda had multiple "bruises" throughout her body that were unexplained.

183.    Upon learning the identity of Cindy Warren on June 2, 2023, defendant, Chester County CYF, knew that Malinda Hoagland—in addition to being the subject of a child abuse report—was living and residing in the home of a convicted child abuser who had played a role in the death of an infant, and who was not permitted to reside full-time with Malinda Hoagland.

184.    Doug Waegel and Eve Large also had knowledge and were aware that Malinda Hoagland was living and residing in the home of a convicted child abuser who had played a role in the death of an infant and who was not permitted to reside full-time with Malinda Hoagland.

185.    Despite learning and knowing, as of June 2, 2023, that Malinda Hoagland was residing full-time with a convicted child abuser in direct violation of a Custody Agreement,

coupled with the objective evidence that Malinda was being physically abused and beaten, defendants, Chester County, Chester County CYF, and Doug Waegel deliberately disregarded the grave risk of harm to which Malinda was subjected.

186.  Despite learning and knowing, as of June 2, 2023, that Malinda Hoagland was residing full-time with a convicted child abuser in direct violation of a Custody Agreement, coupled with the objective evidence that Malinda was being physically abused and beaten, defendants, Chester County, Chester County CYF, Doug Waegel, and Eve Large never visited Malinda's home to assess the home.

187.  Defendants, Chester County, Eve Large, and Doug Waegel, and Chester County CYF's deliberate decision to not visit Malinda's home despite obtaining actual knowledge that Malinda was being physically abused by a convicted child abuser who was unlawfully residing with Malinda was the direct result of the unlawful and unconstitutional policies, customs, and practices employed by defendants, Chester County, Chester County CYF, Doug Waegel, and Eve Large of: (a) ignoring the identity and child-abuse history of all adults residing in the home of children who are reported to have been suspected child-abuse victims; (b) disregarding known background checks of convicted child abusers who reside within the home of children who are reported to have been suspected child-abuse victims; (c) deliberately choosing to make telephone calls to the homes where children are suspected to be abused (as opposed to a required in-home visit) in an effort to save money; and (d) disregarding and ignoring documented and easily-accessible court documents, including but not limited to custody actions and disputes, involving adults within the home of children who are reported to have been suspected child-abuse victims.

188.  Despite the alarming and obvious information that defendants, Chester County and Chester County CYF obtained based on this June 2023 report, defendant Chester County and Chester County CYF affirmatively decided to place Malinda Hoagland into a home with Cindy

Warren (a convicted child abuser with no legal rights over her and who was not permitted to reside with Malinda) and Rendell Hoagland (a perpetrator of abuse, torture, and starvation against Malinda).

189.    Despite having actual knowledge based on the June 2023 report that Malinda Hoagland was residing full-time with a convicted child abuser in direct violation of a Custody Agreement, coupled with the objective evidence that Malinda was being physically abused and beaten, defendants, Eve Large and Doug Waegel, recklessly disregarded this known risk of danger by intentionally placing Malinda into a home with Cindy Warren and Rendell Hoagland, who subjected Malinda to abuse, torture, starvation, and death.

**D.    Malinda's school officials and educators continue to disregard their legal obligations to investigate and report abuse of Malinda and repeatedly release Malinda into a dangerous home environment where defendants knew Malinda was living with a known and convicted-criminal child abuser who was abusing Malinda.**

190.    On or around August 28, 2023, Malinda Hoagland returned to school for the start of the new school year.

191.    On August 29, 2023, Rendell Hoagland and Cindy Warren unsuccessfully attempted to conceal a wound on Malinda with makeup concealer. This wound was caused by physical abuse.

192.    On September 11, 2023, Rendell Hoagland and Cindy Warren texted each other about the fact that they had recently received another notice from CASD indicating that Malinda had still not obtained all of her vaccinations as required by law.

193.    On October 13, 2023, Malinda was absent from school without excuse. During her absence from school, Cindy Warren and Rendell Hoagland forced Malinda to do pushups while Hoagland repeatedly struck Malinda with a belt.

194.    Despite never receiving any documentation confirming a legitimate absence for

Malinda on October 13, 2023, as required by law, CASD and North Brandywine Middle School misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

195.    On October 18, 2023, Malinda was again absent from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD and North Brandywine Middle School misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

196.    On October 19, 2023, Malinda was again absent from school with zero excuse provided. Despite never receiving any documentation confirming a legitimate absence, as required by law, CASD and North Brandywine Middle School misused their authority by subsequently releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

197.    For nearly two months, Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe recklessly ignored these unexcused absences and intentionally released Malinda into the care and custody of Cindy Warren and Rendell Hoagland.

198.    On October 26, 2023, Malinda had her school photographs taken which, remarkably and tragically, revealed bruising all around Malinda's left eye. Defendants, CASD and North Brandywine Middle School, saw this photo depicting bruising around Malinda's left eye yet deliberately disregarded their obligation to report these signs of physical abuse. The failure of defendants, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe to report these signs of abuse was a direct result of these defendants' unlawful and unconstitutional custom, policy, and practice of ignoring state-required child-abuse reporting

38

requirements. This unlawful and unconstitutional custom, policy, and practice directly resulted in Malinda Hoagland's systemic physical abuse, sexual abuse, mental torment, torture, and starvation at the hands of Cindy Warren and Rendell Hoagland from October 26, 2023 through Malinda's death in May 2024.

199.    Despite holding photographic evidence of child abuse in their possession, CASD, North Brandywine Middle School, Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe ignored these warnings and intentionally and recklessly placed Malinda in the care and custody of Cindy Warren and Rendell Hoagland.

200.    On November 6, 2023, less than two weeks after Malinda's school photograph revealed a black eye, Cindy Warren and Rendell Hoagland attended a parent/teacher conference with one of Malinda Hoagland's teachers at North Brandywine Middle School.

201.    During this parent/teacher conference, which Cindy Warren attended on school property, defendants, CASD and North Brandywine Middle School, were again reminded and provided direct knowledge that Malinda was residing with a convicted child abuser who was unlawfully residing with Malinda in direct violation of an existing custody agreement which defendants, CASD and North Brandywine knew about.

202.    During this parent/teacher conference, Cindy Warren and Rendell Hoagland bizarrely demanded that Malinda's teacher allow them to search Malinda's locker. The teacher allowed this search to occur.

203.    At this time, Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe intentionally ignored this conduct and the signs of child abuse and persisted in their reckless scheme of misconduct by affirmatively placing Malinda into the home of a known convicted child abuser.

204.    During Cindy Warren and Rendell Hoagland's bizarre search of Malinda's locker,

which the CASD/North Brandywine Middle School teacher was present for, stashed away food was discovered within Malinda's locker.

205.    At or around this same time, due to the persistent starvation of Malinda, Malinda was obviously underweight and malnourished which defendants, CASD, Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, and North Brandywine Middle School, knew about and had known about for months.

206.    In response to discovering Malinda was hiding food in her locker, out of a fit of paranoia at the prospect of finally being discovered as serial abusers and child torturers, Cindy Warren and Rendell Hoagland ragefully burst out in anger at Malinda and her teacher.

207.    Tragically, defendants, CASD, Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, and North Brandywine Middle School again intentionally and recklessly released Malinda into the custody of Cindy Warren and Rendell Hoagland following this conference despite knowing and understanding that the aforementioned rage of anger was a clear sign of child abuse.

**E.    Defendants, Chester County, Chester County CYF, and Pennsylvania again ignore their legal obligations to investigate known abuse of Malinda and again release Malinda into a dangerous home environment where defendants knew Malinda was living with a known and convicted-criminal child abuser who was abusing Malinda.**

208.    On November 7, 2023, the day after the bizarre locker search revealed hidden food, an employee of CASD and North Brandywine Middle School made a report to defendants, Chester County CYF, Pennsylvania, and Chester County, via ChildLine.

209.    Per this November 7, 2023 report, there were concerns about Malinda's "safety and wellbeing."

210.    Per this November 7, 2023 report, the reporter documented that "Malinda often came to school hungry and asking for more food."

211.    Per this November 7, 2023 report, the reporter documented that adults had observed

"Malinda to have bags under her eyes and wear baggy clothing consistently."

212.    Per this November 7, 2023 report, the reporter documented that, earlier in the school year, Malinda had come to school "with an unexplained black eye."

213.    On this same day, November 7, 2023, defendant, Chester County CYF, attempted to contact Rendell Hoagland to discuss this report but he was "not available."

214.    After defendant, Chester County CYF, attempted to contact Rendell Hoagland, Rendell Hoagland sent the phone number for Chester County CYF to Cindy Warren. Cindy Warren then called defendant, Chester County CYF, herself.

215.    Upon receipt of a phone call from Cindy Warren on November 8, 2023, defendants, Chester County CYF, Chester County, Doug Waegel, and Eve Large, were again reminded and provided direct knowledge that Malinda was residing with a convicted child abuser who was unlawfully residing with Malinda in direct violation of an existing custody agreement which defendants, Chester County and Chester County CYF, knew about.

216.    Despite learning again on November 8, 2023, that Malinda Hoagland—who was the subject of an ongoing child abuse—was, in fact, residing with a convicted child abuser who was living full-time with Malinda in violation of a known custody agreement, defendants, Chester County, Chester County CYF, Doug Waegel, and Eve Large deliberately decided to not remove Malinda from this home as required, or even visit the home in person.

217.    The decision by defendants, Chester County, Chester County CYF, Doug Waegel, and Eve Large on November 8, 2023, to not remove Malinda from this home as required, or even visit the home in person, was a direct result of the unconstitutional and unlawful policy, practice, and custom of defendants, Chester County, Chester County CYF, Doug Waegel, and Eve Large to ignore and disregard state-mandated investigation tactics and reporting requirement—namely, home visits to the residence of a reported child-abuse victim and deliberate disregard of adults

41

living in homes with abused children who have a prior, known child-abuse conviction. This unlawful and unconstitutional custom, policy, and practice directly resulted in Malinda Hoagland's systemic physical abuse, sexual abuse, mental torment, torture, and starvation at the hands of Cindy Warren and Rendell Hoagland from November 8, 2023 through Malinda's death in May 2024.

218.    The reckless decision by defendants, Chester County, Chester County CYF, Doug Waegel, and Eve Large on November 8, 2023, to not remove Malinda from this home as required, or even visit the home in person, was a deliberate and intentional disregard of the risk of imminent danger and death to Malinda that affirmatively placed Malinda into the custody of a known child abuser.

219.    After Cindy Warren spoke with an employee of defendants, Chester County CYF and Chester County, on November 8, 2023, about the abuse of Malinda, Warren texted Rendell Hoagland: "I have a feeling they probably on their way here I think its best u come home . . . Im having a very bad feeling about this . . . Im physically sick . . . Im telling u they r gonna come here im not feeling well at all u need to leave n come home . . . Im crying n im sick to my stomach."

220.    Unfortunately for Malinda, Cindy Warren's suspicions were incorrect. Chester County CYF never came.

221.    However, later that evening of November 8, 2023, an employee from defendants, Chester County and Chester County CYF, spoke again to Cindy Warren on the telephone. Rendell Hoagland also participated in this conversation.

222.    During this telephone call, Rendell Hoagland and Cindy Warren specifically notified Chester County and Chester County CYF that they were deliberately not feeding Malinda breakfast.

223.    During this telephone call, Rendell Hoagland and Cindy Warren provided an explanation for Malinda's bruising which directly contradicted Malinda's explanation of the same

injuries.

224.    Despite receiving contradicting information regarding the source of Malinda's injury from the suspected perpetrators (Rendell Hoagland and Cindy Warren) and the victim (*i.e.* Malinda), defendants, Chester County, Chester County CYF, Doug Waegel, and Eve Large deliberately ignored this information and, pursuant to their unlawful policy, custom, and practice of deliberately disregarding state-mandated investigation tactics and reporting requirements regarding child abuse, Chester County and Chester County CYF recklessly performed no additional investigation, no interview of Malinda, and no in-home visit.

225.    Despite the alarming and obvious information that defendants, Chester County, Chester County CYF, Doug Waegel, and Eve Large  obtained based on this November 2023 report, defendant Chester County and Chester County CYF affirmatively decided to place Malinda Hoagland into a home with Cindy Warren (a convicted child abuser with no legal rights over her and who was not permitted to reside with Malinda) and Rendell Hoagland (a perpetrator of abuse, torture, and starvation against Malinda).

   **F.    Malinda is abruptly pulled out of school, more abuse is reported, and Chester County, Chester County CYF, and Pennsylvania again ignore their legal obligations to investigate known abuse of Malinda and again release Malinda into a dangerous home environment where defendants knew Malinda was living with a known and convicted-criminal child abuser who was abusing Malinda.**

226.    Throughout the Summer and into the Fall of 2023, Cindy Warren had purchased and installed industrial style "Blink" surveillance cameras in various rooms inside of the home where Malinda was living. Any routine home visit would have revealed this bizarre setup inside the home (*i.e.* surveillance cameras all throughout the inside of the home) clearly indicating that nefarious conduct was occurring).

227.    On November 8, 2023, this same day that defendants, Chester County and Chester

County CYF, spoke with Cindy Warren repeatedly but failed to visit the home, video footage from surveillance cameras inside of the home depict Malinda doing forced pushups in her living room for over 12 hours from 8:35 a.m. until 9:27 p.m.

228.    On November 30, 2023, Malinda attended her last day of in-person school at North Brandywine Middle School. From this date forward until her death in May 2024, Malinda was kept isolated from the world, kidnapped, and brutally tortured within the confines of her own home.

229.    On December 5, 2023, Malinda was abruptly removed from CASD and North Brandywine Middle School by Cindy Warren and Rendell Hoagland. At this time, Malinda had not attended any school since November 30, 2023.

230.    At or around this same time, defendants, CASD and/or North Brandywine Middle School made another report to defendants, Pennsylvania, Chester County, and Chester County CYF, "with concerns for [Malinda's] safety and access to food."

231.    Upon receipt of this report "with concerns for [Malinda's] safety and access to food," consistent with the unlawful and unconstitutional policy, practice, and custom of state-mandated investigation tactics and reporting requirements regarding child abuse, defendants, Chester County, Chester County CYF, Doug Waegel, Eve Large, and Pennsylvania recklessly disregarded their obligation under state law to visit Malinda's home in person, interview Malinda, interview Rendell Hoagland, interview Cindy Warren, and remove Malinda Hoagland from the home where she was residing with Rendell Hoagland and Cindy Warren.

