## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMILY LEE, JAMIE HOAGLAND, and ABBEY HOAGLAND, Individually and as Co-Administrators of the ESTATE OF MALINDA HOAGLAND, | : : : : | CIVIL ACTION NO.: 2:24-cv-04180 |
| *Plaintiffs*, | : : | |
| v. | : : | |
| COUNTY OF CHESTER, *et al.*, | : : | |
| *Defendants*. | | |

## ORDER

**AND NOW**, this          day of                    , 2024, upon consideration of the Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss on behalf of Defendants Upper Dublin School District, Laurie Smith, and Steven M. Yanni, the Memorandum of Law in support thereof, and any response thereto, it is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED**.

It is further **ORDERED** that Counts I, V, XI, and XIII, as set forth in Plaintiffs' Amended Complaint against Defendants Upper Dublin School District, Laurie Smith, and Steven M. Yanni, are hereby **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
Hon. R. BARCLAY SURRICK

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| EMILY LEE, JAMIE HOAGLAND, and ABBEY HOAGLAND, Individually and as Co-Administrators of the ESTATE OF MALINDA HOAGLAND, | : : : : : | CIVIL ACTION NO.: 2:24-cv-04180 |
| *Plaintiffs*, | : : | |
| v. | : : | |
| COUNTY OF CHESTER, *et al.*, | : : | |
| *Defendants*. | : : : | |

### RULE 12(b)(6) MOTION TO DISMISS FILED ON BEHALF OF DEFENDANTS UPPER DUBLIN SCHOOL DISTRICT, LAURIE SMITH, AND STEVEN M. YANNI

Defendants Upper Dublin School District, Laurie Smith, and Steven M. Yanni, by and through the undersigned counsel, Marshall Dennehey, P.C., Joseph J. Santarone, Jr., Esquire and Joshua W. Brownlie, Esquire hereby respectfully move pursuant to Civil Rule 12(b)(6) for dismissal of the Amended Complaint and request this Honornable Court enter the proposed Order for the reasons set forth in the attached Memorandum of Law, incorporated herein by reference.

Respectfully Submitted,

**MARSHALL DENNEHEY, P.C.,**

BY: _____

JOSEPH J. SANTARONE, JR.
JOSHUA W. BROWNLIE
PA Attorney ID Nos.: 45723, 330511
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(215) 575-2626

*Attorneys for Defendants Upper Dublin School District, Laurie Smith, and Steven M. Yanni*

Date:  October 15, 2024

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMILY LEE, JAMIE HOAGLAND, and ABBEY HOAGLAND, Individually and as Co-Administrators of the ESTATE OF MALINDA HOAGLAND, | : : : : : | CIVIL ACTION NO.: 2:24-cv-04180 |
| *Plaintiffs*, | : : | |
| v. | : : | |
| COUNTY OF CHESTER, *et al.*, | : : | |
| *Defendants*. | : : | |

## MEMORANDUM OF LAW IN SUPPORT OF THE
## RULE 12(b)(6) MOTION TO DISMISS FILED ON BEHALF OF
## DEFENDANTS UPPER DUBLIN SCHOOL DISTRICT, SMITH, AND YANNI

### INTRODUCTION

"Judges and lawyers, like other humans, are moved by natural sympathy in a case like this[.]" *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989). Taking the averments in the Amended Complaint as true, the death of twelve-year-old Malinda Hoagland is a profound tragedy. No one can dispute that. The torture Malinda suffered at the hands of her father and his paramour is a devastating testament to the cruelty lurking within the shadows of a decent and civilized society. However, tragedy cannot blur the clarity of reason. Liability is after all defined by law—not emotion. The Estate of Malinda Hoagland claims Upper Dublin School District, Laurie Smith, and Steven M. Yanni violated Malinda's Fourteenth Amendement right to due process of law by failing to intervene in the abuse. But, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. The Estate failed to plead a plausible claim to relief and the Amended Complaint must therefore be dismissed, with prejudice.

**CASE ORIENTATION**

Malinda Hoagland attended Upper Dublin School District for just eight months.  *See* Am. Compl., ECF 13 at ¶¶70, 86.  Her attendance began in August of 2021.  *Id.* at ¶70.  At that time, ten-year-old Malinda and lived with her biological father Rendell Hoagland and his paramour Cindy Warren, both of whom physically abused Malinda.  *Id.* at ¶¶56, 70, 73.  Signs of their abusive behavior were apparently obvious.  *Id.* at ¶78.  Malinda had on one occasion "a large bruise on her leg and another bruise on her arm."  *Id.* at ¶76.