232.    Upon receipt of this report "with concerns for [Malinda's] safety and access to food," defendants, Chester County CYF, Chester County, Doug Waegel, Eve Large, and Pennsylvania, were again reminded and notified that Malinda was residing full-time with Cindy Warren who was a convicted child abuser and who had zero legal rights to supervise, care for, or maintain custody over Malinda.

233.     Despite again being notified of this critical information, consistent with the unlawful and unconstitutional policy, practice, and custom of state-mandated investigation tactics and reporting requirements regarding child abuse, defendants, Chester County, Chester County CYF, Doug Waegel, Eve Large, and Pennsylvania recklessly disregarded their obligation under state law to visit Malinda's home in person, interview Malinda, interview Rendell Hoagland, interview Cindy Warren, and remove Malinda Hoagland from the home where she was residing with Rendell Hoagland and Cindy Warren.

234.     Despite the alarming and obvious information that defendants, Chester County and Chester County CYF obtained based on this report in or around December 2023, defendants, Chester County, Chester County CYF, Doug Waegel, and Eve Large affirmatively decided to place Malinda Hoagland into a home with Cindy Warren (a convicted child abuser with no legal rights over her and who was not permitted to reside with Malinda) and Rendell Hoagland (a perpetrator of abuse, torture, and starvation against Malinda).

235.     Throughout the entire month of December 2023, Malinda was not enrolled in a new school after being abruptly removed, without explanation, from North Brandywine Middle School.

236.     Throughout the entire month of December 2023, defendant, CASD, knew that Malinda was not enrolled into a new school as required by state law.

237.     Throughout the entire month of December 2023, defendants, Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe had actual knowledge that Malinda was not enrolled into a new school as required by state law and recklessly ignored this violation.

238.     At all times material hereto, defendant CASD, had an unlawful and unconstitutional policy, practice, and custom of deliberately disregarding state-mandated notifications and practices related to students' enrollment and re-enrollment. As a direct result of this unlawful and unconstitutional policy, practice, and custom, defendant CASD knowingly ignored the continual

failure of Rendell Hoagland and Cindy Warren to enroll Malinda into a new school within the CASD. Had CASD not employed this unconstitutional policy, practice, and custom, Warren's and Hoagland's failure to properly and timely re-enroll Malinda into a new school would have resulted in a state-mandated investigation, which would have revealed the abuse, starvation, and torment of Malinda, spared her additional abuse, starvation, and torment from December 2023 through May 2024, and resulted in her removal from the Warren/Hoagland residence and, consequently, saved her life.

239.    On December 9, 2023, a photograph taken of Malinda clearly depicts bruising on Malinda's face. The bruise was so large that it covered the entire left side of Malinda's face ranging from her mouth to her ear.

240.    On December 12, 2023, surveillance video footage from within Malinda's home depicts Malinda doing forced pushups at 4:49 a.m. Malinda was crying while doing these forced exercises.

241.    In a three-day span between December 13, 2023 and December 15, 2023, surveillance video footage within Malinda's home depicts Malinda doing forced pushups morning and night. During this same time frame, Cindy Warren and Rendell Hoagland discussed and messaged about existing injuries to Malinda's head and hand.

242.    On December 17, 2023, surveillance video footage within Malinda's home depicts Malinda doing forced jump squats in her living room.

243.    On December 19, 2023, Dr. Eugenia Roberts, Principal at North Brandywine Middle School and employee of CASD, sent a letter addressed: "To The Parent/Guardian of: Malinda Hoagland." Copied on this letter was Assistant Principal, Wilson Lambert, and the Supervisor of Pupil Services.

244.    In this letter, Principal Roberts stated: "Commonwealth of Pennsylvania law and

school policy requires daily attendance."

245.    In this letter, Principal Roberts also stated: "A child must present a written excuse from the parent/guardian or medical practitioner within three school days of an absence or the absence will be counted as illegal."

246.    In this letter, Principal Roberts also noted that Malinda had been illegally absent on December 4, December 5, December 6, December 7, December 11, December 12, December 13, and December 14 of 2023.

247.    Defendants, CASD, Principal Roberts, and North Brandywine Middle School, never received any written confirmation confirming the legitimacy of any of Malinda's absences from school.

248.    Nevertheless, consistent with defendants CASD's, Principal Roberts's, and North Brandywine Middle School's unlawful policy, custom, and practice of ignoring state-mandated truancy laws and reporting requirements, Malinda Hoagland's December 2023 truancy was never reported by CASD or North Brandywine Middle School to appropriate authorities subsequent to Principal Roberts's December 19, 2023 letter. This persistent violation by CASD, Principal Roberts, and North Brandywine Middle School was a reckless disregard of known risks of harm to Malinda Hoagland and resulted in Malinda's continued torture, physical abuse, sexual abuse, and starvation spanning from December 19, 2023 until her death over one year later in May 2024.

249.    Had CASD not employed the unlawful and unconstitutional policies, customs, and practices outlined *supra*, Malinda Hoagland would have been lawfully removed from the custody of Cindy Warren and Rendell Hoagland prior to her death and she would be alive today.

250.    Had CASD not employed the unlawful and unconstitutional policies, customs, and practices outlined *supra*, Malinda Hoagland would have been lawfully removed from the custody

of Cindy Warren and Rendell Hoagland, saving her from months of unfathomable torture, physical

abuse, sexual abuse, mental torment, and her eventual death in May 2024.

251.    Had Principal Roberts not intentionally ignored state-mandated truancy laws and

reporting requirements, Malinda Hoagland would not have been placed into the custody and

control of her abusers from December 19, 2023 until her death.

**G.    Malinda cannot physically tolerate the sustained abuse, torture, and starvation and she eventually dies from multiple blunt force trauma injuries and starvation, weighing only 50 pounds at the age of 12.**

252.    On December 20, 2023, Cindy Warren purchased cabinet locks (which contained a

key code) to attach to cabinets in the home in order to prevent Malinda from being able to access

food to eat.

253.    On December 21, 2023, Cindy Warren  purchased a lock for the refrigerator which

was used to prevent Malinda from opening the fridge to obtain food.

254.    On December 29, 2023, Malinda was physically restrained overnight with shackles

and not allowed to use the bathroom. During that night, Malinda woke up Cindy Warren with the

volume of Malinda's screaming while Malinda begged that she needed to go to the bathroom and

could not "hold it any longer."

255.    On December 31, 2023, video surveillance footage from within Malinda's home

depicts Malinda being physically restrained by being shackled to an air hockey table in the home.

256.    On January 1, 2024, video surveillance footage from within Malinda's home

depicts Malinda doing forced exercise (arm raises) while chained to the air hockey table.

257.    On January 2, 2024, video surveillance footage from within Malinda's home

depicts Malinda sleeping on the floor while chained to the air hockey table. Approximately one

hour later, video footage depicts Malinda doing forced arm raises while still chained to the air

hockey table. Malinda continued to perform forced calisthenics throughout this morning and

afternoon while chained to the air hockey table.

258.    During this time, Rendell Hoagland and Cindy Warren exchanged text messages in which they referenced covering Malinda's body in lotion and Vaseline, referring to her at times as a "greased little piglet."

259.    From January 2024 throughout her death in May 2024, Rendell Hoagland and Cindy Warren continued to systematically subject Malinda Hoagland to physical abuse, sexual abuse, psychological torment, humiliation, and starvation.

260.    On January 5, 2024, text messages between Rendell Hoagland and Cindy Warren reveal that Malinda had multiple scabs on her body, and that Warren and Hoagland had covered Malinda's body in Vaseline.

261.    On January 8, 2024, Malinda was physically restrained at home by having her leg shackled to a dresser inside of the bedroom of Cindy Warren and Rendell Hoagland. This same day, video footage reveals Malinda shackled to the air hockey table while doing forced arm raises.

262.    On January 12, 2024, video footage reveals Malinda shackled to a dresser and subsequently doing forced pushups in the kitchen.

263.    Between January 15, 2024 and January 16, 2024, Malinda spent most of her time chained to the air hocky table. Throughout this time period, she was forced to do arm raises and sleep on the floor while chained to the air hockey table.

264.    On January 23, 2024, video footage reveals Malinda urinating herself while restrained. Malinda was then punished for urinating on herself by being forced to hold books over her head while a shirt covered her face and head.

265.    On January 27, 2024, video footage reveals that Cindy Warren was using the Blink cameras to tell Malinda, during forced exercise, "keep moving and don't look for breakfast or lunch tomorrow cause you're not getting it. And you won't get dinner either 'cause I'm not getting

up." This same day, video footage depicts Malinda chained to the air hockey table while Warren tells Malinda to "shut up" and calls Malinda a "fucking idiot."

266.    On January 29, 2024, twelve (12) separate video clips from 1:59 a.m. through 4:01 p.m. show Malinda standing while shackled to the air hockey table. During this time, Malinda can be seen holding her arms over her head "while only partially clothed."

267.    During this time, Malinda can be heard "tearfully repeating: 'I made myself scared of a backscratcher, I made myself scared of a backscratcher, I made myself scared of a cord.'"

268.    On January 31, 2024, video footage reveals Malinda standing on the front porch of her residence crying with a hood over her face while Cindy Warren yells at Malinda through the doorbell camera.

269.    On February 4, 2024, video footage depicts Malinda doing forced squats while chained to the air hockey table and reading a book.

270.    On February 6, 2024, video footage shows Malinda chained to a dresser with a leg shackle, marching in place. Later on this same day, additional video footage shows Malinda shackled to the air hockey table while Warren yells at and berates Malinda through the Blink camera.

271.    During this time shackled to the air hockey table, Malinda was forced by Warren to hold her arms up above her head continuously for over 5 hours from 3:58 p.m. until 9:02 p.m.

272.    On this same day, Malinda was forced by Warren to run in place while chained to furniture. Despite these commands by Warren, Malinda was so weak and hurt that she could "barely stand up" and could only run in place for a few minutes.

273.    While Malinda kept falling to the ground unable to stand, video footage shows Warren kicking Malinda while she is on the ground. On this same date, video footage reveals Rendell Hoagland beating Malinda with a belt while she is chained to furniture.

274.    On this same date, Cindy Warren threatened to "strip Malinda down," beat her in a bathtub, and told her that her father, Rendell Hoagland, had called Malinda a "scumbag."

275.    On this same date, Warren and Rendell Hoagland forced Malinda to sit cross-legged with her hands on her knees and both feet and knees held off of the surface of the floor.

276.    On February 7, 2024, video footage depicts Malinda inside of the bedroom of Cindy Warren and her father, Rendell Hoagland, naked from the waist down.

277.    In this same video, Malinda is forced to sit cross-legged with her arms overhead. On the video, she has visible bruises all over her body. This video also depicts Rendell Hoagland walking up to his naked daughter and hitting her in the face and on the foot.

278.    Later on this same day, February 7, 2024, video footage depicts Malinda shackled to the air hockey table while walking in place. During this time, Warren can be heard referring to Malinda as a "bitch" and mockingly telling her that she "looks a little tied up at the moment." In response to this abuse from Warren, Malinda repeatedly apologizes to Warren and acknowledges that she knows she is "not allowed to move."

279.    On February 8, 2024, video footage shows Malina chained to a dresser inside Cindy Warren and Rendell Hoagland's bedroom. While shackled to this dresser, Malinda was forced to do squats. Later this same day, video footage shows Malinda shackled to the air hockey table, again doing forced squats.

280.    On February 9, 2024, video footage depicts Malinda chained to a dresser and sitting on the floor inside Cindy Warren and Rendell Hoagland's bedroom. Warren can be heard telling Malinda to stand and "dance the Cha Cha" while Warren laughs at Malinda. Additional video footage from this same day shows Malinda chained to the air hockey table, sitting cross-legged while holding her arms overhead.

281.    On February 11, 2024, video footage shows Malinda chained to the air hockey

table, kneeling, while Warren forces her to jump up. At this time, Warren threatened to kick Malinda in the teeth. Malinda was subsequently chained to the table and is seen on video footage sleeping on the floor while chained up.

282.    On February 12, 2024, video footage shows Malinda chained to the dresser inside Cindy Warren and Rendell Hoagland's bedroom. Additional video footage from this day reveals Malinda crying while being forced to walk in place, chained to the air hockey table.

283.    On February 13, 2024, video footage reveals Malinda chained to the dresser inside Cindy Warren and Rendell Hoagland's bedroom while her father, Rendell Hoagland, yells at her and calls her a "jackass." This video footage depicts Rendell Hoagland standing over Malinda while she is chained, ready to hit her with a belt.

284.    On February 15, 2024, video footage reveals Malinda chained to the dresser inside Cindy Warren and Rendell Hoagland's bedroom doing schoolwork. Malinda was assaulted this day. In messages between Warren and Rendell Hoagland, Warren brags that she "cracked" Malinda so hard that Malinda was bleeding. Warren also bragged that she "waled her ass."

285.    On February 16, 2024, communications between Rendell Hoagland and Cindy Warren discuss visible wounds to Malinda's body that were so bad that her "band-aid was saturated." During this time, Malinda was chained to the dresser with metal shackles inside the bedroom of her father and Cindy Warren.

286.    On February 26, 2024, Rendell Hoagland and Cindy Warren exchange text messages about one of Malinda's older sisters (a plaintiff in this case) wanting to visit Malinda. In these text messages, Rendell Hoagland told Cindy Warren that he would tell the sister they needed two weeks before the visit and that they "need to get Malinda looking better before the visit."

287.    On February 28, 2024, video footage reveals Malinda chained to the air hockey table while Cindy Warren yells at her. Later this same day, video footage shows Malinda standing

and holding a book with a visible black eye. During this forced exercise, Warren can be heard telling Malinda: "Dad will take the weekend away. I'll kill you, like straight dog shit, throw you out. Get your ass moving."

288.    On March 5, 2024, video footage reveals Malinda reading in a playroom while chained to the air hockey table. During this time, Warren can be heard threatening Malinda that her father, Rendell Hoagland, was going to "beat your ass with a belt."

289.    On March 17, 2024, video footage shows Malinda marching in place while shackled to furniture. During this time, Warren forced Malinda to strip naked. Also, during this time, Warren stated to Malinda: "Don't look for dinner from us because you want to pick at your skin; you'll get a piece of bread."