Upper Dublin Superintendents Laurie Smith and Steven M. Yanni allegedly knew Mr. Rendell and Ms. Warren "were perpetrators of [the] abuse against Malinda."  Am. Compl., ECF 13 at ¶79.  And despite possessing documents indicating Ms. Warren was a "convicted child abuser[,]" the Superintendents and other school officials "placed Malinda into the care and custody" of her abusers.  *Id.* at ¶¶79-80.  This conduct allegedly continued until Malinda was transferred out of the Upper Dublin School District in April of 2022.  *Id.* at ¶86.

Malinda died two years later on May 4, 2024.  *See* Am. Compl., ECF 13 at ¶¶41, 311.  An autopsy revealed "starvation and multiple blunt force injuries" as the cause of death.  *Id.* at ¶¶3, 313.  The Estate of Malinda Hoagland now seeks money damages on account of the private abuse.

On August 14, 2014, Malinda's three sisters commenced this civil rights action as Co-Administrators of her Estate.  *See* Org. Compl., ECF 1.  The Estate filed an Amended Complaint on September 13, 2024, and claims Defendants Upper Dublin School District, Laurie Smith, and Steven M. Yanni ("Upper Dublin Defendants") are liable for violation of Malinda's Fourteenth Amendement right to substantive due process, and negligence under Pennsylvania law.  However, none of the asserted claims are plausible.

## ARGUMENT OF LAW

**I.      The Complaint must be dismissed as to the Upper Dublin Defendants for failure to assert a claim to relief that is plausible on its face.**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a challenge to the legal sufficiency of a complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). "To survive a Rule 12(b)(6) motion, a complaint must set forth enough factual allegations to 'state a claim to relief that is plausible on its face.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim requires the pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). Although the plausibility standard "does not impose a probability requirement," the standard "does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully[.]" *Id.* (cleaned up). Averments which are "merely consistent with a defendant's liability . . . stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* So too do "naked assertions devoid of further factual enhancement" and the plaintiff's "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (cleaned up).

Plausibility is evaluated using a three step approach. *See Connelly*, 809 F.3d at 787. A reviewing court will first "take note of the elements plaintiff must plead to state a claim." *Id.* (cleaned up). It then will identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (cleaned up); *accord Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions'

or 'legal conclusions' when deciding a motion to dismiss." (citation omitted)).  Finally, if well-pleaded factual allegations remain, the reviewing court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly*, 809 F.3d at 787 (cleaned up).  If not, then dismissal of the implausible claim is required.  *See Iqbal*, 556 U.S. at 678.

The Estate asserts here four theories of liability against the Upper Dublin Defendants.  *See* Am. Comp., ECF 13.  Counts I, V, and IX invoke the Court's original jurisdiction under the Civil Rights Act of 1871, Pub. L. 96-170, § 1, 17 Stat. 13, *codified as* 42 U.S.C. § 1983, and allege violations of Malinda's substantive due process rights under the Fourteenth Amendement to the United States Constitution.  *See* Am. Compl., ECF 13 at ¶¶37, 323-32, 395-417, 485-90. Comparatively, Count XIII invokes the Court's supplemental jurisdiction and advances a claim for negligence by way of Pennsylvania law.[1]  *Id.* at ¶¶509-24.  All of these claims are four months untimely and otherwise implausible, both on the merits and for reasons of immunity.  Amendement is futile and therefore the claims should be dismissed with prejudice.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." (citation omitted)).

The Upper Dublin Defendants take each argument *seriatim.*

---

[1] The Estate also pursues claims under Pennsylvania's Wrongful Death and Survival Acts. *See* Am. Copml., ECF 13 at ¶¶573-83.  But, "wrongful death and survival actions are not substantive causes of action[.]" *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687, 707 (E.D. Pa. 2011) (Surrick, J.).

A.      **The federal and supplemental claims are time-barred.**

It is true that the statute of limitations is an affirmative defense.  *See* FED. R. CIV. P. 8(c)(1).

"Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative

defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt*

*v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  Yet, a complaint may be dismissed at the pleadings

stage if "the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v.*

*Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).  Such is the case here.