290.    On March 18, 2024, Rendell Hoagland texted Cindy Warren that a bump on Malinda's body had "turned shiny."

291.    On March 26, 2024, video footage depicts Malinda locked out of her home standing on the front porch. This same day, Warren searched on Google "can you recover from frostbite" and "blacken toes on a kid."

292.    On April 1, 2024, Rendell Hoagland and Cindy Warren texted regarding Malinda's "deteriorating physical condition." During these text messages, Warren jokes about Malinda's severely distended abdomen (a sign of starvation and malnutrition). Specifically, Warren stated: "Her stomach no shit is sooooo soooo hard n over Protruding [sic] over her underwear I couldn't believe it . . . like pops out rt in the middle." During these text exchanges, Warren expressed surprise that Malinda was even capable of eating given her physical condition.

293.    On April 3, 2024, video footage shows Malinda chained to the air hockey table while picking at her hands and eating the skin.

294.    On April 4, 2024, text messages between Cindy Warren and Rendell Hoagland

reference a "leaking" wound on Malinda's foot.

295.    On April 5, 2024, text messages between Cindy Warren and Rendell Hoagland reveal that Rendell Hoagland had thrown shoes at Malinda while she was forcibly shackled to furniture.

296.    On April 9, 2024, video footage reveals Malinda shackled to her desk in her bedroom doing schoolwork. On this same date, video footage reveals Warren forcing Malinda to ride her bike that day as a "workout" for 45 minutes. During this forced exercise, video depicts Malinda asking not to ride the bike, repeatedly falling off the bike, and crying.

297.    On April 10, 2024, video footage reveals Malinda standing in her playroom shackled while picking at her hands.

298.    On April 15, 2024, Warren Google searched "why does my feet turn blue and black when they are cold."

299.    On April 17, 2024, text messages between Rendell Hoagland and Cindy Warren reveal that Warren had used her fingers to pinch Malinda every time Malinda "said something dumb."

300.    On April 23, 2024, during text messages, Cindy Warren complained to Rendell Hoagland that Malinda "would not keep her eyes open" and that Warren had held Malinda's eyelids open while flushing her eyes with "eye wash." On this same day, Warren Google searched whether soap in the eyes can cause blindness.

301.    On April 24, 2024, video footage reveals Malinda marching in place while shackled to the air hockey table. During this time, Warren can be heard mocking and berating Malinda, and threatening to punch Malinda in the throat "so hard you're going to fall on the floor and die."

302.    Another video from this same day reveals Warren yelling at Malinda because her leg shackles were over her pant leg as opposed to lying directly against her skin.

303.     On April 25, 2024, video footage reveals Malinda running in place in her bedroom at 10:13 a.m. At this time, Warren can be heard yelling at Malinda through the camera and telling her that she is not allowed to stop. Malinda is apologizing to Warren throughout this abuse.

304.     On April 29, 2024, video footage reveals Malinda running in place while shackled. In text messages between herself and Rendell Hoagland, Cindy Warren joked that Malinda "sounds dead lol."

305.     Additional video from this same date shows Malinda sitting at her desk, communicating with Warren via Blink camera, begging: "I shouldn't live, I'm sorry. Please respond" and "I'm not going to act stupid. I'm not going to make you mad. I know I ruined everything. Please allow me to change it."

306.     On April 30, 2024, video footage shows Malinda chained to the air hockey table marching in place.

307.     On May 2, 2024, video footage reveals Malinda had a bruise on her eye and snot coming out of her nose.

308.     At some time between 12:58 a.m. and 4:28 a.m. on May 4, 2024, Malinda became unconscious.

309.     At approximately 4:30 a.m. on May 4, 2024, the day Malinda died, while unconscious, Malinda was shackled to the air hockey table. Video footage from 4:37 a.m. this day reveals Malinda unconscious and chained to the air hockey table while Cindy Warren berates Malinda through the Blink camera, referring to Malinda as a "bitch" and telling Malinda that Warren did not believe she was sleeping. Also, during this time, Warren can be heard saying to Malinda: "Don't worry about it, your dad's gonna drag you right back to me like a puppet on a fuckin string bitch, stay right there. I love it, I love it."

310.     At approximately 7:49 p.m. on May 4, 2024, Malinda Hoagland was admitted to

Paoli Hospital with various serious injuries weighing merely 50 pounds at the age of 12.

311.    Malinda Hoagland was pronounced dead at 9:58 p.m. on May 4, 2024 at Paoli Hospital.

312.    An autopsy performed on Malinda Hoagland following her death concluded that Malinda died from starvation and multiple blunt force injuries. The autopsy revealed approximately 75 bruises throughout Malinda's body as well as contusions, ulcers, and pressure sores. The autopsy further revealed injuries to Malinda's brain, heart, lungs, liver, pancreas and intestines. Healing fractures of the pelvic bone, lower vertebrae, right forearm, and both thigh bones were discovered on autopsy.

313.    On May 4 and 5, 2024, searches of the home where Malinda resided by law enforcement revealed surveillance cameras "in every home of the residence."

314.    Based on all of the conduct averred throughout this Complaint, defendants violated Malinda Hoagland's clearly established constitutional right, pursuant to the Fourteenth and Eighth Amendments to the U.S. Constitution, to remain free from torture.

315.    Defendants also violated Malinda Hoagland's clearly established constitutional right, pursuant to the Fourteenth Amendment to the U.S. Constitution, to not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur.

316.    Defendants also violated Malinda's clearly established constitutional right, pursuant to the Fourteenth Amendment to the U.S. Constitution, to be free from unjustified intrusions upon her personal security and bodily integrity.

317.    Defendants also violated Malinda's clearly established constitutional right, pursuant to the Fourteenth Amendment to the U.S. Constitution, to not withdraw or remove Malinda from the custody of an adult (*i.e.* Cindy Warren) despite having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child.

318.    Defendants also violated Malinda's clearly established constitutional right, pursuant to the Fourteenth Amendment to the U.S. Constitution, to not withdraw or remove Malinda from the custody of an adult (*i.e.* Rendell Hoagland) despite having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child.

319.    Defendants also violated Malinda's clearly established constitutional right, pursuant to the Fourteenth Amendment to the U.S. Constitution, of placing Malinda in a home and in hands the defendants knew to be dangerous and unfit to care for a child.

320.    At all times as averred throughout this Complaint, the Defendants were deliberately indifferent to Malinda Hoagland in that the Defendants knew of and disregarded an excessive risk to Malinda's health and safety.

321.    As a direct and proximate cause and result of the affirmative conduct, deliberate indifference, intentional acts, unconstitutional conduct, negligent acts and omissions, and recklessness of the Defendants and their agents and/or employees, as stated throughout this Complaint and all of which shocks the conscience, Plaintiffs and Malinda Hoagland suffered the following avoidable injuries and damages:

    a) Starvation;

    b) Torture;

    c) Physical abuse;

    d) Psychological abuse;

    e) Sexual abuse;

    f) Fracture of the pelvic bone;

    g) Fractured vertebrae;

    h) Fractured right forearm;

    i) Fracture of the right thigh bone

j)   Fracture of the left thigh bone;

k)   Injury and damage to the brain;

l)   Injury and damage to the heart;

m)  Injury and damage to the lungs;

n)   Injury and damage to the pancreas;

o)   Injury and damage to intestines;

p)   Injury to the eyes;

q)   Cardiac arrest;

r)   Contusions and bruises;

s)   Abrasions;

t)   Hematomas;

u)   Hemorrhages;

v)   Lacerations;

w)  Organ failure;

x)   Jaundice;

y)   Ulcers;

z)   Pressure sores;

aa) Wounds;

bb) Infections;

cc) Past and future physical pain and suffering;

dd) Past and future mental, psychological, and emotional distress and suffering;

ee) Past and future medical bills and expenses;

ff)  Past and future loss of income and earning capacity;

gg) Past and future loss of life's pleasures;

hh) Past and future emotional distress;

ii) Past and future embarrassment;

jj) Past and future disfigurement;

kk) Past and future humiliation; and

ll) Punitive damages.

322.   The injuries and damages to Malinda Hoagland and the injuries and damages to Plaintiffs were caused solely by the affirmative conduct, deliberate indifference, intentional acts, unconstitutional conduct, negligent acts and omissions, and recklessness of the Defendants and their agents and/or employees, as stated throughout this Complaint and all of which shocks the conscience.

WHEREFORE, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT I – STATE-CREATED DANGER PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, Coatesville Area School District, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts in their individual and official capacities**

323.   The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

324.   As averred throughout this Complaint, the harm ultimately caused to Malinda Hoagland by the abuse, torture, and starvation of Rendell Hoagland and Cindy Warren was foreseeable, fairly direct, and in reckless disregard of known warnings. Defendants, CASD, and North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and

Eugenia Roberts, in their individual and official capacities, knew that Malinda was being physically abused, starved, and mistreated by Rendell Hoagland and Cindy Warren. These defendants also knew that Cindy Warren was a convicted child abuser with no legal rights to have custody over Malinda Hoagland.

325.    Despite this knowledge, as averred throughout the Complaint, defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, repeatedly, unlawfully, intentionally, and deliberately placed Malinda into the hands, care, control, and custody of Rendell Hoagland and Cindy Warren, knowing that each of these adults posed a serious risk of bodily injury or death to Malinda. This conduct, including but not limited to knowingly disregarding the clear risks of severe bodily injury and death to a child, particularly in light of what these defendants knew and observed about Malinda Hoagland, Rendell Hoagland, and Cindy Warren, shocks the conscience.

326.    At all times, a special relationship existed between defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, and Malinda Hoagland. These defendants were Malinda's educators and responsible for the wellbeing and safety of Malinda Hoagland, who was at all times a minor and therefore unable to make decisions on her own as to where she would reside. At all times, defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, had the authority to decide whether or not to release Malinda Hoagland to any adults, including Cindy Warren and Rendell Hoagland. These defendants also possessed the

authority, at all times, to place Malinda Hoagland into an extremely dangerous home environment, which these defendants repeatedly and intentionally did.

327.    Malinda Hoagland's relationship to defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities,—which was that of a minor-child student and school—knowingly made her a discrete class of persons subjected to potential harm brought about by these defendants' actions, as opposed to a member of the public in general.

328.    As averred throughout the Complaint, over a period of multiple years, defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, affirmatively used their authority to place Malinda Hoagland into a home in which they knew—but callously and knowingly disregarded—that Malinda Hoagland was the ongoing victim of serial abuse, starvation, and torment. Had these defendants not recklessly misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

329.    Defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, affirmatively used their authority by releasing Malinda Hoagland from school into the care, custody, and control of Cindy Warren and Rendell Hoagland in reckless disregard of the clear and imminent threat of danger to a young child. Had these defendants not recklessly misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared

months of torture, abuse, and starvation, and would be alive today.

330. Defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, affirmatively used their authority to send inaccurate and outrageously unlawful correspondence and letters to Cindy Warren and Rendell Hoagland regarding Malinda's truancy, absences, medical documentation or lack thereof, and vaccination status, all of which rendered Malinda Hoagland more vulnerable and at risk had these defendants not misused their authority in this manner. Had these defendants not callously misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

331. Defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, by transmitting false and inaccurate information to defendant, Pennsylvania, regarding Malinda Hoagland's attendance, vaccination status, and medical documentation, all of which allowed Malinda to remain in a dangerous home environment without intervention or investigation, and which increased the risk of harm and danger to Malinda by subjecting her to repeated abuse, torture, and starvation. Had these defendants not recklessly misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

332. Defendants, CASC's, North Brandywine Middle School's, Horace S. Scott Middle's School's, Upper Dublin School District's, and Catherine Van Vooren's, Tomas Hanna's, Kathryn Lamothe's, Laurie Smith's, Steven M. Yanni's, and Eugenia Roberts's affirmative use of

their authority repeatedly and recklessly rendered Malinda Hoagland more vulnerable to danger than had these defendants not acted at all and increased the risk of danger to Malinda Hoagland.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT II – STATE-CREATED DANGER PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, County of Chester, Chester County Children, Youth & Families, and Eve Large and Doug Waegel in their individual and official capacities**

333.   The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

334.   As averred throughout this Complaint, the harm ultimately caused to Malinda Hoagland by the abuse, torture, and starvation of Rendell Hoagland and Cindy Warren was foreseeable, fairly direct, and in reckless disregard of known danger. Defendants, County of Chester, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, knew that Malinda was being physically abused, starved, and mistreated by Rendell Hoagland and Cindy Warren. These defendants also knew that Cindy Warren was a convicted child abuser with no legal rights to have custody over Malinda Hoagland.

335.   Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, knew that, in 2000, a 2 year- old child who was living with Cindy Warren was transported to Pocono Medical Center with a slew of traumatic injuries, including brain bleeds, bruises throughout the child's body, and a tear extending from the child's vagina to the child's anus and that this child ultimately died from these injuries. At the time of this child's death, defendants, Pennsylvania, Monroe County, and Monroe County OCY, were monitoring this child's wellbeing due to safety concerns with the child in Cindy Warren's care.

336.   Defendants, Chester County, Chester County CYF, and Eve Large and Doug

Waegel in their individual and official capacities, knew that, in 2007, Cindy Warren was criminally charged for abusing her 3 year-old son after a neighbor called police with concerns that the child had extensive bruising throughout the child's body.

337.    Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, knew that Cindy Warren participated in the serial beating, starvation and forced exercise of this child.

338.    Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, knew that this 3 year-old child was "covered in bruises" and "doesn't talk because he is abused, is locked in a bedroom for days at a time," and "has not been seen outside for day."

339.    Defendants, Chester County, Chester County CYF, Eve Large and Doug Waegel in their individual and official capacities, knew that this child had been "locked outside his residence while the older children are at school" and "the older children were allowed to physically beat the 3 year old male child."

340.    Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, knew that, when detectives visited Cindy Warren's residence, they encountered this 3 year-old child who they described as "only wearing his underwear" and covered in "multiple bruises, lacerations, ligature marks and a burn mark" as well as "multiple contusions to the victim's head."

341.    Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, knew that Warren told law enforcement that her then-husband had caused the death of the aforementioned 2 year-old child back in December 2000 and that Cindy Warren admitted to authorities that she played a role in the death of the aforementioned 2 year-old child in December 2000.

342.     Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, knew that Cindy Warren pled guilty to the felony crime of Endangering Welfare of Children in violation of 18 Pa. C.S. § 4304 and, as a result, Warren was sentenced to a maximum of 7 years in prison.