The statute of limitations for a § 1983 claim is governed by the limitations period

applicable to personal injury actions of the state where the cause of action arose.  *See Wallace v.*

*Kato*, 549 U.S. 384, 387 (2007) (citation omitted).  Pennsylvania provides a two year statute of

limitations for personal injury actions, including negligence.  *See Kach v. Hose*, 589 F.3d 626, 634

(3d Cir. 2009) (citing 42 Pa. C.S. § 5524(2)).  Consequently, the § 1983 and supplemental

negligence claims asserted here are untimely if not brought within two years of claim accrual.  *Id.*

A claim accrues—and thus the two year limitations period begins to run—when a plaintiff

comes into possession of actual or constructive knowledge of their injuries.  *See Coello v. DiLeo*,

43 F.4th 346, 352 (3d Cir. 2022) ("Under [federal] law, a § 1983 claim ordinarily accrues when

the plaintiff knows or has reason to know of her injury." (citations omitted)); *Carlino v. Ethicon,*

*Inc.*, 208 A.3d 92, 103 (Pa. Super. 2019) (Under Pennsylvania law, "[a] cause of action accrues

upon actual or constructive knowledge of at least some form of significant harm and of a factual

cause linked to another's conduct[.]" (cleaned up)).  This generally occurs at the time when the

plaintiff learns of the last act necessary to complete the injury-inflicting tort, even though the full

extent of the harm is not then known or predictable.  *See Kach*, 589 F.3d at 635 (§ 1983); *Carlino*,

208 A.3d at 103 (negligence).  The plaintiff may at this moment file suit and obtain relief.  Though,

notwithstanding accrual, recovery may be barred at the threshold "if the time alleged in the

statement of a claim shows that the [accrued] cause of action has not been brought within the statute of limitations." *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) (citation omitted). A complaint asserting an untimely claim fails to plausibly state an entitlement to relief, thus deserving dismissal at the threshold. *See Wisniewski*, 857 F.3d at 157.

Applying these principles, the Estate's § 1983 and supplemental negligence claims are time-barred. *See Wisniewski*, 857 F.3d at 157. The Amended Complaint alleges Malinda attended Upper Dublin School District beginning in August of 2021. *See* Am. Compl., ECF 13 at ¶70. At this time the Upper Dublin Defendants are accused of: (1) "repeatedly plac[ing] Malinda into the care and custody of Rendell Hoagland and Cindy Warren despite knowing that they were the perpetrators of abuse against Malinda[,]" *id.* at ¶79; (2) complying with "official customs, practices, and policies with respect to reporting suspected child abuse of students, including Malinda[,]" *id.* at ¶396; (3) "fail[ing] to adequately train their employees and agents on the proper and legal means and methods of reporting and investigating suspected child abuse[,]" *id.* at ¶487; and (4) other breaches of common law duties under Pennsylvania law. *Id.* at ¶¶509-24. This conduct allegedly continued until Malinda was transferred out of the Upper Dublin School District in April of 2022. *See* Am. Compl., ECF 13 at ¶86.

Assuming *arguendo* that the allegations against the Upper Dublin Defendants state a plausible entitlement to relief, these claims would have accrued no later than Friday April 29, 2022.[2] *See Kach*, 589 F.3d at 635 (§ 1983); *Carlino*, 208 A.3d at 103 (negligence). Malinda, and any subsequent representative of her estate, then had two years to recover for any injuries caused

---

[2] The Amended Complaint does not specify the precise day of Malinda's transfer in April of 2022. *See* Am. Compl., ECF 13 at ¶86. The Upper Dublin Defendants therefore reasonably infer that the transfer occurred on Friday, April 29, 2022, the last school day of the month. *See Phillips*, 515 F.3d at 231 (holding *Twombly* did not "undermine th[e] principle" that all reasonable inferences are to be drawn in favor of the plaintiff)

by the allegedly tortious acts. *See Kach*, 589 F.3d at 634 (citing 42 Pa. C.S. § 5524(2)). It did not. *See* Org. Compl., ECF 1. Instead, the Estate seeks recovery from the Upper Dublin Defendants almost four months after expiration of the two year limitations period. *Id.* It is notable that the Amended Complaint *does not* allege a single act by any of the Upper Dublin Defendants between Malinda's transfer out of the district in April of 2022, her untimely death on May 4, 2024, and initiation of the present suit on August 14, 2024. *See* Am. Compl., ECF 13 at ¶¶86, 311; Org. Compl., ECF 1. The "time alleged" in the Amended Complaint plainly shows that the Estate's claims have "not been brought within the statute of limitations." *Fried*, 850 F.3d at 604. Since Amendment would be futile, the claims against the Upper Dublin Defendants should be dismissed with prejudice. *See Phillips*, 515 F.3d at 236.