343.     Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, knew, as far back as 2007, that Cindy Warren was an unfit and unsafe person to be around any minor child by virtue of her guilty plea to Endangering the Welfare of Children, the facts underlying that conviction (*i.e.* starvation, beating, and forced exercise of a child), and her admitted prior involvement in the death of the aforementioned 2 year-old child in December 2000.

344.     Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, knew and were subjectively aware of the fact that Cindy Warren posed a substantial risk of bodily harm and death to any child under Cindy Warren's care, custody, supervision, or control.

345.     Despite this knowledge, as averred throughout the Complaint, defendants, Chester County and Chester County CYF, and Eve Large and Doug Waegel, in their individual and official capacities, repeatedly, unlawfully, intentionally, recklessly, and deliberately placed Malinda into the hands, care, control, and custody of Rendell Hoagland and Cindy Warren, knowing that each of these adults posed a serious risk of bodily injury or death to Malinda. This conduct, particularly in light of what these defendants knew and observed about Malinda Hoagland, Rendell Hoagland, and Cindy Warren (*i.e.* that Cindy Warren was a convicted child abuser who was not permitted to reside with Malinda full-time per a known custody agreement), is deplorable, outrageous, and shocks the conscience.

346.     At all times, a special relationship existed between defendants, Chester County,

Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, and Malinda Hoagland. The sole purpose of defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, was to ensure that children, such as Malinda Hoagland, who were the subject of ongoing custody litigation, were not placed in the custody or residence of dangerous adults such as Rendell Hoagland and convicted child abuser, Cindy Warren.

347. At all times, defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, had the authority to decide whether to place Malinda in a residence with any adult(s), including Cindy Warren and Rendell Hoagland. These defendants also possessed the authority, at all times, to remove Malinda Hoagland from her residence with Cindy Warren and Rendell Hoagland, yet consciously decided to affirmatively place Malinda into a home where she was tortured, sexually abused, and killed.

348. Malinda Hoagland's relationship to defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, —which was that of a minor-child who was subject to existing custody litigation and multiple child-abuse reports—made her a discrete class of persons subjected to potential harm brought about by these defendants actions, as opposed to a member of the public in general.

349. As averred throughout the Complaint, over a period of multiple years, defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities,  affirmatively and recklessly used their authority to place Malinda Hoagland into a home in which they knew that Malinda Hoagland was the ongoing victim of serial abuse, starvation, and torment. Had these defendants not misused their authority and knowingly disregarded these clear warnings in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

350.     Defendants, Chester County, Chester County CYF, , and Eve Large and Doug Waegel in their individual and official capacities, affirmatively used their authority by releasing Malinda Hoagland into the care, custody, and control of Cindy Warren and Rendell Hoagland. Had these defendants not recklessly misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

351.     Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, affirmatively used their authority to place telephone calls to both Rendell Hoagland and Cindy Warren to discuss these adults' abuse of Malinda Hoagland while simultaneously not visiting the residence in-person, all of which rendered Malinda Hoagland more vulnerable and at risk had these defendants not misused their authority in this manner. Had these defendants not callously misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

352.     Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel in their individual and official capacities, affirmatively used their authority by knowingly and outrageously transmitting false and inaccurate information to defendant, Pennsylvania, regarding numerous reports of child abuse of Malinda Hoagland, all of which allowed Malinda to remain in a dangerous home environment without intervention or investigation, and which recklessly increased the risk of harm and danger to Malinda by subjecting her to repeated abuse, torture, and starvation. Had these defendants not misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

353.     Defendants, Chester County and Chester County CYF's, affirmative use of their

authority repeatedly rendered Malinda Hoagland more vulnerable to danger than had these defendants not acted at all and increased the risk of danger to Malinda Hoagland.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

## COUNT III – STATE-CREATED DANGER PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, County of Monroe, Monroe County Office of Children & Youth, and Adelaide Grace in her individual and official capacities**

354.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

355.    As averred throughout this Complaint, the harm ultimately caused to Malinda Hoagland by the abuse, torture, and starvation of Rendell Hoagland and Cindy Warren was foreseeable, fairly direct, and in reckless disregard of clear warnings of danger. Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, knew that Cindy Warren was a convicted child abuser with no legal rights to have custody over Malinda Hoagland.

356.    Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, knew that, in 2000, a 2 year-old child who was living with Cindy Warren was transported to Pocono Medical Center with a slew of traumatic injuries, including brain bleeds, bruises throughout the child's body, and a tear extending from the child's vagina to the child's anus and that this child ultimately died from these injuries. At the time of this child's death, defendants, Pennsylvania, Monroe County, Monroe County OCY, and Adelaide Grace in her individual and official capacities, were monitoring this child's wellbeing due to safety concerns with the child in Cindy Warren's care.

357.    Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her

individual and official capacities, knew that, in 2007, Cindy Warren was criminally charged by Monroe County for abusing her 3 year-old son after a neighbor called police with concerns that the child had extensive bruising throughout the child's body.

358.   Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, knew that Cindy Warren participated in the serial beating, starvation and forced exercise of this child.

359.   Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, knew that this 3 year-old child was "covered in bruises" and "doesn't talk because he is abused, is locked in a bedroom for days at a time," and "has not been seen outside for day."

360.   Defendants, Monroe County, Monroe County OCY, and Adelaide Grace in her individual and official capacities, knew that this child had been "locked outside his residence while the older children are at school" and "the older children were allowed to physically bear the 3 year old male child."

361.   Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, knew that, when detectives visited Cindy Warren's residence, they encountered this 3 year-old child who they described as "only wearing his underwear" and covered in "multiple bruises, lacerations, ligature marks and a burn mark" as well as "multiple contusions to the victim's head."

362.   Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, knew that Warren told law enforcement that her then-husband had caused the death of the aforementioned 2 year-old child back in December 2000 and that Cindy Warren admitted to authorities that she played a role in the death of the aforementioned 2 year-old child in December 2000.

363. Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, knew that Cindy Warren pled guilty to the felony crime of Endangering Welfare of Children in violation of 18 Pa. C.S. § 4304 and, as a result, Warren was sentenced to a maximum of 7 years in prison.

364. Defendants, Monroe County, Monroe County OCY, and Adelaide Grace in her individual and official capacities, knew, as far back as 2007, that Cindy Warren was an unfit and unsafe person to be around any minor child by virtue of her guilty plea to Endangering the Welfare of Children, the facts underlying that conviction (*i.e.* starvation, beating, and forced exercise of a child), and her admitted prior involvement in the death of the aforementioned 2 year-old child in December 2000.

365. Defendants, Monroe County, Monroe County OCY, and Adelaide Grace in her individual and official capacities, knew and were subjectively aware of the fact that Cindy Warren posed a substantial risk of bodily harm and death to any child under Cindy Warren's care, custody, supervision, or control, yet consciously ignored these known risks of danger.

366. Despite this knowledge, as averred throughout the Complaint, defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, knowingly, intentionally, recklessly, and deliberately placed Malinda into the hands, care, control, and custody of Cindy Warren, knowing that Cindy Warren posed a serious risk of bodily injury or death to Malinda. This conduct, particularly in light of what these defendants knew and observed about Malinda Hoagland, Rendell Hoagland, and Cindy Warren (*i.e.* that Cindy Warren was a convicted child abuser who was not permitted to reside with Malinda full-time per a known custody agreement), shocks the conscience. Had these defendants not misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

70

367.     At all times, a special relationship existed between defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, and Malinda Hoagland. The sole purpose of defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, was to ensure that children, such as Malinda Hoagland, who were the subject of ongoing custody litigation, were not placed in the custody or residence of dangerous adults such as Rendell Hoagland and convicted child abuser, Cindy Warren.

368.     At all times, defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, had the authority to decide whether to place Malinda in a residence with any adult(s), including Cindy Warren and Rendell Hoagland. These defendants also possessed the authority, at all times, to remove Malinda Hoagland from her residence with Cindy Warren and Rendell Hoagland, yet knowingly and consciously took affirmative action to place Malinda into the home of a known convicted child abuser.

369.     Malinda Hoagland's relationship to defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities —which was that of a minor-child who was subject to existing custody litigation and multiple child-abuse reports—made her a discrete class of persons subjected to potential harm brought about by these defendants actions, as opposed to a member of the public in general.

370.     As averred throughout the Complaint, over a period of multiple years, defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, affirmatively used their authority to place Malinda Hoagland into a home in which they knew that Malinda Hoagland was the ongoing victim of serial abuse, starvation, and torment. Had these defendants not misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive

today.

371.    Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, affirmatively used their authority by releasing Malinda Hoagland into the care, custody, and control of Cindy Warren and Rendell Hoagland. Had these defendants not misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

372.    Defendants, Monroe County, Monroe County OCY, and Adelaide Grace's affirmative use of their authority repeatedly rendered Malinda Hoagland more vulnerable to danger than had these defendants not acted at all and increased the risk of danger to Malinda Hoagland.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT IV – STATE-CREATED DANGER PURSUANT TO 42 U.S.C. § 1983
### Plaintiffs v. Defendant, Commonwealth of Pennsylvania

373.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

374.    At all times material hereto, defendant, Pennsylvania, oversaw, managed, supervised, and controlled the state-wide system(s) responsible for investigating child-abuse allegations, including the ChildLine system.

375.    At all times material hereto, defendant, Pennsylvania, had complete and full access to all of the information that existed regarding child-abuse reports and convicted child-abusers, including any such information in Chester County and Monroe County.

376.    As averred throughout this Complaint, the harm ultimately caused to Malinda Hoagland by the abuse, torture, and starvation of Rendell Hoagland and Cindy Warren was

foreseeable and fairly direct. Defendant, Pennsylvania, knew that Cindy Warren was a convicted child abuser with no legal rights to have custody over Malinda Hoagland.

377.    Defendant, Pennsylvania, knew that, in 2000, a 2 year-old child who was living with Cindy Warren was transported to Pocono Medical Center with a slew of traumatic injuries, including brain bleeds, bruises throughout the child's body, and a tear extending from the child's vagina to the child's anus and that this child ultimately died from these injuries. At the time of this child's death, defendants, Pennsylvania, Monroe County, and Monroe County OCY, were monitoring this child's wellbeing due to safety concerns with the child in Cindy Warren's care.

378.    Defendant, Pennsylvania, knew that, in 2007, Cindy Warren was criminally charged by Monroe County for abusing her 3 year-old son after a neighbor called police with concerns that the child had extensive bruising throughout the child's body.

379.    Defendant, Pennsylvania, knew that Cindy Warren participated in the serial beating, starvation and forced exercise of this child.

380.    Defendant, Pennsylvania, knew that this 3 year-old child was "covered in bruises" and "doesn't talk because he is abused, is locked in a bedroom for days at a time," and "has not been seen outside for day."

381.    Defendant, Pennsylvania, knew that this child had been "locked outside his residence while the older children are at school" and "the older children were allowed to physically bear the 3 year old male child."

382.    Defendant, Pennsylvania, knew that, when detectives visited Cindy Warren's residence, they encountered this 3 year-old child who they described as "only wearing his underwear" and covered in "multiple bruises, lacerations, ligature marks and a burn mark" as well as "multiple contusions to the victim's head."

383.    Defendant, Pennsylvania, knew that Warren told law enforcement that her then-

husband had caused the death of the aforementioned 2 year-old child back in December 2000 and that Cindy Warren admitted to authorities that she played a role in the death of the aforementioned 2 year-old child in December 2000.

384.    Defendant, Pennsylvania, knew that Cindy Warren pled guilty to the felony crime of Endangering Welfare of Children in violation of 18 Pa. C.S. § 4304 and, as a result, Warren was sentenced to a maximum of 7 years in prison.

385.    Defendant, Pennsylvania, knew, as far back as 2007, that Cindy Warren was an unfit and unsafe person to be around any minor child by virtue of her guilty plea to Endangering the Welfare of Children, the facts underlying that conviction (*i.e.* starvation, beating, and forced exercise of a child), and her admitted prior involvement in the death of the aforementioned 2 year-old child in December 2000.

386.    Defendant, Pennsylvania, knew and were subjectively aware of the fact that Cindy Warren posed a substantial risk of bodily harm and death to any child under Cindy Warren's care, custody, supervision, or control.

387.    Despite this knowledge, as averred throughout the Complaint, defendant, Pennsylvania, in concert and in conjunction with defendants, Chester County, Chester County CYF, Monroe County, Monroe County OCY, and Adelaide Grace, Eve Large, and Doug Waegel in their individual and official capacities, repeatedly, unlawfully, intentionally, and deliberately placed Malinda into the hands, care, control, and custody of Rendell Hoagland and Cindy Warren, knowing that each of these adults posed a serious risk of bodily injury or death to Malinda. This conduct, particularly in light of what these defendants knew and observed about Malinda Hoagland, Rendell Hoagland, and Cindy Warren (*i.e.* that Cindy Warren was a convicted child abuser who was not permitted to reside with Malinda full-time per a known custody agreement), shocks the conscience. Had defendant, Pennsylvania, not misused their authority in this manner,

Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

388.    At all times, a special relationship existed between defendant, Pennsylvania and Malinda Hoagland. Defendant, Pennsylvania, as the overseer and manager of the state-wide system for investigating child-abuse reports including through ChildLine, was responsible and obligated to ensure that children, such as Malinda Hoagland, who were the subject of ongoing custody litigation, were not placed in the custody or residence of dangerous adults such as Rendell Hoagland and convicted child abuser, Cindy Warren.

389.    At all times, defendant, Pennsylvania, had the authority, in conjunction with defendants, Chester County, Chester County CYF, Monroe County, and Monroe County OCY, to decide whether to place Malinda in a residence with any adult(s), including Cindy Warren and Rendell Hoagland. Defendant, Pennsylvania, also possessed the authority, at all times, to remove Malinda Hoagland from her residence with Cindy Warren and Rendell Hoagland.

390.    Malinda Hoagland's relationship to defendant, Pennsylvania —which was that of a minor-child who was subject to existing custody litigation and multiple child-abuse reports—made her a discrete class of persons subjected to potential harm brought about by these defendants actions, as opposed to a member of the public in general.

391.    As averred throughout the Complaint, over a period of multiple years, defendant, Pennsylvania, affirmatively used its authority to place Malinda Hoagland into a home in which they knew that Malinda Hoagland was the ongoing victim of serial abuse, starvation, and torment. Had defendant, Pennsylvania, not misused its authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

392.    Defendant, Pennsylvania, affirmatively used its authority by releasing Malinda

Hoagland into the care, custody, and control of Cindy Warren and Rendell Hoagland. Had defendant, Pennsylvania, not misused its authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

393.    Defendant Pennsylvania's affirmative use of their authority repeatedly rendered Malinda Hoagland more vulnerable to danger than had these defendants not acted at all and increased the risk of danger to Malinda Hoagland.