And, the Estate's appeal to equity is misplaced. It invokes the continuing violations doctrine in apparent recognition that its claims have grown stale. *See, e.g.,* Am. Compl., ECF 19 at ¶¶397-403. The doctrine provides that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the *last act evidencing the continuing practice falls within the limitations period*; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001) (cleaned up and emphasis added). However, the last act of the Upper Dublin Defendants here occurred on April 29, 2022—two years, three months, and sixteen days before the Estate filed suit. *See* Am. Compl., ECF 13 at ¶86. The continuing violation doctrine therefore does not apply. *Cf. Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 237 (3d Cir. 2014) ("Appellees have committed no acts within the two years of the filing of plaintiff's complaint, we too conclude that the continuing-violation doctrine does not apply on these facts." (cleaned up)). The asserted claims are time-barred and should therefore be dismissed with prejudice. *See Phillips*, 515 F.3d at 236.

**B.    The Amended Complaint also lacks factual content supporting a reasonable inference of constitutional and negligence liability.**

To survive a motion to dismiss, a complaint must set forth enough factual allegations to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  The Amended Complaint does not.  So, it must be dismissed—with prejudice.  *See Phillips*, 515 F.3d at 236.

**1.    There is no Fourteenth Amendment due process right to governmental aid from private harm on the facts alleged here.**

The plausibility analysis begins with reference to the substantive elements the Estate must plead to state its civil rights claim.  *See Connelly*, 809 F.3d at 787.  The federal claims at Counts I, V, and IX invoke the Civil Rights Act of 1871, which provides "a federal cause of action allowing citizens to sue a state or local official in federal court for violating constitutional rights, privileges and immunities through an abuse of his position."  *Fogle v. Sokol*, 957 F.3d 148, 157 (3d Cir. 2020) (citing 42 U.S.C. § 1983) (cleaned up)).  The statute "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  To succeed on a claim under § 1983, one must show that a person acting under color of state law deprived them of a right conferred by the Constitution or laws of the United States.  *See Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174 (2023) (citation omitted).

The "first step" in any § 1983 action "is to identify the exact contours of the underlying right said to have been violated."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998) (citation omitted).  The Estate alleges here a theory of liability predicated on the Due Process Clause of the Fourteenth Amendment.  *See* Am. Compl., ECF 13 at 59.  The Due Process Clause prohibits a State from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"  U.S. CONST. AM. XIV § 1.  The Supreme Court instructs that the Due Process Clause "is

phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The purpose of the Clause is to "protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 196. Thus, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195-96. "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.

There are, however, two very narrow exceptions to this general rule. Neither of which apply here.

### a. Malinda was not in a "special relationship" with the Upper Dublin Defendants.

The Estate appeals to the "special relationship" exception. *See* Am. Compl., ECF 13 at ¶326. Though, none existed on the face of the Amended Complaint. The Due Process Clause of the Fourteenth Amendment imposes an affirmative duty upon the State to protect an individual from private harm "when the State takes [that] person into its custody and holds him there against his will[.]" *DeShaney*, 489 U.S. at 199-200. The Supreme Court instructs:

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 489 U.S. at 200 (cleaned up). Presence of a special relationship therefore requires a custodial association that the Third Circuit determines using a test of physical custody. *See Sanford v. Stiles*, 456 F.3d 298, 304 n.4 (3d Cir. 2006).

11

Application of the special relationship exception to the public school context is familiar. In *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, the full Third Circuit held that Pennsylvania's compulsory attendance laws and the State's *in loco parentis* authority did not create the requisite involuntary custody necessary to trigger a constitutional duty on the part of the school to protect students from the private actions of third parties. 972 F.2d 1364, 1372 (3d Cir. 1992) (*en banc*). Plaintiffs were female public high school students who were allegedly molested by other students while attending art class. The court explained that compulsory education does not render students wholly dependent upon the State, and thus does not give rise to the duty to protect students from the acts of third parties. *Id.* at 1371-72. Parents retain the ability to decide where their children will be educated and may remove children from classes if necessary. In sum, because the school and school officials did not "restrict [plaintiff's] freedom to the extent that she was prevented from meeting her basic needs," they had no affirmative constitutional duty to protect her from the acts of third parties. *Id.* at 1372.