394.    Defendant, Pennsylvania, affirmatively used its authority by transmitting false and inaccurate information to defendants, Chester County CYF and Chester County, regarding numerous reports of child abuse of Malinda Hoagland, all of which allowed Malinda to remain in a dangerous home environment without intervention or investigation, and which increased the risk of harm and danger to Malinda by subjecting her to repeated abuse, torture, and starvation. Had defendant, Pennsylvania, not misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT V – *MONELL* CLAIM FOR UNLAWFUL CUSTOMS, PRACTICES, AND POLICIES PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, Coatesville Area School District, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their official and individual capacities**

395.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

396.    Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, each maintained, enforced, and promulgated unlawful and deliberately indifferent official customs, practices, and policies with respect to reporting suspected child abuse of students, including Malinda Hoagland.

397.    Specifically, the customs, practices, and policies maintained by these defendants with respect to reporting suspected child abuse of students mandated a continuing violation of the law by consciously and recklessly ignoring their legal requirement to mandate that any school or district employee who has reasonable cause to suspect that a child is a victim of abuse must immediately report that abuse to state and county officials.

398.    The customs, practices, and policies maintained by these defendants with respect to reporting suspected child abuse of students mandated a continuing violation of the law by consciously and recklessly ignoring their legal requirement to mandate, as required by law, that any school or district employee reporting suspected child abuse must make an immediate report via the telephone or in writing to state and county officials.

399.    The customs, practices, and policies maintained by these defendants with respect to reporting suspected child abuse of students mandated a continuing violation of the law by consciously and deliberately ignoring their legal requirement to mandate, as required by law, any time a school or district employee makes a verbal report of suspected child abuse over the telephone, that employee must make a written report to state and county officials within forty-eight (48) hours of the verbal telephone report.

400.    The customs, practices, and policies maintained by these defendants with respect to reporting suspected child abuse of students mandated a continuing violation of the law by

deliberately ignoring their legal requirement to mandate, as required by law, any time a school or district employee makes a report of suspected child abuse, that employee must identify every person in the child's household by name and address.

401. The customs, practices, and policies maintained by these defendants with respect to reporting suspected child abuse of students mandated a continuing violation of the law by deliberately ignoring their legal requirement to mandate, as required by law, any time a school or district employee makes a report of suspected child abuse, that employee must identify in their report the name and relationship of each adult individual living with the child in the child's home.

402. The customs, practices, and policies maintained by these defendants with respect to reporting suspected child abuse of students mandated a continuing violation of the law by consciously and deliberately ignoring their legal requirement to mandate, as required by law, any time a school or district employee makes a report of suspected child abuse, that employee must identify any evidence of any prior abuse by every adult living with the child in the child's home.

403. The customs, practices, and policies maintained by these defendants with respect to reporting suspected child abuse of students mandated a continuing violation of the law by consciously and deliberately ignoring their legal requirement to mandate, as required by law, any time a school or district employee makes a report of suspected child abuse to county or state officials, that employee must also immediately report this to the person/individual in charge of the school and school district with which this employee is employed.

404. Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, each maintained, enforced, and promulgated unlawful and deliberately indifferent official customs, practices, and policies with respect to the release and placement of children,

including Malinda Hoagland, into the care, custody, and control of adults who were unfit and unsafe to assume the care, custody and control of children, *i.e.*, Cindy Warren and Rendell Hoagland.

405.   Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, each maintained, enforced, and promulgated an outrageous, unlawful and unconstitutional policy of releasing children into the care and custody of adults who have no legal custody rights to take control or custody of said children.

406.   Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of releasing children into the care and custody of adults who these defendants had actual knowledge were dangerous to the health and safety of the children being released into these adults' care.

407.   Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, each maintained, enforced, and promulgated an outrageous, unlawful and unconstitutional policy of ignoring their obligations to follow the law with respect to investigating and enforcing school absences and truancy.

408.   Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official

capacities, each maintained, enforced, and promulgated an outrageous, unlawful, and unconstitutional policy of ignoring the law with regard to responding to, recording, and addressing unexcused absences of students at school.

409.    Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring the law with regard to reporting unexcused absences to defendant, Pennsylvania, through Pennsylvania's Pennsylvania Information Management System.

410.    Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring the law with regard to providing special assistance to students, such as Malinda Hoagland, who are experiencing educational instability due to issues including changes in custody. This includes requirements such as a point of contact to assist the student, expedited counseling and placement, obtaining records from prior schools, and development of a graduation plan.

411.    Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring the law with regard to determinations, enforcement, and addressing habitual truancy of students, including Malinda Hoagland, by setting up mandatory conferences, referral of the child to the county children and youth agency, referral of the child to a school-based or community-

based attendance improvement program, and notification to magisterial district courts and initiation of truancy proceedings.

412.    Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring the law with regard to the employment, use, and facilitation of a truancy officer to address students' truancy as required by law.

413.    Each unlawful policy, custom, and practice of these defendants actually caused the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

414.    Each unlawful policy, custom, and practice of these defendants was officially promulgated by each of these defendant's officers and officials, all of whom had legal and supervisory authority to issue, promulgate, create, and enforce each of these unlawful policies, customs, and practices, which these officers and officials, in fact, did. This includes each of these defendant's principals and superintendents in charge of each school district and school at the time of the events giving rise to the claims brought in this action.

415.    Each unlawful policy, custom, and practice of these defendants, given the persistence of these policies over months and years and the defendants' course of conduct as averred throughout this complaint, was so well-settled and permanent as to virtually constitute law.

416.    Each unlawful policy, custom, and practice of these defendants was deliberately indifferent to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland, and shocks the conscience.

417.     Each unlawful policy, custom, and practice of these defendants violated Malinda Hoagland's clearly established constitutional rights to: remain free from torture; not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur; be free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants recklessly knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

## COUNT VI – *MONELL* CLAIM FOR UNLAWFUL CUSTOMS, PRACTICES, AND POLICIES PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, County of Chester, Chester County Children, Youth & Families, and Eve Large and Doug Waegel, in their official and individual capacities**

418.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

419.     Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated unlawful and deliberately indifferent official customs, practices, and policies with respect to investigating reports of child abuse of children, including Malinda Hoagland.

420.     Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately refusing to make required home visits to the residences where children were reported to be abused so as to save money and resources by instead only making phone calls to these residences.

421. Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to perform adequate investigations of reported child abuse, including by conducting in-person interviews of the children who are the subject of the report.

422. Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to perform adequate investigations of reported child abuse, including by conducting in-person interviews of the adults who are suspected of the abuse.

423. Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities each maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring their legal requirement to perform adequate investigations of reported child abuse, including by recklessly failing to include all of the legally required information in reports to defendant, Pennsylvania, regarding child abuse investigations conducted by these defendants.

424. Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to perform adequate investigations of reported child abuse, including by refusing to obtain information and investigate all prior reports and evidence of child abuse or crimes committed by any adult subject to a current report of suspected child abuse.

425. Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and

unconstitutional policy of deliberately ignoring their legal requirement to ensure the immediate safety of the child and any other child in the child's home when receiving a report of suspected child abuse.

426.     Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to immediately notify defendant, Pennsylvania, via Pennsylvania's Department of Human Services, of any report of suspected child abuse.

427.     Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to report to all appropriate law enforcement agencies when reports of suspected child abuse contained information that a criminal offense may have been committed, including assault, battery, indecent exposure, and sexual abuse.

428.     Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to ensure that children who were at high risk for abuse or neglect were seen by an employee of defendants, Chester County and Chester County CYF, at least once per week, until the child is no longer assessed as being at high risk for abuse or neglect.

429.     Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to determine or assess whether children who were the subject of child-abuse reports were at high risk for abuse or neglect.

430.     Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to provide or have available adequate services for the prevention, investigation and treatment of child abuse— as required by law—including, but not limited to, out-of-home placement services, protective and preventative social counseling, emergency shelter care, and emergency caretaker services.

431.     Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to see any child who is the subject of a report of suspected child abuse immediately or within 24 hours of receipt of the report.

432.     Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to make a determination of the safety of or risk of harm to the child or any other child in the home environment.

433.     Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to take appropriate action necessary to provide for the safety of the child subject to an abuse report.

434.     Defendants, Chester County, Chester CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to arrange for services necessary to protect the child while defendants, Chester County, Chester County CYF,  and Eve Large and Doug Waegel, in their official and individual capacities, are making a determination as to the report of suspected abuse.

85

435.     Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated unlawful and deliberately indifferent official customs, practices, and policies with respect to the release and placement of children, including Malinda Hoagland, into the care, custody, and control of adults who were unfit and unsafe to assume the care, custody and control of children, *i.e.*, Cindy Warren and Rendell Hoagland.

436.     Defendants, Chester County, Chester County CYF, and Eve Large and Doug Waegel, in their official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of releasing children into the care and custody of adults who have no legal custody rights to take control or custody of said children.

437.     Each unlawful policy, custom, and practice of these defendants actually caused the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

438.     Each unlawful policy, custom, and practice of these defendants was officially promulgated by each of these defendant's officers and officials, all of whom had legal and supervisory authority to issue, promulgate, create, and enforce each of these unlawful policies, customs, and practices, which these officers and officials, in fact, did. This includes each of these defendant's directors, executives, and supervisors in charge at the time of the events giving rise to the claims brought in this action.

439.     Each unlawful policy, custom, and practice of these defendants, given the persistence of these policies over months and years and the defendants' course of conduct as averred throughout this complaint, was so well-settled and permanent as to virtually constitute law.

440.     Each unlawful policy, custom, and practice of these defendants was reckless and

deliberately indifferent to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland, and shocks the conscience.

441.    Each unlawful policy, custom, and practice of these defendants violated Malinda Hoagland's clearly established constitutional rights to: remain free from torture; not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur; be free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT VII – *MONELL* CLAIM FOR UNLAWFUL CUSTOMS, PRACTICES, AND POLICIES PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, County of Monroe, Monroe County Office of Children & Youth, and Adelaide Grace, in her official and individual capacities**

442.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

443.    Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated unlawful and deliberately indifferent official customs, practices, and policies with respect to investigating reports of child abuse of children and ensuring appropriate placement of children in safe homes where the children were not at known and foreseeable risk of bodily injury or death.

444.    Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and

unconstitutional policy of placing children in homes where these defendants had actual knowledge that a child was at foreseeable risk of bodily injury or death due to the presence of an abusive adult in the home.

445.    Defendants, Monroe County Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to perform adequate assessments of home environments where children who were the subject of custody disputes or custody litigation were placed by the defendants.

446.    Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to perform adequate investigations of reported child abuse, including by conducting in-person interviews of the adults who are suspected of the abuse.

447.    Defendants, Monroe County, Monroe County OCY, , and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to perform adequate investigations of reported child abuse, including by failing to include all of the legally required information in reports to defendant, Pennsylvania, regarding child abuse investigations conducted by these defendants.

448.    Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to perform adequate investigations of reported child abuse and ensuring appropriate placement of children in safe homes where the children were not at known and foreseeable risk of bodily injury or death,

including by refusing to obtain information and investigate all prior reports and evidence of child abuse or crimes committed by any adult subject to a current report of suspected child abuse or in the home residence where a child was placed.

449.   Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to ensure the immediate safety of the child and any other child in the child's home when receiving a report of suspected child abuse.

450.   Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to immediately notify defendant, Pennsylvania, via Pennsylvania's Department of Human Services, of any report of suspected child abuse.

451.   Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to report to all appropriate law enforcement agencies when reports of suspected child abuse contained information that a criminal offense may have been committed, including assault, battery, indecent exposure, and sexual abuse.

452.   Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to ensure that children who were at high risk for abuse or neglect were seen by an employee of defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, at least once

per week, until the child is no longer assessed as being at high risk for abuse or neglect.

453. Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to determine or assess whether children who were the subject of child-abuse reports were at high risk for abuse or neglect.

454. Defendants, Monroe County, Monroe County OCY, , and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to provide adequate information to defendants, Pennsylvania, Chester County, and Chester County CYF, regarding adults and children who were the subject of prior reports of child abuse.

455. Defendants, Monroe County, Monroe County OCY, Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to make a determination of the safety of or risk of harm to the child or any other child in the home environment.

456. Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately ignoring their legal requirement to arrange for services necessary to protect the child while defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, are making a determination as to the report of suspected abuse.

457. Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated unlawful and deliberately indifferent official customs, practices, and policies with respect to the release and placement of children, including Malinda Hoagland, into the care, custody, and control of adults

who were unfit and unsafe to assume the care, custody and control of children, *i.e.*, Cindy Warren and Rendell Hoagland.

458.     Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, each maintained, enforced, and promulgated an unlawful and unconstitutional policy of deliberately and recklessly releasing children into the care and custody of adults who have no legal custody rights to take control or custody of said children.

459.     As a result of this deliberate indifference and recklessness, each unlawful policy, custom, and practice of these defendants actually caused the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

460.     As a result of this deliberate indifference and recklessness, each unlawful policy, custom, and practice of these defendants was officially promulgated by each of these defendant's officers and officials, all of whom had legal and supervisory authority to issue, promulgate, create, and enforce each of these unlawful policies, customs, and practices, which these officers and officials, in fact, did. This includes each of these defendant's directors, executives, and supervisors in charge at the time of the events giving rise to the claims brought in this action.

461.     As a result of this deliberate indifference and recklessness, each unlawful policy, custom, and practice of these defendants, given the persistence of these policies over months and years and the defendants' course of conduct as averred throughout this complaint, was so well-settled and permanent as to virtually constitute law.

462.     As a result of this deliberate indifference and recklessness, each unlawful policy, custom, and practice of these defendants was deliberately indifferent to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland,

and shocks the conscience.

463.    As a result of this deliberate indifference and recklessness, each unlawful policy, custom, and practice of these defendants violated Malinda Hoagland's clearly established constitutional rights to: remain free from torture; not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur; be free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT VIII – *MONELL* CLAIM FOR UNLAWFUL CUSTOMS, PRACTICES, AND POLICIES PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendant, Commonwealth of Pennsylvania**

464.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

465.    Defendant, Pennsylvania, maintained, enforced, and promulgated unlawful and deliberately indifferent official customs, practices, and policies with respect to investigating reports of child abuse of children and maintaining databases and information systems for the compilation of prior child-abuse reports and findings.