Similarly, in *Black by Black v. Indiana Area School Dist.*, the Third Circuit held that the superintendent of schools was not in a special relationship with students riding on a school bus to and from school and therefore could not be held liable for failing to protect students whom the bus driver had molested. 985 F.2d 707 (3d Cir. 1993). It explained that neither state law nor any other regulation required students to ride the school bus, and that parents remained free to arrange other forms of transportation. *Id.* at 713-14. Furthermore, the students were not cut off from other sources of aid and remained free to seek help from their parents or others. *Id.*

In *Morrow v. Balaski*, the full Third Circuit again held "that public schools, as a general matter, do not have a constitutional duty to protect students from private actors." 719 F.3d 160, 170 (3d Cir. 2013) (*en banc*) (emphasis removed). There, two sisters endured a "series of threats

and physical assaults" from another student. *Id.* at 164. The school suspended the bully, but the assaults continued after she returned. The state court adjudicated the bully delinquent, and twice ordered her not to contact one of the sisters. "Copies of both of these 'no-contact' orders were provided to the school[.]" *Id.* Despite the court's intervention, the bully later threatened the sister, and elbowed her in the throat at a school football game that evening. The sisters' parents met with school officials, who told them they could not guarantee the sisters' safety, and should consider transferring them to another school. *Id.* at 165.

On these facts, the Third Circuit concluded the sisters were not in a special relationship with the school. *See Morrow*, 719 F.3d at 177. It reiterated that a school's *in loco parentis* "control, without more, is not analogous to the state's authority over an incarcerated prisoner or an individual who has been involuntarily committed to a mental facility." *Id.* at 169. Although the school possessed copies of the no-contact orders, those directives did "not impose any affirmative duties" on the school "to ensure [the bully]'s compliance with the orders or to otherwise enforce them." *Id.* at 172 (citation omitted). The court rejected outright the argument that "actual knowledge" of harm combined with "the quasi-custodial relationship that exists in all cases between a public school and its pupils" creates a special relationship. *Id.* at 172-73. The Court therefore declined to "fashion a constitutional remedy under the special relationship theory based on the facts alleged[.]" *Id.* at 177.

In the present case, the allegations contained in the Estate's Amended Complaint do not begin to approach the kind of restriction on freedom required to give rise to a special relationship under *DeShaney*. We begin with the proposition that the Upper Dublin Defendants had no affirmative due process obligation to intervene and protect Malinda from the private abuse. *See DeShaney*, 489 U.S. at 197. The question then becomes whether the Amended Complaint alleges

facts demonstrating the Upper Dublin Defendants restrained Malinda's "freedom to act on h[er] own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty[.]" *Id.* It does not. *See* Am. Compl., ECF 13 at ¶¶70-86. So, the Estate necessarily proceeds on the general theory that Pennsylvania's compulsory attendance laws and the State's *in loco parentis* authority imposed upon the Upper Dublin Defendants a Fourteenth Amendment due process duty to protect Malinda from private actions of third parties. But, the Third Circuit has consistently rejected any such formulation of a due process special relationship. *See, e.g., Morrow*, 719 F.3d at 177; *Black by Black*, 985 F.2d at 714; *Middle Bucks*; 972 F.2d at 1372. And if due process liability *does not* extend to students injured by private violence *in school*, it surely does not extend to injuries occurring *at home*.

The Amended Complaint also lacks factual content illustrating that the connection between the Upper Dublin Defendants and Malinda was "a different kind of relationship" as compared to those which are "inherent in the discretion afforded school administrators[.]" *Morrow*, 719 F.3d at 171. Rather, the pleading clearly demonstrates that the circumstances existing here "are endemic in the relationship between public schools and their students." *Id.* And even if we assume the Upper Dublin Defendants possessed actual knowledge of the abuse, and were in possession of the July 2020 custody order, those facts do not establish a special relationship. *Id.* at 172-73. This is particularly true given the absence of factual content suggesting Mr. Rendell and Ms. Warren "acted under authority delegated by the school" or "exercised coercive power with significant encouragement from the school." *Id.* at 176 (cleaned up). Under these circumstances, the Upper Dublin Defendants did not stand in a special relationship with Malinda and therefore had no constitutional duty to protect her. *See DeShaney*, 489 U.S. at 197.

  **b.  The Upper Dublin Defendants did not affirmatively act to create or otherwise render Malinda more vulnerable to private harm.**

  The Estate also appeals to the "state created danger" exception.  *See* Am. Compl., ECF 13 at 59.  The Constitution can impose an affirmative duty to protect "where the state acts to *create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process."  *Morrow*, 719 F.3d at 177 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)) (emphasis in original).  This theory of liability is termed a "state created danger." *Id.*  A plausible claim of state created danger requires the pleading of factual contenting giving rise to a reasonable inference that:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Morrow*, 719 F.3d at 177 (citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)). Though, the fourth element is the most litigated.  *See Weston v. City of Philadelphia*, 82 F. Supp. 3d 637, 645 (E.D. Pa. 2015)) (Surrick, J.).