466.    Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of refusing to make required home visits to the residences where children were reported to be abused so as to save money and resources by instead only making phone calls to these residences.

467.     Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of refusing to establish and maintain a legally compliant Statewide database containing all reports of suspected child abuse pending investigation, indicated and founded reports of child abuse, unfounded reports of child abuse awaiting expunction, unfounded reports accepted for services, reports alleging the need for general protective services, a family case record for all reports accepted for investigation, assessment or services, and information on reports made to the agency but not accepted for investigation or assessment.

468.     Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring its legal obligation to ensure the immediate safety of any child who is subject of a report of suspected child abuse.

469.     Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring its legal obligation to immediately transmit an oral notice or notice by electronic technologies to the county agency of the county where the suspected child abuse is alleged to have occurred, including Chester County, Chester County CYF, Monroe County, and Monroe County OCY.

470.     Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring its legal obligation to include in any report to the county agency of the county where the suspected child abuse is alleged to have occurred, including Chester County, Chester County CYF, Monroe County, and Monroe County OCY, the existence in the Statewide database of a prior or a current investigation or assessment concerning a subject of the report.

471.     Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring its legal obligation to include in any report to the county agency of the county where the suspected child abuse is alleged to have occurred, including Chester

93

County, Chester County CYF, Monroe County, and Monroe County OCY, the substance of the report.

472. Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring its legal obligation to include in any report to the county agency of the county where the suspected child abuse is alleged to have occurred, including Chester County, Chester County CYF, Monroe County, and Monroe County OCY, that a report of suspected child abuse by a perpetrator has been received.

473. Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of failing to perform adequate investigations of reported child abuse, including by conducting in-person interviews of the children who are the subject of the report.

474. Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of failing to perform adequate investigations of reported child abuse, including by conducting in-person interviews of the adults who are suspected of the abuse.

475. Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of failing to perform adequate investigations of reported child abuse, including by failing to include all of the legally required information in reports to defendants, Chester County, Chester County CYF, Monroe County, and Monroe County OCY, regarding child abuse investigations conducted by and child abuse reports received by defendant, Pennsylvania.

476. Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of failing to perform adequate investigations of reported child abuse, including by refusing to obtain information and investigate all prior reports and evidence of child abuse or crimes committed by any adult subject to a current report of suspected child abuse.

477. Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of ignoring their legal obligation to report to all appropriate law

enforcement agencies when reports of suspected child abuse contained information that a criminal offense may have been committed, including assault, battery, indecent exposure, and sexual abuse.

478.    Defendant, Pennsylvania, maintained, enforced, and promulgated unlawful and deliberately indifferent official customs, practices, and policies with respect to the release and placement of children, including Malinda Hoagland, into the care, custody, and control of adults who were unfit and unsafe to assume the care, custody and control of children, *i.e.*, Cindy Warren and Rendell Hoagland.

479.    Defendant, Pennsylvania, maintained, enforced, and promulgated an unlawful and unconstitutional policy of releasing children into the care and custody of adults who have no legal custody rights to take control or custody of said children.

480.    Each unlawful policy, custom, and practice of defendant, Pennsylvania, actually caused the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

481.    Each unlawful policy, custom, and practice of defendant, Pennsylvania, was officially promulgated by defendant Pennsylvania's officers and officials, all of whom had legal and supervisory authority to issue, promulgate, create, and enforce each of these unlawful policies, customs, and practices, which these officers and officials, in fact, did. This includes each of these defendant's directors, executives, and supervisors in charge at the time of the events giving rise to the claims brought in this action.

482.    Each unlawful policy, custom, and practice of defendant, Pennsylvania, given the persistence of these policies over months and years and the defendants' course of conduct as averred throughout this complaint, was so well-settled and permanent as to virtually constitute law.

483.    Each unlawful policy, custom, and practice of defendant, Pennsylvania, was

deliberately indifferent to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland, and shocks the conscience.

484.    Each unlawful policy, custom, and practice of defendant, Pennsylvania, violated Malinda Hoagland's clearly established constitutional rights to: remain free from torture; not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur; be free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT IX – *MONELL* CLAIM FOR FAILURE TO TRAIN PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, Coatesville Area School District, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their official and individual capacities**

485.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

486.    Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their official and individual capacities, at all times failed to adequately train their agents and employees, including those individuals who had direct contact with Malinda Hoagland, on the proper and legal means and methods of reporting and investigating suspected child abuse and neglect.

96

487.     These defendants' failure to adequately train their employees and agents on the proper and legal means and methods of reporting and investigating suspected child abuse and neglect is evident and obvious by the pervasiveness, which spanned months and years, of these defendants' deliberate disregard of the abuse, torment, torture, and starvation that Malinda Hoagland was being subjected to.

488.     These defendants' failure to adequately train their employees and agents was the moving force behind and the cause of the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

489.     The magnitude and severity of these defendants' failure to provide adequate training constitutes deliberate indifference to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland, and shocks the conscience.

490.     These defendants' failure to provide adequate training violated Malinda Hoagland's clearly established constitutional rights to: remain free from torture; not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur; be free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

**COUNT X – *MONELL* CLAIM FOR FAILURE TO TRAIN PURSUANT TO**
**42 U.S.C. § 1983**
**Plaintiffs v. Defendants, County of Chester, Chester County Children, Youth & Families,**
**and Eve Large and Doug Waegel, in their official and individual capacities**

491.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

492.    Defendants, County of Chester, Chester County CYF, and Eve Large, and Doug Waegel, in their individual and official capacities, and at all times failed to adequately train their agents and employees, including those individuals who had direct contact with Malinda Hoagland, on the proper and legal means and methods of investigating, responding to, and documenting suspected child abuse and neglect.

493.    These defendants' failure to adequately train their employees and agents on the proper and legal means and methods of investigating, responding to, and documenting suspected child abuse and neglect is evident and obvious by the pervasiveness, which spanned months and years, of these defendants' deliberate disregard of the abuse, torment, torture, and starvation that Malinda Hoagland was being subjected to.

494.    These defendants' failure to adequately train their employees and agents was the moving force behind and the cause of the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

495.    The magnitude and severity of these defendants' failure to provide adequate training constitutes deliberate indifference to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland, and shocks the conscience.

496.    These defendants' failure to provide adequate training violated Malinda Hoagland's

clearly established constitutional rights to: remain free from torture; not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur; be free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT XI – *MONELL* CLAIM FOR FAILURE TO TRAIN PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, County of Monroe, Monroe County Office of Children & Youth, and Adelaide Grace, in her individual and official capacities**

497.   The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

498.   Defendants, County of Monroe, Monroe County OCY, and Adelaide Grace, in her official and individual capacities, at all times failed to adequately train their agents and employees, including those individuals who had direct contact with Malinda Hoagland, on the proper and legal means and methods of child placement, oversight of children during custody litigation, and supervision of children living in homes with known or convicted child abusers.

499.   These defendants' failure to adequately train their employees and agents on the proper and legal means and methods of child placement, oversight of children during custody litigation, and supervision of children living in homes with known or convicted child abusers is evident and obvious by the pervasiveness, which spanned months and years, of these defendants' deliberate disregard of the abuse, torment, torture, and starvation that Malinda Hoagland was being

subjected to.

500.    These defendants' failure to adequately train their employees and agents was the moving force behind and the cause of the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

501.    The magnitude and severity of these defendants' failure to provide adequate training constitutes deliberate indifference to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland, and shocks the conscience.

502.    These defendants' failure to provide adequate training violated Malinda Hoagland's clearly established constitutional rights to: remain free from torture; not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur; be free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT XII – *MONELL* CLAIM FOR FAILURE TO TRAIN PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendant, Commonwealth of Pennsylvania**

503.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

504.    Defendant, Pennsylvania, at all times failed to adequately train their agents and

employees, including those individuals who had direct contact with Malinda Hoagland, on the proper and legal means and methods of reporting suspected child abuse, investigating suspected child abuse, coordination and communication with related county agencies regarding reports of suspected child abuse, child placement, oversight of children during custody litigation, and supervision of children living in homes with known or convicted child abusers.

505.    Defendant Pennsylvania's failure to adequately train its employees and agents on proper and legal means and methods of reporting suspected child abuse, investigating suspected child abuse, coordination and communication with related county agencies regarding reports of suspected child abuse, child placement, oversight of children during custody litigation, and supervision of children living in homes with known or convicted child abusers is evident and obvious by the pervasiveness, which spanned months and years, of these defendants' deliberate disregard of the abuse, torment, torture, and starvation that Malinda Hoagland was being subjected to.

506.    Defendant Pennsylvania's failure to adequately train its employees and agents was the moving force behind and the cause of the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

507.    The magnitude and severity of Defendant Pennsylvania's failure to provide adequate training constitutes deliberate indifference to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland, and shocks the conscience.

508.    Defendant Pennsylvania's failure to provide adequate training violated Malinda Hoagland's clearly established constitutional rights to: remain free from torture; not be removed

from a safe environment and placed into one in which it is clear that harm is likely to occur; be free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

## COUNT XIII – NEGLIGENCE AND RECKLESSNESS
**Plaintiffs v. Defendants, Coatesville Area School District, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their official and individual capacities**

509.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

510.    Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual and official capacities, and through their agents and employees, were each negligent and reckless, in their acts and omissions, in one or more of the following ways:

a) Failing to report obvious signs of physical abuse, sexual abuse, starvation, and torture of Malinda Hoagland to the appropriate agencies and authorities;

b) Failing to adequately and timely interview and speak with Malinda Hoagland, in response to her obvious signs of abuse, to inquire whether Malinda Hoagland was the subject of any physical, sexual, or psychological abuse at home;

c) Failure to properly respond to Malinda Hoagland's signs and symptoms of physical abuse,

sexual abuse, malnourishment, and starvation;

d) Failure to adequately communicate internally regarding Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation;

e) Failure to notify law enforcement regarding Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation;

f) Failure to report Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation to Chester County, Chester County CYF, and Pennsylvania;

g) Failure to properly and timely respond to, intervene on, and deal with Malinda Hoagland's absences and truancy;

h) Failure to enact appropriate policies and procedures with respect to investigating and reporting child abuse;

i) Failure to employ adequate interview techniques, with appropriate privacy and sensitivity, in order to elicit the full extent of and contours of all abuse being suffered by Malinda Hoagland, including physical abuse, sexual abuse, neglect, psychological abuse, and starvation;

j) Failure to adequately and properly train their employees regarding the proper means and methods of investigating and responding to signs and symptoms of child abuse and neglect;

k) Failure to adequately and properly train their employees regarding the proper means and methods of reporting suspected child abuse and neglect;

l) Failure to require conferences with Rendell Hoagland and Cindy Warren to discuss Malinda Hoagland's status as a student;

m) Deliberately and recklessly releasing Malinda into a home where these defendants knew that Malinda Hoagland was the subject of physical abuse, sexual abuse, neglect,

psychological abuse, and starvation;

n) Failing to adequately appreciate, respond to, and report Malinda Hoagland's serial behavior of begging lunch-room personnel for extra food while at school;

o) Failing to adequately record and report Malinda Hoagland's absences from school;

p) Failing to adequately and timely report Malinda Hoagland's absences from school to all appropriate agencies, including Pennsylvania, Chester County, and Chester County CYF;

q) Failure to exercise due care under the circumstances;

r) Knowingly disregarding the known legal requirements with respect to reporting and investigating signs, symptoms, and reports of child abuse;

s) Failing to properly and adequately communicate with and interact with Rendell Hoagland regarding Malinda Hoagland;

t) Failing to properly and adequately communicate with and interact with Cindy Warren regarding Malinda Hoagland;

u) Deliberately releasing Malinda Hoagland into a home where defendants knew she lived with Cindy Warren who was a convicted child abuser with no legal rights to live with Malinda Hoagland;

v) Deliberately releasing Malinda Hoagland into a home where defendants knew she lived with Cindy Warren who was a convicted child abuser who was legally prohibited from residing full- time with Malinda Hoagland;

w) Failing to adequately provide services to Malinda Hoagland to assist her with dealing with the custody dispute between her biological parents; and/or

x) Failing to adequately investigate and determine the background and status of all adults living with and residing with Malinda Hoagland.

511.    As a direct and proximate result and cause of the negligent and reckless acts and

omissions of these defendants, Plaintiffs suffered the injuries and damages set forth in this Complaint, and Malinda Hoagland suffered the injuries and damages set forth in this Complaint.

512.    At all times material hereto, the defendants' agents and employees involved directly in the negligent and reckless acts and omissions averred throughout this Complaint were acting within the course and scope of their employment and/or agency relationship with defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, and Upper Dublin School District, over whom these defendants had control and right of control.

513.    The negligent and reckless acts and omissions of these defendants caused Malinda Hoagland's injuries, damages, and death.

514.    These defendants' negligent and reckless acts and omissions caused the Plaintiffs' injuries and damages and the injuries and damages of Malinda Hoagland, including but not limited to, subjecting Malinda Hoagland to being a victim and creating an environment where Malinda Hoagland was a victim of criminal trafficking in violation of 18 Pa. C.S. § 3011(b).

515.    As a direct result and cause of these defendants' negligent and reckless acts or omissions, Rendell Hoagland harbored and maintained Malinda Hoagland knowing or recklessly disregarding that Malinda Hoagland would be subject to sexual servitude.

516.    As a direct result and cause of these defendants' negligent and reckless acts or omissions, Cindy Warren harbored and maintained Malinda Hoagland knowing or recklessly disregarding that Malinda Hoagland would be subject to sexual servitude.

517.    Malinda Hoagland was subject to sexual servitude because, as a direct result of the negligent and reckless acts and omissions of these defendants, sex acts were performed by Rendell Hoagland and Cindy Warren that were induced or obtained from Malinda Hoagland, who was a minor at the time of these sex acts.

518.    These sex acts included forcing Malinda to strip naked, filming Malinda while

naked, chaining Malinda to furniture in the bedroom while naked, filming Malinda chained to furniture naked, and rubbing lotion and/or Vaseline all over Malinda's body while naked or partially naked.

519. These sex acts were performed and undertaken for the purpose of gratifying the sexual desire of Rendell Hoagland and Cindy Warren.

520. Any exposure of the sexual or other intimate parts of any individual for the purpose of gratifying the sexual desire of any individual constitutes a sex act.