  A violation of "the substantive component of the Due Process Clause must be predicated on an affirmative act that works a deprivation of liberty[.]"  *Ye v. United States*, 484 F.3d 634, 641 (3d Cir. 2007) (citation omitted).  To plead this element, a plaintiff must allege a state actor affirmatively "created a danger" or "rendered the citizen more vulnerable to danger than had the state not acted at all."  *Middle Bucks*, 836 F.3d at 242 (citation omitted).  "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."  *Bright*, 443 F.3d

at 282. "[A]ttempts to redefine clearly passive inaction as affirmative acts" are thus insufficient.

*Morrow*, 719 F.3d at 178.

Appreciating "the inherent difficulty in drawing a line between an affirmative act and a failure to act," the Third Circuit reiterated the following approach for determining the presence of affirmative action:

> Rather than approach this inquiry as a choice between an act and an omission, we find it useful to first evaluate the setting or the "status quo" of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo. This approach, which is not a new rule or concept but rather a way to think about how to determine whether this element has been satisfied, helps to clarify whether the state actor's conduct "created a danger" or "rendered the citizen more vulnerable to danger than had the state not acted at all."

*Middle Bucks*, 836 F.3d at 242-43 (footnote omitted). The operative question is whether the plaintiff would have been in the same position had the State done nothing. *Id.* at 243. If so, liability will not accrue since "maintenance of the status quo [is] insufficient to create liability." *Id.* at 243–44.

Here, the Estate "simply attempts to redefine clearly passive inaction as affirmative acts." *Morrow*, 719 F.3d at 178 (citation omitted). The Amended Complaint alleges the Upper Dublin Defendants "deliberately placed Malinda into the hands, care, control, and custody of Rendell Hoagland and Cindy Warren, knowing that each of these adults posed a serious risk of bodily injury or death to Malinda." Am. Compl., ECF 13 at ¶325. However, had the Upper Dublin Defendants intervened and prevented Malinda from returning home to her natural father and his paramour, "they would likely have been met with charges of improperly intruding into the parent-child relationship, charges based on the same Due Process Clause that forms the basis for the present charge of failure to provide adequate protection." *DeShaney*, 489 U.S. at 203.

Additionally, the requirement of an affirmative act "serves to distinguish cases where officials might have done more from cases where officials created or increased the risk itself." *Morrow,* 719 F.3d at 179 (cleaned up).  This case is distinguishable from others where "state actors used their authority to create an opportunity that otherwise would not have existed[.]"  *Morse*, 132 F.3d at 915 (cleaned up); *cf. Sanford*, 456 F.3d at 311-12 (high school guidance counselor's failure to properly evaluate the sincerity of student's suicidal comment was not an affirmative act causing death, but merely a failure to prevent death); *compare L.R.*, 836 F.3d at 242 (kindergarten teacher made affirmative use of authority that created or increased danger to student by allowing student to leave classroom with unidentified adult, where teacher surrendered state's responsibility for student's safety, and thereby terminated student's access to school's care).  It is regrettable to emphasize that Malinda's abuse occurred before, during, and after her enrollment in the Upper Dublin School District.  *See generally* Am. Compl., ECF 13.

The purported "state created danger" alleged here is merely an attempt by the Estate "to morph passive inaction into affirmative acts.  However, merely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct."  *Morrow*, 719 F.3d at 179; *cf. Weston*, 82 F. Supp. 3d 637 (concluding city caseworker did not act affirmatively to render child abuse victim more vulnerable to danger, as required to support victim's state-created danger due process claim; her subsequent failures to properly investigate aunt and oversee victim's services did not affirmatively create the danger to victim).  Under the facts alleged, the Upper Dublin Defendants *did not* affirmatively "created a danger" or render Malinda "more vulnerable to danger."  *Middle Bucks*, 836 F.3d at 242-43.  Malinda therefore had no Fourteenth Amendment substantive due process right to governmental aid.  *See DeShaney*, 489 U.S. at 197.

As a result, the Estate fails to plausibly allege the violation of a right secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. Since amendment is futile, the Fourteenth Amendement due process claim at Count I should therefore be dismissed with prejudice. *See Phillips*, 515 F.3d at 236.

> **2.    The derivative municipal liability claims are implausible for lack of an underlying constitutional violation.**

To proceed to discovery under § 1983, the Estate must plausibly allege a *person* acting under color of state law violated a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988). In *Monell v. Dep't of Soc. Servs. of City of New York*, the Supreme Court held that a municipal entity is a *person* for purposes of § 1983 liability only "when execution of a government's policy or custom" causes the alleged constitutional violation. 436 U.S. 658, 694 (1978). However, "if there is no [constitutional] violation in the first place, there can be no derivative municipal claim based on *Monell*." *Jefferson v. Lias*, 21 F.4th 74, 87 (3d Cir. 2021) (citation omitted).