521. These defendants' negligent and reckless acts and omissions caused the Plaintiffs' injuries and damages and the injuries and damages of Malinda Hoagland, including but not limited to, subjecting Malinda Hoagland to being a victim and creating an environment where Malinda Hoagland was a victim of criminal involuntary servitude in violation of 18 Pa. C.S. § 3012.

522. As a direct result and cause of these defendants' negligent and reckless acts or omissions, Rendell Hoagland and Cindy Warren knowingly subjected Malinda Hoagland to labor servitude and sexual servitude that was not permissible under federal or state law.

523. Rendell Hoagland and Cindy Warren subjected Malinda Hoagland to labor and sexual servitude by:

a) Causing serious harm to Malinda Hoagland sexually by forced sexual acts;

b) Threatening serious harm to Malinda Hoagland by threatened sexual acts;

c) Kidnapping Malinda Hoagland for purposes of engaging in sex acts with Malinda Hoagland;

d) Abusing the legal process with regard to custody of Malinda Hoagland;

e) Taking and retaining Malinda Hoagland's personal property as a means of coercion with respect to sex acts;

f) Duress, through the use of threat to use unlawful force against Malinda Hoagland;

106

g)  Forcing Malinda Hoagland to strip naked or partially naked;

h)  Filming Malinda Hoagland naked or partially naked;

i)  Forcing Malinda Hoagland to engage in forced exercise or calisthenics while naked or partially naked;

j)  Rubbing lotion and/or Vaseline over Malinda Hoagland's body while naked or partially naked;

k)  Forcing Malinda Hoagland to remain chained to furniture in the adults' bedroom while naked or partially naked;

l)  Forcing Malinda Hoagland to be filmed while chained to furniture in the adults' bedroom while naked or partially naked; and

m)  Using a scheme, plan or pattern intended to cause Malinda Hoagland to believe that if she did not perform the labor, services, acts, or performances, that she or another individual would suffer serious harm or physical restraint.

524.    The above-referenced acts and conduct were performed and undertaken for the purpose of gratifying the sexual desire of Rendell Hoagland and Cindy Warren.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

## COUNT XIV – NEGLIGENCE AND RECKLESSNESS
**Plaintiffs v. Defendants, County of Chester, Chester County Children, Youth & Families, and Eve Large and Doug Waegel, in their official and individual capacities**

525.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

526.    Defendants, Chester County, Chester County CYS, and Eve Large and Doug

Waegel, in their official and individual capacities, by and through their agents and employees, were each negligent and reckless, in their acts and omissions, in one or more of the following ways:

a) Failing to properly investigate and respond to obvious signs of physical abuse, sexual abuse, starvation, and torture of Malinda Hoagland to the appropriate agencies and authorities;

b) Failing to adequately and timely interview and speak with Malinda Hoagland, in response to reports and obvious signs of abuse, to inquire whether Malinda Hoagland was the subject of any physical, sexual, or psychological abuse at home;

c) Failure to properly respond to Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation;

d) Failure to adequately communicate internally regarding Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation;

e) Failure to notify law enforcement regarding Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation and the received reports of abuse;

f) Failure to report Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation to defendant Pennsylvania;

g) Failure to enact appropriate policies and procedures with respect to investigating and reporting child abuse;

h) Failing to interview Malinda about any of the reports of suspected abuse to which Malinda was a victim;

i) Failure to employ adequate interview techniques with Rendell Hoagland and Cindy Warren, with appropriate privacy and sensitivity, in order to elicit the full extent of and contours of all abuse being suffered by Malinda Hoagland, including physical abuse, sexual

abuse, neglect, psychological abuse, and starvation;

j)  Failure to reconcile conflicting reports regarding the cause of injuries to Malinda that were provided by various adults, including Malinda Hoagland, Rendell Hoagland, Cindy Warren, and school employees and officials;

k)  Failure to adequately and properly train their employees regarding the proper means and methods of investigating and responding to signs and symptoms of child abuse and neglect;

l)  Deliberately releasing Malinda into a home where these defendants knew that Malinda Hoagland was the subject of physical abuse, sexual abuse, neglect, psychological abuse, and starvation;

m) Failing to adequately and timely report Malinda Hoagland's absences from school to all appropriate agencies, including Pennsylvania, Chester County, and Chester County CYF;

n)  Failure to exercise due care under the circumstances;

o)  Deliberately disregarding the known legal requirements with respect to reporting and investigating signs, symptoms, and reports of child abuse;

p)  Failing to properly and adequately communicate with and interact with Rendell Hoagland regarding Malinda Hoagland;

q)  Failing to properly and adequately communicate with and interact with Cindy Warren regarding Malinda Hoagland;

r)  Deliberately releasing Malinda Hoagland into a home where defendants knew she lived with Cindy Warren who was a convicted child abuser with no legal rights to live with Malinda Hoagland;

s)  Deliberately releasing Malinda Hoagland into a home where defendants knew she lived with Cindy Warren who was a convicted child abuser who was legally prohibited from residing full- time with Malinda Hoagland;

109

t) Failing to remove Malinda Hoagland from the home of Rendell Hoagland and Cindy Warren;

u) Failing to institute protective measures for the benefit of Malinda Hoagland;

v) Failing to intervene to remove Malinda from any residence with Cindy Warren;

w) Failing to intervene to remove Malinda from any residence with Rendell Hoagland;

x) Failing to adequately provide services to Malinda Hoagland to assist her with dealing with the custody dispute between her biological parents; and/or

y) Failing to adequately investigate and determine the background and status of all adults living with and residing with Malinda Hoagland, including Cindy Warren.

527.     As a direct and proximate result and cause of the negligent and reckless acts and omissions of these defendants, Plaintiffs suffered the injuries and damages set forth in this Complaint, and Malinda Hoagland suffered the injuries and damages set forth in this Complaint.

528.     At all times material hereto, the defendants' agents and employees involved directly in the negligent and reckless acts and omissions averred throughout this Complaint were acting within the course and scope of their employment and/or agency relationship with defendants, Chester County and Chester County CYF, over whom these defendants had control and right of control.

529.     The negligent and reckless acts and omissions of these defendants caused Malinda Hoagland's injuries, damages, and death.

530.     These defendants' negligent and reckless acts and omissions caused the Plaintiffs' injuries and damages and the injuries and damages of Malinda Hoagland, including but not limited to, subjecting Malinda Hoagland to being a victim and creating an environment where Malinda Hoagland was a victim of criminal trafficking in violation of 18 Pa. C.S. § 3011(b).

531.     As a direct result and cause of these defendants' negligent and reckless acts or

omissions, Rendell Hoagland harbored and maintained Malinda Hoagland knowing or recklessly disregarding that Malinda Hoagland would be subject to sexual servitude.

532.    As a direct result and cause of these defendants' negligent acts or omissions, Cindy Warren harbored and maintained Malinda Hoagland knowing or recklessly disregarding that Malinda Hoagland would be subject to sexual servitude.

533.    Malinda Hoagland was subject to sexual servitude because, as a direct result of the negligent acts and omissions of these defendants, sex acts were performed by Rendell Hoagland and Cindy Warren that were induced or obtained from Malinda Hoagland, who was a minor at the time of these sex acts.

534.    These sex acts included forcing Malinda to strip naked, filming Malinda while naked, chaining Malinda to furniture in the bedroom while naked, filming Malinda chained to furniture naked, and rubbing lotion and/or Vaseline all over Malinda's body while naked or partially naked.

535.    These sex acts were performed and undertaken for the purpose of gratifying the sexual desire of Rendell Hoagland and Cindy Warren.

536.    Any exposure of the sexual or other intimate parts of any individual for the purpose of gratifying the sexual desire of any individual constitutes a sex act.

537.    These defendants' negligent and reckless acts and omissions caused the Plaintiffs' injuries and damages and the injuries and damages of Malinda Hoagland, including but not limited to, subjecting Malinda Hoagland to being a victim and creating an environment where Malinda Hoagland was a victim of criminal involuntary servitude in violation of 18 Pa. C.S. § 3012.

538.    As a direct result and cause of these defendants' negligent and reckless acts or omissions, Rendell Hoagland and Cindy Warren knowingly subjected Malinda Hoagland to labor servitude and sexual servitude that was not permissible under federal or state law.

111

539.   Rendell Hoagland and Cindy Warren subjected Malinda Hoagland to labor and sexual servitude by:

a)   Causing serious harm to Malinda Hoagland sexually by forced sexual acts;

b)   Threatening serious harm to Malinda Hoagland by threatened sexual acts;

c)   Kidnapping Malinda Hoagland for purposes of engaging in sex acts with Malinda Hoagland;

d)   Abusing the legal process with regard to custody of Malinda Hoagland;

e)   Taking and retaining Malinda Hoagland's personal property as a means of coercion with respect to sex acts;

f)   Duress, through the use of threat to use unlawful force against Malinda Hoagland;

g)   Forcing Malinda Hoagland to strip naked or partially naked;

h)   Filming Malinda Hoagland naked or partially naked;

i)   Forcing Malinda Hoagland to engage in forced exercise or calisthenics while naked or partially naked;

j)   Rubbing lotion and/or Vaseline over Malinda Hoagland's body while naked or partially naked;

k)   Forcing Malinda Hoagland to remain chained to furniture in the adults' bedroom while naked or partially naked;

l)   Forcing Malinda Hoagland to be filmed while chained to furniture in the adults' bedroom while naked or partially naked; and

m)   Using a scheme, plan or pattern intended to cause Malinda Hoagland to believe that if she did not perform the labor, services, acts, or performances, that she or another individual would suffer serious harm or physical restraint.

540.   The above-referenced acts and conduct were performed and undertaken for the

purpose of gratifying the sexual desire of Rendell Hoagland and Cindy Warren.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

<u>**COUNT XV – NEGLIGENCE AND RECKLESSNESS**</u>
**Plaintiffs v. Defendants, County of Monroe, Monroe County Office of Children & Youth, and Adelaide Grace, in her official and individual capacities**

541.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

542.    Defendants, Monroe County, Monroe County OCY, and Adelaide Grace, in her individual and official capacities, by and through their agents and employees, were each negligent and reckless, in their acts and omissions, in one or more of the following ways:

a) Allowing Malinda Hoagland to remain in a home with a known and convicted child abuser (Cindy Warren) who defendants knew posed a fair and foreseeable risk of bodily harm and death to Malinda Hoagland;

b) Deliberately releasing Malinda Hoagland into the care and custody of Cindy Warrant in light of what these defendants knew about Cindy Warren's propensity for violence toward children;

c) Failing to properly investigate and respond to obvious signs of physical abuse, sexual abuse, starvation, and torture of Malinda Hoagland to the appropriate agencies and authorities;

d) Failing to adequately and timely interview and speak with Malinda Hoagland regarding her residing with Cindy Warren;

e) Failure to properly respond to Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation;

f) Failure to adequately communicate internally regarding Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation;

g) Failure to notify law enforcement regarding Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation and the received reports of abuse;

h) Failure to report Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation to defendant Pennsylvania;

i) Failure to enact appropriate policies and procedures with respect to investigating and reporting child abuse;

j) Failing to interview Malinda about any of the reports of suspected abuse to which Malinda was a victim;

k) Failure to employ adequate interview techniques with Rendell Hoagland and Cindy Warren, with appropriate privacy and sensitivity, in order to elicit the full extent of and contours of all abuse being suffered by Malinda Hoagland, including physical abuse, sexual abuse, neglect, psychological abuse, and starvation;

l) Failure to adequately and properly train their employees regarding the proper means and methods of investigating and responding to signs and symptoms of child abuse and neglect;

m) Deliberately releasing Malinda into a home where these defendants knew that Malinda Hoagland was the subject of physical abuse, sexual abuse, neglect, psychological abuse, and starvation;

n) Deliberately disregarding the known legal requirements with respect to reporting and investigating signs, symptoms, and reports of child abuse;

o) Failing to properly and adequately communicate with and interact with Rendell Hoagland regarding Malinda Hoagland;

p) Failing to properly and adequately communicate with and interact with Cindy Warren regarding Malinda Hoagland;

q) Deliberately releasing Malinda Hoagland into a home where defendants knew she lived with Cindy Warren who was a convicted child abuser with no legal rights to live with Malinda Hoagland;

r) Deliberately releasing Malinda Hoagland into a home where defendants knew she lived with Cindy Warren who was a convicted child abuser who was legally prohibited from residing full- time with Malinda Hoagland;

s) Failing to remove Malinda Hoagland from the home of Rendell Hoagland and Cindy Warren;

t) Failing to institute protective measures for the benefit of Malinda Hoagland;

u) Failing to intervene to remove Malinda from any residence with Cindy Warren;

v) Failing to intervene to remove Malinda from any residence with Rendell Hoagland;

w) Failing to adequately provide services to Malinda Hoagland to assist her with dealing with the custody dispute between her biological parents; and/or

x) Failing to adequately investigate and determine the background and status of all adults living with and residing with Malinda Hoagland, including Cindy Warren.

543.    As a direct and proximate result and cause of the negligent and reckless acts and omissions of these defendants, Plaintiffs suffered the injuries and damages set forth in this Complaint, and Malinda Hoagland suffered the injuries and damages set forth in this Complaint.

544.    At all times material hereto, the defendants' agents and employees involved directly in the negligent and reckless  acts and omissions averred throughout this Complaint were acting within the course and scope of their employment and/or agency relationship with defendants, Monroe County and Monroe County OCY, over whom these defendants had control and right of

control.

545.     The negligent and reckless acts and omissions of these defendants caused Malinda Hoagland's injuries, damages, and death.

546.     These defendants' negligent and reckless acts and omissions caused the Plaintiffs' injuries and damages and the injuries and damages of Malinda Hoagland, including but not limited to, subjecting Malinda Hoagland to being a victim and creating an environment where Malinda Hoagland was a victim of criminal trafficking in violation of 18 Pa. C.S. § 3011(b).

547.     As a direct result and cause of these defendants' negligent and reckless acts or omissions, Rendell Hoagland harbored and maintained Malinda Hoagland knowing or recklessly disregarding that Malinda Hoagland would be subject to sexual servitude.

548.     As a direct result and cause of these defendants' negligent and reckless acts or omissions, Cindy Warren harbored and maintained Malinda Hoagland knowing or recklessly disregarding that Malinda Hoagland would be subject to sexual servitude.