It then follows here that the Estate's municipal lability claims are implausible. *See Iqbal*, 556 U.S. at 678. The Estate alleges the Upper Dublin Defendants are liable for maintaining, enforcing, and promulgating "official customs, practices, and policies" with respect to several subjects, including: (1) reporting suspected child abuse of students; (2) the release and placement of children into the care, custody, and control of adults who were unfit and unsafe; and (3) investigating and enforcing school absences and truancy. *See* Am. Compl., ECF 13 at ¶¶396, 404, 407. None plausibly state an entitlement to relief.

As to reporting and investigation, there is no constitutional right to a thorough investigation. *See Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain

a section 1983 claim." (citation omitted)); *Bressi v. Brennen*, 823 F. App'x 116, 119 n.5 (3d Cir. 2020) (same); *accord Geness v. Cox*, 902 F.3d 344, 354 n.5 (3d Cir. 2018) (expressing "doubts" as to the viability of a claim for reckless investigation under the Due Process Clause of the Fourteenth Amendment). And as to the release and placement of a child into the care of an unsafe adult, this allegation is merely a reframe of a claim for failure to intervene in private abuse. But, the Third Circuit "recognize[s] a right to have a government actor intervene when the underlying constitutional violation involves excessive force or sexual assault of a person in custody or detention," but has "since concluded that [its] precedent does not establish, let alone clearly establish, a right to intervention in other contexts." *Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023). Finally, Melinda's constitutional rights were not in any other way violated. As explained above, there is no Fourteenth Amendment substantive due process right to governmental protection from private violence, Malinda was not in a "special relationship" with the Upper Dublin Defendants, and they did not did not affirmatively act to create or otherwise render Malinda more vulnerable to private harm.

Consequently, the Estate failed to plead a plausible constitutional violation and so its municipal lability claims fail as a matter of law. *See Mervilus v. Union Cnty.*, 73 F.4th 185, 197 (3d Cir. 2023) ("[W]here a finding for the individual defendant necessarily means the plaintiff suffered no constitutional deprivation, there is no basis for a *Monell* claim, and thus it too must fall." (citation omitted). Counts V and XI should also therefore be dismissed with prejudice. *See Phillips*, 515 F.3d at 236.

### 3.    The Upper Dublin Defendants are immune from negligence.

In Pennsylvania, the Political Subdivision Tort Claims Act grants immunity from tort liability to local political subdivisions and their employees. *See* 42 Pa. C.S. §§ 8541 *et seq.* Governmental immunity applies to a "local agency," which is statutorily defined as "[a] government unit other than the Commonwealth government." *Id.* at §§ 8501, 8541. The Tort Claims Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency[,] or an employee thereof[,] or any other person." *Id.* at § 8541. Though, governmental immunity does not expressly apply to individuals. *See Dorsey v. Redman*, 96 A.3d 332, 339 (Pa. 2014). That is why the Tort Claim Act also provides official immunity. *See* 42 Pa. C.S. § 8545. There, the liability of an employee of a local agency is generally limited to the liability of the local agency for which they are acting. *Id.* In this respect, "the Tort Claims Act links concepts of official liability to concepts of governmental immunity." *Dorsey*, 96 A.3d at 339.

Like most rules, however, there are exceptions. *See* 42 Pa. C.S. § 8542, 8550. The Tort Claims Act enumerates limited circumstances under which the General Assembly waives the defense of immunity. *See Starr v. Veneziano*, 747 A.2d 867, 871 (Pa. 2000) ("Under the Tort Claims Act, local government agencies such as the Township are generally immune from tort liability, except in circumstances where immunity is expressly waived." (citation omitted)). A local agency's governmental immunity is waived in cases where: (1) "[t]he damages would be recoverable under common law or a statute creating a cause of action[;]" (2) "[t]he injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties[;]"[3] and (3) the "negligent act" falls within one of the nine exceptions to

---

[3] The term "'negligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S. § 8542(a)(2).

immunity enumerated in subsection 8542(b) of the Tort Claims Act.  *See* 42 Pa. C.S. § 8542(a), (b).