549.     Malinda Hoagland was subject to sexual servitude because, as a direct result of the negligent and reckless acts and omissions of these defendants, sex acts were performed by Rendell Hoagland and Cindy Warren that were induced or obtained from Malinda Hoagland, who was a minor at the time of these sex acts.

550.     These sex acts included forcing Malinda to strip naked, filming Malinda while naked, chaining Malinda to furniture in the bedroom while naked, filming Malinda chained to furniture naked, and rubbing lotion and/or Vaseline all over Malinda's body while naked or partially naked.

551.     These sex acts were performed and undertaken for the purpose of gratifying the sexual desire of Rendell Hoagland and Cindy Warren.

552.     Any exposure of the sexual or other intimate parts of any individual for the purpose of gratifying the sexual desire of any individual constitutes a sex act.

553.     These defendants' negligent and reckless acts and omissions caused the Plaintiffs' injuries and damages and the injuries and damages of Malinda Hoagland, including but not limited to, subjecting Malinda Hoagland to being a victim and creating an environment where Malinda Hoagland was a victim of criminal involuntary servitude in violation of 18 Pa. C.S. § 3012.

554.     As a direct result and cause of these defendants' negligent and reckless acts or omissions, Rendell Hoagland and Cindy Warren knowingly subjected Malinda Hoagland to labor servitude and sexual servitude that was not permissible under federal or state law.

555.     Rendell Hoagland and Cindy Warren subjected Malinda Hoagland to labor and sexual servitude by:

n)  Causing serious harm to Malinda Hoagland sexually by forced sexual acts;

o)  Threatening serious harm to Malinda Hoagland by threatened sexual acts;

p)  Kidnapping Malinda Hoagland for purposes of engaging in sex acts with Malinda Hoagland;

q)  Abusing the legal process with regard to custody of Malinda Hoagland;

r)  Taking and retaining Malinda Hoagland's personal property as a means of coercion with respect to sex acts;

s)  Duress, through the use of threat to use unlawful force against Malinda Hoagland;

t)  Forcing Malinda Hoagland to strip naked or partially naked;

u)  Filming Malinda Hoagland naked or partially naked;

v)  Forcing Malinda Hoagland to engage in forced exercise or calisthenics while naked or partially naked;

w) Rubbing lotion and/or Vaseline over Malinda Hoagland's body while naked or partially naked;

x) Forcing Malinda Hoagland to remain chained to furniture in the adults' bedroom while naked or partially naked;

y) Forcing Malinda Hoagland to be filmed while chained to furniture in the adults' bedroom while naked or partially naked; and

z) Using a scheme, plan or pattern intended to cause Malinda Hoagland to believe that if she did not perform the labor, services, acts, or performances, that she or another individual would suffer serious harm or physical restraint.

556.    The above-referenced acts and conduct were performed and undertaken for the purpose of gratifying the sexual desire of Rendell Hoagland and Cindy Warren.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT XVI – NEGLIGENCE AND RECKLESSNESS
**Plaintiffs v. Defendant, Commonwealth of Pennsylvania**

557.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

558.    Defendant, Pennsylvania, by and through its agents and employees, were each negligent and reckless, in their acts and omissions, in one or more of the following ways:

a) Failing to properly communicate with Chester County, Chester County CYF, Monroe County, and Monroe County OCY regarding Malinda Hoagland's reports of child abuse;

b) Failing to properly communicate with Chester County, Chester County CYF, Monroe County, and Monroe County OCY regarding Cindy Warren's status as a convicted child

abuser given these defendants' knowledge that Cindy Warren resided with Rendell Hoagland;

c) Failing to adequately and properly maintain the mandated Statewide database containing information regarding prior abuse reports involving Malinda Hoagland, prior criminal convictions of Cindy Warren, and prior abuse reports involving Cindy Warren;

d) Failing to properly investigate and respond to obvious signs of physical abuse, sexual abuse, starvation, and torture of Malinda Hoagland to the appropriate agencies and authorities;

e) Failure to provide full, complete, and accurate information to defendants, Chester County, Chester County CYF, Monroe County, and Monroe County OCY regarding Malinda Hoagland and Cindy Warren with respect to child abuse;

f) Failing to adequately and timely interview and speak with Malinda Hoagland, in response to reports and obvious signs of abuse, to inquire whether Malinda Hoagland was the subject of any physical, sexual, or psychological abuse at home;

g) Failure to properly respond to Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation;

h) Failure to adequately communicate internally regarding Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation;

i) Failure to notify law enforcement regarding Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation and the received reports of abuse;

j) Failure to report Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation to defendant Pennsylvania;

k) Failure to enact appropriate policies and procedures with respect to investigating and reporting child abuse;

l) Failing to interview Malinda about any of the reports of suspected abuse to which Malinda was a victim;

m) Failure to employ adequate interview techniques with Rendell Hoagland and Cindy Warren, with appropriate privacy and sensitivity, in order to elicit the full extent of and contours of all abuse being suffered by Malinda Hoagland, including physical abuse, sexual abuse, neglect, psychological abuse, and starvation;

n) Failure to reconcile conflicting reports regarding the cause of injuries to Malinda that were provided by various adults, including Malinda Hoagland, Rendell Hoagland, Cindy Warren, and school employees and officials;

o) Failure to adequately and properly train their employees regarding the proper means and methods of investigating and responding to signs and symptoms of child abuse and neglect;

p) Releasing Malinda into a home where these defendants knew that Malinda Hoagland was the subject of physical abuse, sexual abuse, neglect, psychological abuse, and starvation;

q) Failing to adequately and timely report Malinda Hoagland's absences from school to all appropriate agencies, including Pennsylvania, Chester County, and Chester County CYF;

r) Failure to exercise due care under the circumstances;

s) Disregarding the known legal requirements with respect to reporting and investigating signs, symptoms, and reports of child abuse;

t) Failing to properly and adequately communicate with and interact with Rendell Hoagland regarding Malinda Hoagland;

u) Failing to properly and adequately communicate with and interact with Cindy Warren regarding Malinda Hoagland;

v) Releasing Malinda Hoagland into a home where defendants knew she lived with Cindy Warren who was a convicted child abuser with no legal rights to live with Malinda Hoagland;

w) Releasing Malinda Hoagland into a home where defendants knew she lived with Cindy Warren who was a convicted child abuser who was legally prohibited from residing full-time with Malinda Hoagland;

x) Failing to remove Malinda Hoagland from the home of Rendell Hoagland and Cindy Warren;

y) Failing to institute protective measures for the benefit of Malinda Hoagland;

z) Failing to intervene to remove Malinda from any residence with Cindy Warren;

aa) Failing to intervene to remove Malinda from any residence with Rendell Hoagland;

bb) Failing to adequately provide services to Malinda Hoagland to assist her with dealing with the custody dispute between her biological parents; and/or

cc) Failing to adequately investigate and determine the background and status of all adults living with and residing with Malinda Hoagland, including Cindy Warren.

559.    As a direct and proximate result and cause of the negligent and reckless acts and omissions of defendant Pennsylvania, Plaintiffs suffered the injuries and damages set forth in this Complaint, and Malinda Hoagland suffered the injuries and damages set forth in this Complaint.

560.    At all times material hereto, defendant Pennsylvania's agents and employees involved directly in the negligent acts and omissions averred throughout this Complaint were

acting within the course and scope of their employment and/or agency relationship with defendant, Pennsylvania, over whom defendant Pennsylvania had control and right of control.

561.    The negligent and reckless acts and omissions of defendant Pennsylvania caused Malinda Hoagland's injuries, damages, and death.

562.    Defendant Pennsylvania's negligent and reckless acts and omissions caused the Plaintiffs' injuries and damages and the injuries and damages of Malinda Hoagland, including but not limited to, subjecting Malinda Hoagland to being a victim and creating an environment where Malinda Hoagland was a victim of criminal trafficking in violation of 18 Pa. C.S. § 3011(b).

563.    As a direct result and cause of defendant Pennsylvania's negligent and reckless acts or omissions, Rendell Hoagland harbored and maintained Malinda Hoagland knowing or recklessly disregarding that Malinda Hoagland would be subject to sexual servitude.

564.    As a direct result and cause of defendant Pennsylvania's negligent and reckless acts or omissions, Cindy Warren harbored and maintained Malinda Hoagland knowing or recklessly disregarding that Malinda Hoagland would be subject to sexual servitude.

565.    Malinda Hoagland was subject to sexual servitude because, as a direct result of the negligent and reckless acts and omissions of defendant Pennsylvania, sex acts were performed by Rendell Hoagland and Cindy Warren that were induced or obtained from Malinda Hoagland, who was a minor at the time of these sex acts.

566.    These sex acts included forcing Malinda to strip naked, filming Malinda while naked, chaining Malinda to furniture in the bedroom while naked, filming Malinda chained to furniture naked, and rubbing lotion and/or Vaseline all over Malinda's body while naked or partially naked.

567.     These sex acts were performed and undertaken for the purpose of gratifying the sexual desire of Rendell Hoagland and Cindy Warren.

568.     Any exposure of the sexual or other intimate parts of any individual for the purpose of gratifying the sexual desire of any individual constitutes a sex act.

569.     Defendant Pennsylvania's negligent and reckless acts and omissions caused the Plaintiffs' injuries and damages and the injuries and damages of Malinda Hoagland, including but not limited to, subjecting Malinda Hoagland to being a victim and creating an environment where Malinda Hoagland was a victim of criminal involuntary servitude in violation of 18 Pa. C.S. § 3012.

570.     As a direct result and cause of defendant Pennsylvania's negligent and reckless acts or omissions, Rendell Hoagland and Cindy Warren knowingly subjected Malinda Hoagland to labor servitude and sexual servitude that was not permissible under federal or state law.

571.     Rendell Hoagland and Cindy Warren subjected Malinda Hoagland to labor and sexual servitude by:

a)  Causing serious harm to Malinda Hoagland sexually by forced sexual acts;

b)  Threatening serious harm to Malinda Hoagland by threatened sexual acts;

c)  Kidnapping Malinda Hoagland for purposes of engaging in sex acts with Malinda Hoagland;

d)  Abusing the legal process with regard to custody of Malinda Hoagland;

e)  Taking and retaining Malinda Hoagland's personal property as a means of coercion with respect to sex acts;

f)  Duress, through the use of threat to use unlawful force against Malinda Hoagland;

g)  Forcing Malinda Hoagland to strip naked or partially naked;

h)  Filming Malinda Hoagland naked or partially naked;

i)  Forcing Malinda Hoagland to engage in forced exercise or calisthenics while naked or partially naked;

j)  Rubbing lotion and/or Vaseline over Malinda Hoagland's body while naked or partially naked;

k)  Forcing Malinda Hoagland to remain chained to furniture in the adults' bedroom while naked or partially naked;

l)  Forcing Malinda Hoagland to be filmed while chained to furniture in the adults' bedroom while naked or partially naked; and

m) Using a scheme, plan or pattern intended to cause Malinda Hoagland to believe that if she did not perform the labor, services, acts, or performances, that she or another individual would suffer serious harm or physical restraint.

572.    The above-referenced acts and conduct were performed and undertaken for the purpose of gratifying the sexual desire of Rendell Hoagland and Cindy Warren.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### FIRST CAUSE OF ACTION – WRONGFUL DEATH
**Plaintiffs v. All Defendants**

573.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

574.    Plaintiffs bring this action under and by virtue of the Wrongful Death Act, 42 Pa. C.S. §  8301, and the applicable Rules of Civil Procedure and decisional law.

575.    Under Pennsylvania's Wrongful Death Act, Plaintiff's Decedent, Malinda Hoagland, left surviving adult individuals who may be entitled to recover damages, including Plaintiffs, Emily Lee, Jamie Hoagland, and Abbey Hoagland.

576.    As a cause and result of the wrongful conduct, constitutional violations, unlawful conduct, negligence, and recklessness of the Defendants set forth throughout this Complaint, Plaintiff's Decedent, Malinda Hoagland, was caused serious and grave injuries including death, resulting in an entitlement to damages under the Wrongful Death Act.

577.    Plaintiffs, as the Co-Administrators of the Estate of Malinda Hoagland, Deceased, claim the full measure of damages recoverable under the Wrongful Death Act.

578.    Rendell Hoagland, Malinda Hoagland's biological father, is legally prohibited from recovering any damages, property, money, or relief in this action pursuant to Pennsylvania's Slayer's Act, 20 Pa. C.S. §§ 8801 *et seq.*

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

## SECOND CAUSE OF ACTION– SURVIVAL ACTION
### Plaintiffs v. All Defendants

579.    The preceding paragraphs of this Complaint are incorporated as though fully set forth therein.

580.    Plaintiffs bring this Survival Action on behalf of the Estate of Malinda Hoagland, Deceased, under and by virtue of the Pennsylvania Survival Act, 42 Pa. C.S. § 8302, and the applicable Rules of Civil Procedure and decisional law.

581.    As a cause and result of the wrongful conduct, constitutional violations, unlawful conduct, negligence, and recklessness of the Defendants set forth throughout this Complaint, Plaintiff's Decedent, Malinda Hoagland, was caused serious and grave injuries including death, resulting in an entitlement to damages under the Survival Act.

582.     On behalf of the Survival Act beneficiaries, plaintiff claims all damages available under the Survival Act, including but not limited to all economic damages and non-economic damages.

583.     Rendell Hoagland, Malinda Hoagland's biological father, is legally prohibited from recovering any damages, property, money, or relief in this action pursuant to Pennsylvania's Slayer's Act, 20 Pa. C.S. §§ 8801 *et seq.*

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.


Respectfully submitted,

**BOSWORTH LAW LLC**


Date: 9/13/24                                By: _____

THOMAS E. BOSWORTH, ESQUIRE
123 South Broad Street, Suite 1100
Philadelphia, PA 19109
(267) 928-4183
tom@tombosworthlaw.com
Philadelphia, PA 19109
*Attorney for Plaintiffs*

## <u>VERIFICATION</u>

I, Thomas E. Bosworth, Esq., attorney for the plaintiffs herein, verify that the facts set forth in the foregoing amended complaint are true and correct to the best of my knowledge, information, and belief.


Respectfully submitted,

**BOSWORTH LAW LLC**


Date: 9/13/24                          By: _____

THOMAS E. BOSWORTH, ESQUIRE
123 South Broad Street, Suite 1100
Philadelphia, PA 19109
(267) 928-4183
tom@tombosworthlaw.com
Philadelphia, PA 19109
*Attorney for Plaintiffs*