The Estate attempts to shoehorn the allegations here under the "sexual abuse" exception to Tort Claims Act immunity.  *See* Am. Compl., ECF 13 at ¶¶514, 521.  The General Assembly waives governmental and official immunity for injuries caused by any one of the criminal offenses enumerated under § 5551(7) of the Judicial Code, 42 Pa. C.S. § 101 *et seq.*, but only "if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence."  42 Pa. C.S. § 8542(b)(9).  The Estate specifically invokes the crimes of "trafficking in individuals" and "involuntary servitude."  *See* Am. Compl., ECF 13 at ¶¶514 (citing 18 Pa. C.S. § 3011(b)), 521 (citing 18 Pa. C.S. § 3012).

Nevertheless, Malinda's injuries were not "caused by" the negligence of the Upper Dublin Defendants.   42 Pa. C.S. § 8542(b)(9).   First, there is not a single factually supported, nonconclusive allegation in the Amended Complaint that any Upper Dublin Defendants possessed actual or constructive knowledge of the sexual abuse, or could have reasonably foreseen such atrocious acts.  Indeed, the first allegation of sexual abuse appears *after* Malinda's transfer out of the Upper Dublin School District.  *See* Am. Compl., ECF 13 at ¶¶86, 91, 217.  Second, the Estate asserts breaches of ostensible duties arising *after* the sexual abuse had already occurred.  *See* Am. Compl., ECF 13 at ¶¶510(a)-(f), (h)-(k), (m), (r).  It is therefore a temporal impossibility that Malinda's sexual abuse injuries were "caused by" a negligent act of the Upper Dublin Defendants. *Cf. Doe v. Williamsport Area Sch. Dist.*, 699 F. Supp. 3d 306, 331 (M.D. Pa. 2023) (Brann, C.J.) ("Each of Lycoming County's alleged duties arose after the sexual abuse.  So breach cannot have been 'caused by' the County's conduct.").

Third, the Estate's "formulaic recitation" of the elements composing the crimes of "trafficking in individuals" and "involuntary servitude" do not plausibly overcome the Upper Dublin Defendants' entitlement to Tort Claims Act immunity. *See Iqbal*, 556 U.S. at 678 (cleaned up). To be sure, the Estate does allege Mr. Rendell and Ms. Warren subjected Malinda to "labor and sexual servitude[.]" Am. Compl., ECF 13 at ¶523(a)-(m). However, its allegations are merely "naked assertions devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678 (cleaned up). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citation omitted). The Estate has failed to do so. *Id.* Lastly, Pennsylvania law otherwise holds that "there is no duty to protect or rescue someone who is at risk on account of circumstances the defendant had no role in creating." *Walters v. UPMC Presbyterian Shadyside*, 187 A.3d 214, 229 (Pa. 2018) (citing Restatement (Second) of Torts § 314 (1965)). Malinda's sexual abuse injuries were "caused by" her father and his paramour, not the Upper Dublin Defendants.

Accordingly, the damages alleged here are *not* recoverable under the common law, Malinda's sexual abuse injuries were *not* "caused by" the negligent acts of the Upper Dublin Defendants, and the Estate's other allegations do *not* fall within a recognized exception to governmental or official immunity. *See* 42 Pa. C.S. § 8542(a), (b). Amendment is futile, so the supplemental negligence claim at Count XIII should be dismissed with prejudice. *See Phillips*, 515 F.3d at 236.

## <u>CONCLUSION</u>

Despite the tragic nature of the allegations here, the Estate of Malinda Hoagland failed to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Amended Complaint therefore "do[es] not meet the standard necessary to comply with Rule 8." *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).  So, the implausible claims must be dismissed with prejudice.

Respectfully Submitted,

**MARSHALL DENNEHEY, P.C.,**

BY: _____
JOSEPH J. SANTARONE, JR.
JOSHUA W. BROWNLIE
PA Attorney ID Nos.: 45723, 330511
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(215) 575-2626

*Attorneys for Defendants Upper Dublin School District, Laurie Smith, and Steven M. Yanni*

Date: October 15, 2024

## CERTIFICATE OF SERVICE

I , Joshua W. Brownlie, Esquire do hereby certify that a true and correct copy of this Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss was electronically filed with the Court this date and is available for downloading from the Electronic Case File System.  All counsel of record were served *via* electronic notification.

Respectfully Submitted,

**MARSHALL DENNEHEY, P.C.,**

BY: _____
JOSEPH J. SANTARONE, JR.
JOSHUA W. BROWNLIE
PA Attorney ID Nos.: 45723, 330511
2000 Market Street, Suite 2300
Philadelphia, PA  19103
(215) 575-2626

*Attorneys for Defendants Upper Dublin School District, Laurie Smith, and Steven M. Yanni*

Date: October 15, 2024