UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMILY LEE, JAMIE HOAGLAND,** and **ABBEY HOAGLAND,** Individually and as Co-Administrators of the **ESTATE OF MALINDA HOAGLAND,**<br><br>**Plaintiffs,**<br>v.<br><br>**COUNTY OF CHESTER, et al.,**<br><br>**Defendants.** | :<br>:<br>:<br>:<br>: **NO. 2:24-cv-04180-RBS**<br>:<br>:<br>:<br>:<br>:<br>: |

## MOTION TO DISMISS AMENDED COMPLAINT

Defendants Coatesville Area School District, Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, and Eugenia Roberts (the "CASD Defendants"), by and through their undersigned counsel, hereby move this Court to dismiss Plaintiffs' Amended Complaint for the reasons set forth in the Memorandum of Law filed with this Motion to Dismiss. In addition, the CASD Defendants hereby incorporate by reference the motions to dismiss filed by the other defendants in this case.

**WHEREFORE**, the CASD Defendants respectfully request that this Court dismiss with prejudice all claims asserted against them in Plaintiffs' Amended Complaint, and grant them such additional relief as the Court deems appropriate.

Respectfully submitted,

**WISLER PEARLSTINE, LLP**

*/s/ Brian R. Elias*
**BRIAN R. ELIAS, ESQUIRE**
**FERANMI OLUGBENGA-JEBUTU, ESQUIRE**

*Attorneys for CASD Defendants*

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMILY LEE, JAMIE HOAGLAND,** and **ABBEY HOAGLAND,** Individually and as Co-Administrators of the **ESTATE OF MALINDA HOAGLAND,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**COUNTY OF CHESTER, et al.,**<br><br>**Defendants.** | :<br>:<br>:<br>:<br>: **NO. 2:24-cv-04180-RBS**<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS AMENDED COMPLAINT**

Defendants Coatesville Area School District ("**CASD**"), Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe and Eugenia Roberts (collectively the "**Individual CASD Defendants**") (CASD and the Individual CASD Defendants are hereinafter the "**CASD Defendants**"), by and through their undersigned counsel, submit this Memorandum of Law in Support of their Motion to Dismiss Amended Complaint.

**I.    INTRODUCTION**

This case is about the tragic death of Malinda Hoagland caused by blunt force injuries and starvation at the hands of Malinda's father and the father's girlfriend. According to the allegations in the Amended Complaint, Malinda died five months after Malinda's last interaction with the CASD Defendants. Plaintiffs have asserted that the CASD Defendants should be liable because they did not alter Malinda's status quo of living with her father and take *enough actions*[1] to remove Malinda from her father's care. But according to Plaintiffs, Malinda was residing with

---

[1] Plaintiffs pleaded that the CASD Defendants took some correct actions by making at least two reports to ChildLine shortly before and shortly after their final interaction with Malinda.

her father when she was enrolled in CASD and when she was removed from CASD. As such, Malinda was in the same position after the CASD Defendants' alleged failure to act that Malinda was in before their alleged failure to act. Because the law precludes the liability alleged in the Amended Complaint against the CASD Defendants for not disrupting the status quo, and because the CASD Defendants enjoy sovereign immunity, Plaintiffs' claims against the CASD Defendants should be dismissed with prejudice.

## II.     FACTS PLEADED AS TO THE CASD DEFENDANTS

Malinda's first interaction with CASD came in April 2022, when Malinda attended elementary school. Am.Compl. ¶ 86. Plaintiffs pleaded that the CASD Defendants' interactions with Malinda ended on November 30, 2023, five months before Malinda passed away at the hands of her father. Am.Compl. ¶ 228. Plaintiffs pleaded that the CASD Defendants made at least two reports to ChildLine – one in early November 2023 and the second in early December 2023 – with "concerns about Malinda's 'safety and wellbeing.'" Am.Compl. ¶¶ 208-209, 229-231. Despite the ChildLine reports made by the CASD Defendants, Plaintiffs have asserted that the CASD Defendants allowed the status quo of Malinda's father caring for Malinda to continue. But the facts pleaded by Plaintiffs – as opposed to the legal conclusions and the recitations of the elements of causes of action that make up the majority of the content in the Amended Complaints – do not support any claims against the CASD Defendants.

### A.     Plaintiffs' Vague Allegations as to Alleged Enrollment Documentation

Plaintiffs seem to imply that at the time Malinda began elementary school in April 2022, CASD "learned and obtained information . . . that Malinda was residing full-time with Cindy Warren who was a convicted child abuser and who had zero legal rights to supervise, care for, or maintain custody over Malinda." Am.Compl. ¶ 87. Importantly, Plaintiffs' only alleged that

2

CASD knew that Malinda was residing with "Cindy Warren." Plaintiffs did not plead that the CASD Defendants ever actually knew that Cindy Warren "was a convicted child abuser and who had zero legal rights to supervise, care for, or maintain custody over Malinda."

Plaintiffs pleaded that Individual CASD Defendants Catherine Van Vooren and Tomas Hanna "were in actual possession of state-required documentation which indicated that Malinda Hoagland was under the residence, supervision, care, custody, and control of a known convicted child abuser, Cindy Warren." Am.Compl. ¶ 90. Critically, Plaintiffs never identified the "documentation" or any details about the "documentation" to which they referred. According to Plaintiffs, Individual CASD Defendants Catherine Van Vooren and Tomas Hanna are liable to Plaintiffs because they "ignored the [unidentified] documentation." Am.Compl. ¶ 91.

What is unmistakable is that Plaintiffs' allegations as to the CASD Defendants are crafted in such a way that Plaintiffs have not pleaded that the CASD Defendants had any information as to the background of Cindy Warren. Plaintiffs' allegations seem to be saying no more than that the CASD Defendants knew the name "Cindy Warren." There is no allegations that any CASD Defendants were in actual possession of and ignored documents that stated that Cindy Warren "was a convicted child abuser and who had zero legal rights to supervise, care for, or maintain custody over Malinda."

### B. Plaintiffs' Allegations as to Malinda's Absences from CASD

Plaintiffs alleged that Malinda was absent from school four times during the four months of September through December 2022. Am.Compl. ¶¶ 95, 102, 103, 106. Plaintiffs also pleaded that during her time in middle school, which Plaintiffs pleaded began in January 2023, Malinda was absent 35 times, 25 of which were "unexcused" and 10 of which were "excused." Am.Compl. ¶ 108. Plaintiffs pleaded that CASD received notes from Malinda's father excusing

3

some of the absences. Am.Compl. ¶¶ 113. Plaintiffs also pleaded that CASD Defendants communicated with Malinda's father about the absences. Am.Compl. ¶¶ 125, 131, 139, 155, 243. Plaintiffs also pleaded that the CASD Defendants made at least two reports to ChildLine – one in early November 2023 and the second in early December 2023 – with "concerns about Malinda's 'safety and wellbeing.'" Am.Compl. ¶¶ 208-209, 229-231.

Based on the foregoing allegations, Plaintiffs pleaded the conclusions (i.e., not facts) that CASD, through Individual CASD Defendant Lamonthe, "fail[ed] to keep correct documentation regarding unexcused absences and to take timely affirmative action in rendering Malinda habitually truant" and that the failure "placed Malinda under the ***continued***[2] supervision and control by Malinda's abusers." Am.Compl. ¶ 145 (emphasis added). Plaintiffs also pleaded the legal conclusions that:

> CASD, North Brandywine Middle School, Principal Lamothe, Catherine Van Vooren, and Tomas Hanna employed a policy, custom, and practice of ignoring state-mandated truancy law and truancy reporting requirements.
>
> As a direct result of CASD's, North Brandywine Middle School's, Kathryn Lamothe's, Catherine Van Vooren's, and Tomas Hanna's unlawful policy, custom, and practice of ignoring state-mandated truancy law and reporting requirements, no magisterial district judge was ever notified—as required—by CASD and North Brandywine Middle School of Malinda Hoagland's truancy. This resulted in an increased risk of danger to Malinda and, in fact, subjected her to sustained physical abuse, sexual abuse, torture, and starvation at the hands of Cindy Warren and Rendell Hoagland.

Am.Compl. ¶¶ 148-149.[3]

---

[2] *I.e.*, the status quo.

[3] As set forth below, "because the[ese] are no more than conclusions, [they] are not entitled to the assumption of truth.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 579 (2007)).

4

### C. Plaintiffs' Allegations About Malinda Not Having Enough Food

Plaintiffs pleaded that in the fall of 2022, Malinda "routinely and repeatedly showed up to school hungry, famished, and without enough food" and that CASD knew "that Malinda was not receiving enough food at home" because unidentified "CASD employees, including lunch-room personnel, routinely provided Malinda extra food to eat" and because Malinda "began hoarding food in her locker at school." Am.Compl. ¶¶ 96, 100.

### D. Plaintiffs' Allegations About Malinda's School Photo

Plaintiffs alleged that Malinda's October 26, 2023, school photographs "revealed bruising all around Malinda's left eye." Am.Compl. ¶ 198. Importantly, ***Plaintiffs pleaded that the CASD Defendants "made a report to defendants, Chester County CYF, Pennsylvania, and Chester County, via ChildLine" with "concerns about Malinda's 'safety and wellbeing.'"*** Am.Compl. ¶¶ 198-207 (emphasis added). And Plaintiffs pleaded that in early December 2023, ***the CASD Defendants "made another report to defendants, Pennsylvania, Chester County, and Chester County CYF, 'with concerns for [Malinda's] safety and access to food.'"*** Am.Compl. ¶¶ 229-230 (emphasis added).

## III. ARGUMENT

### A. Standard for Motion Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. FED.R.CIV.P. 12(b)(6). When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (*quoting Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "To

5

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*quoting Twombly*, 550 U.S. at 557). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (*quoting Iqbal*, 550 U.S. at 679).

Courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id*. at 787 (alterations in original) (*quoting Iqbal*, 550 U.S. at 675). "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id*. (*quoting Iqbal*, 550 U.S. at 679). Third, "'[w]hen there are well pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id*. (alterations in original) (*quoting Iqbal*, 550 U.S. at 679). After the Supreme Court's decision in *Twombly*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. ***This standard asks for more than a sheer possibility that a defendant has acted unlawfully***. *Id*. Accord *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll ***civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed me accusation***.") (emphasis added; internal quotation marks omitted).

6

**B.     Plaintiffs Have Not Stated a Claim for State-Created Danger.**

"As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989). "State actors are not liable every time their actions set into motion a chain of events that result in harm." *Fetterman v. Westmoreland County Children's Bureau,* No. 2:15-cv-773, 2015 WL 5007952 (W.D. Pa. Aug. 20, 2015) (*citing Henry v. City of Erie*, 728 F.3d 275, 283 (3d Cir. 2013)).

A claim of state-created danger is one of two narrow exceptions to this general rule. To prevail on this theory, however, Plaintiffs must prove that: (1) Malinda's death at the hands of her father was a foreseeable and fairly direct result of the CASD Defendants' failures to correctly document and communicate about Malinda's absenteeism, and to correctly notice that Malinda was undernourished and bruised, despite the two ChildLine reports made by the CASD Defendants; (2) CASD Defendants' actions – including two ChildLine reports – amounted to a degree of culpability that shocks the conscience; (3) a special relationship between the CASD Defendants and Malinda existed such that it was foreseeable to the CASD Defendants that Malinda would be killed by her father because of the CASD Defendants' actions, or Malinda was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, **as opposed to a member of the public in general**; and 4) the CASD Defendants affirmatively used their authority in a way that created a danger to Malinda, or that rendered Malinda more vulnerable to danger than had the CASD Defendants not acted at all.  *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (en banc).

Of note for the CASD Defendants here, as to the forth element "[i]t is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright v. Westmoreland Cty.*, 443 F.3d 276, 282 (3d Cir. 2006). The Third Circuit has explained the issue raised under the fourth element is whether "the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." *Id.* at 283. Plaintiffs must make "an allegation and subsequent showing that state authority was affirmatively exercised." *Id.* at 282.

The Third Circuit and this Court have specifically concluded that a school's failure to enforce its own policy was not equivalent to an "affirmative act." *Morrow*, 719 F.3d at 178 ("[W]e decline to hold that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act...."). *See also Buonadonna v. Southeast Delco Sch. Dist.*, 2015 WL 2365629, at *2, n.6 (E.D. Pa. May 18, 2015)("[A] school's alleged failure to follow its own policies generally does not rise to the level of an affirmative act for the purposes of a state-created danger claim."). The purpose of the fourth element is to distinguish cases like the one pleaded by Plaintiffs here – that CASD Defendants might have done more – from cases where officials created or increased the risk itself. *Morrow*, 719 F.3d at 179. Recently, this Court has had occasion to address very similar allegations and held that:

> But merely placing a student in a classroom environment with his victim is not an affirmative act by which a state actor can be liable for creating danger for students. In Roquet v. Kelly, the court rejected arguments that "actively placing [victim] and [assailant] into the same gym class, despite the long history of bullying" or "placing [assailant] in an unstructured and unsupervised environment thereby rendering [victim] and other students more vulnerable to danger" could constitute the requisite affirmative act for liability. See No. 4:11-cv-1763, 2013 WL 5570269, at *7–8 (M.D. Pa. Oct. 9, 2013); see also Morrow, 719 F.3d at 177–78 (permitting a student to return to his victim's class after a suspension for a prior attack is not an affirmative act). To hold

8

> otherwise would significantly expand schools' potential liability for their students' actions, and the Court declines to do so here.

*Henry v. School District of Philadelphia*, 2021 WL 185047 * 4 (E.D. Pa. Jan. 19, 2021).[4]

In this case, Plaintiffs pleaded that because the CASD Defendants failed to correctly document and report Malinda's absenteeism, and failed to correctly notice that Malinda was hungry and bruised (the CASD Defendants did make at least two ChildLine reports), Malinda "***continued***" to be under the supervision of her father. Am.Compl. ¶¶ 145, 158 (emphasis added). In other words, Plaintiffs have not pleaded any actionable "affirmative act" for which the CASD Defendants could be liable.

With respect to the first element, Plaintiffs have not pleaded any facts that could support a determination that Malinda's death by starvation and blunt force injuries by her father five months after Malinda last attended CASD were foreseeable to the CASD Defendants and a result of the CASD Defendants' failures to correctly track attendance, notice Malinda was hungry and notice Malinda had a bruise. In addition, Plaintiffs have not pleaded any facts that could support a determination that a special relationship existed between any of the CASD Defendants and Malinda such that the CASD Defendants owed Malinda some heightened duty. There are no facts pleaded in Plaintiffs' Amended Complaint that could support a finding that Malinda was entitled to any different treatment or attention than all of the other students in CASD. And finally, Plaintiffs' have not pleaded sufficient facts that could support a determination that the CASD Defendants' alleged inactions "shock the conscience." Rather, the CASD Defendants' outreach to ChildLine and Malinda's father preclude a finding that the CASD Defendants'

---

[4] Importantly, the allegations in Plaintiffs' Amended Complaint are not on the same level as the allegations in *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 239 (3d Cir. 2016) where "***a teacher in the Philadelphia School District allowed a kindergarten student to leave his classroom with an adult who failed to identify herself***."

alleged inactions "shock the conscience."

  **C.**  **Plaintiffs Have Failed to State Any Monell Claims.**

  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A local government may be sued under § 1983 only for acts implementing an official policy, practice or custom." *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir.1984) (*citing Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)). Under *Monell*, Plaintiffs must establish that: (1) CASD had a policy or custom that deprived Malinda of her constitutional rights; (2) the CASD Defendants acted deliberately and were the moving force behind the deprivation; and (3) Malinda's death caused by blunt force injuries and starvation at the hands of Malinda's father and her father's girlfriend were caused by the identified policy or custom. *Monell*, 436 U.S. at 692-94.

  As the Third Circuit has explained, "[n]ot all state action rises to the level of a custom or policy." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). Rather, "[a] policy is made 'when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict.'" *Id.* (*quoting Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Monell*, 436 U.S. at 690. A custom, on the other hand, "is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" *Natale*, 318 F.3d at 584 (*quoting Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). "Customs, when referred to in the context of § 1983 actions,

include only 'practices of state officials . . . so permanent and well settled as to constitute a custom or usage with the force of law.'" *Robinson v. Fair Acres Geriatric Center*, 722 F. App'x 194, 198 (3d Cir. 2018) (internal quotation marks omitted) (*quoting Monell*, 436 U.S. at 691, 98 S.Ct. 2018).

Additionally, "[t]here is no respondeat superior theory of municipal liability, so a [school district] may not be held vicariously liable under § 1983 for the actions of its agents." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir.2006) (*citing Monell*, 436 U.S. at 691). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, under *Monell*, a plaintiff must demonstrate that a constitutional violation was caused by a policy, custom, or practice of a municipality. *Monell*, 436 U.S. at 691; *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014). Here, liability under § 1983 attaches to the CASD Defendants only where the "government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. at 694. There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

"There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." *Nordstrand v. Plank*, 2005 WL 3978497 at *10 (Pa. Super. Ct., Dec. 6, 2005) (*quoting Natale*, 318 F.3d at 584). First, an employee's action results from a policy or custom when a municipal official implements a generally applicable official policy and the subsequent complained-of act is an implementation of that policy. *Id*.

(*citing Natale*, 318 F.3d at 584). Second, an employee's action results from a policy or custom "where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* (*quoting Natale*, 318 F.3d at 584). "[L]iability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Third, an employee's actions are the result of the employer's inaction or lack of control of its employee which is so obvious and lacking that it rises to the level of deliberate indifference. *Id.* (*quoting Natale*, 318 F.3d at 584).

Here, Plaintiffs have not identified the constitutional right at issue. This failure alone should doom Plaintiffs' *Monell* claims. But more importantly, Plaintiffs have not pleaded any CASD "policy or custom" that deprived Malinda of an unidentified constitutional right. At best, Plaintiffs pleaded that the CASD Defendants did not follow the CASD policy concerning documenting absenteeism. And there are no facts pleaded by Plaintiffs that could support a determination that an unidentified CASD policy or custom caused Malinda's death by blunt force injuries and starvation at the hands of Malinda's father and her father's girlfriend. Finally, given that the CASD Defendants repeated outreach to ChildLine precludes a finding that the Individual CASD Defendants were deliberately indifferent. Accordingly, Plaintiffs' *Monell* claims should be dismissed.

      **D.**     **Plaintiffs' Cause of Action for "Negligence and Recklessness" is Barred by the Political Subdivision Tort Claims Act.**

CASD is a "local agency" pursuant to 42 PA. C.S. § 8541, and therefore is entitled to the immunity protections set forth in 42 PA. C.S. §§ 8541 and 8542. *See Taylor v. Ne. Bradford Sch. Dist.*, 101 A.3d 144, 147 (Pa. Cmwlth. 2014) (noting that "school districts are considered local agencies for purposes of the Tort Claims Act…"). Pursuant to 42 Pa.C.S.A. § 8545, immunity

12

extends to "an employee of the local agency acting within the scope of his official duties," such as the Individual CASD Defendants. *Robbins v. Cumberland Cty. Children & Youth Servs.*, 802 A.2d 1239, 1252 (Pa. Commw. Ct. 2002) (footnotes omitted).

As the Court in *Orange Stones Co.* noted, "[i]n order to overcome the defense of governmental immunity, a plaintiff's claims against a local agency **must sound in negligence and must fall within one of the eight enumerated exceptions**[5] to local agency immunity set forth in section 8542(b) of the Tort Claims Act." 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014) (emphasis added).

> Under the PPSTCA, local agencies such as school districts are given broad tort immunity. The Act provides that, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons.Stat. § 8541. There are eight "acts" excepted from the immunity granted under § 8541, but none applies here. *See* 42 Pa. Cons.Stat. § 8542.
>
> Municipal *employees,* including school district employees, are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment. 42 Pa. Cons.Stat. § 8545. However, there is an exception to this general rule: Employees are not immune from liability under § 8545 where their conduct amounts to "actual malice" or 'willful misconduct,':
>
>> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, **actual malice or willful misconduct**, the provisions of section[ ] 8545 . . . shall not apply.

*Sanford*, 456 F.3d at 315 (*quoting* 42 Pa.C.S. § 8550).

---

[5] Title 42 Pa. C.S. § 8542(b) was amended in 2019 to include "sexual abuse" as a ninth exception.

The exceptions to governmental immunity must be narrowly construed." *Podejko v. Dep't of Transportation*, 236 A.3d 1216, 1220 (Pa. Cmwlth. 2020). "Willful misconduct, for the purposes of tort law, has been defined by our Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *Renk v. City of Pittsburgh*, 537 Pa. 68, 75, 641 A.2d 289, 293 (1994). "[T]he term 'willful misconduct' is **synonymous with the term 'intentional tort.'**" *Id*. (emphasis added; citation omitted). *See also Bright*, 443 F.3d at 287; *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 214 (3d Cir.2001)."

While there is a an exception for "sexual abuse," that exception – like all of the exceptions – must be narrowly construed. *Podejko*, 236 A.3d at 1220. Indeed, according to its plain language a plaintiff can take advantage of the "sexual abuse" exception only "if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence." 42 Pa. C.S. § 8542(b)(9).

In this case Plaintiffs have not pleaded any facts that could support a finding that the Individual CASD Defendants engaged in any intentional torts or otherwise committed any "willful misconduct." The facts pleaded do not allow for a reasonable person to conclude that the CASD Defendants "desired to bring about" Malinda's death at the hands of her father, or that they were "aware that [Malinda's death at the hands of her father] was substantially certain to follow, so that such desire can be implied." *Renk*, 641 A.2d at 293. Finally, because there are no allegations that the CASD Defendants engaged in any sexual abuse, the "sexual abuse" exception to immunity does not apply.

Moreover, in order to succeed on a negligence claim a plaintiff must prove the following elements: "(1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the

defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages occurred." *F.E.I. Co. v. U.S.*, 409 F. Supp. 3d 305, 319 (M.D. Pa. 2019)(*citing Sodders v. Fry*, 32 A.3d 882 (Pa. Commw. Ct. 2011)). Pennsylvania law recognizes a general duty imposed on all persons not to place others at risk of harm through their actions. *F.E.I. Co. v. U.S.*, 409 F. Supp. 3d 305, 319 (M.D. Pa. 2019)(*citing Roche v. Ugly Duckling Car Sales, Inc.*, 879 A.2d 785, 790 (Pa. Super. Ct. 2005)). This duty, however, is not conflated to a duty for a party to prevent a third party from harming a victim or to intercede when there is a possibility of danger to the victim. "***[M]ere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act***." *Shooter Pops LLC v. Wells Fargo Bank, N.A.*, 649 F. Supp. 3d 62, 69 (E.D. Pa. 2023) (emphasis added). *See also Fragale v. Wells Fargo Bank, N.A.*, 480 F. Supp. 3d 653, 665 (E.D. Pa. 2020))(internal citation omitted). Additionally, when a duty can be ascertained, "[t]he scope of this duty is limited, however, to those risks which are reasonably foreseeable by the actor in the circumstances of the case." *F.E.I. Co. v. U.S.*, 409 F. Supp. 3d 305, 319 (M.D. Pa. 2019) (*citing Roche v. Ugly Duckling Car Sales, Inc.*, 879 A.2d 785, 790 (Pa. Super. Ct. 2005)).

Here, Plaintiffs have failed to sufficiently plead facts that support the claim that the CASD Defendants breached a duty that they owed to Malinda that then caused Malinda's father and his father's girlfriend to kill Malinda. Moreover, Plaintiffs have not pleaded any facts that could support an allegation that Malinda's death at the hands of her father and his girlfriend was a reasonably foreseeable result of the CASD's alleged failure to correctly document Malinda's absences, and to correctly notice that Malinda was hungry and bruised.

### E.     **"Wrongful Death" and "Survival" are Not Independent Causes of Action.**

"[W]rongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death." *Sullivan v. Warminster Twp.,* No. 07–4447, 2010 WL 2164520, at *6 (E.D.Pa. May 27, 2010) (*citing* 42 Pa. Cons.Stat. §§ 8301(a), 8302; *Carroll v. Skloff,* 415 Pa. 47, 202 A.2d 9, 10 (1964)). Legally recognized causes of action must form the basis for wrongful-death and survival-action claims. *Id*. Accordingly, the "causes of action" in Plaintiffs' Amended Complaint for "wrongful death" and "survival action" must be dismissed as a matter of law.

### IV.    CONCLUSION

When it is stripped of bare recitations of elements of causes of action and legal conclusions, Plaintiffs' Amended Complaint alleged that the CASD Defendants contacted ChildLine about Malinda at least twice, including immediately after Malinda was removed from CASD, but otherwise did not do enough to prevent the death of Malinda at the hands of her father five months after Malinda left CASD. Plaintiffs do not identify any affirmative actions by the CASD Defendants. Because the "inactions" pleaded by Plaintiffs cannot support the causes of action asserted, the CASD Defendants should be dismissed from this case.

                           Respectfully submitted,

                           **WISLER PEARLSTINE, LLP**

                           */s/ Brian R. Elias*
                           **BRIAN R. ELIAS, ESQUIRE**
                           **FERANMI OLUGBENGA-JEBUTU, ESQUIRE**

                           *Attorneys for Defendants Coatesville Area School District, Catherine Van Vooren, Tomas Hanna, Kathryn Lamonte and Eugenia Roberts*

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMILY LEE, JAMIE HOAGLAND,** and **ABBEY HOAGLAND,** Individually and as Co-Administrators of the **ESTATE OF MALINDA HOAGLAND,** <br><br> Plaintiffs, <br><br> v. <br><br> **COUNTY OF CHESTER, et al.,** <br><br> **Defendants.** | NO. 2:24-cv-04180-RBS |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the CASD Defendants' Motion to Dismiss and Memorandum of Law in Support thereto were served via the Court's electronic filing system upon all counsel of record.

**WISLER PEARLSTINE, LLP**

*/s/ Brian R. Elias*
Brian R. Elias

*Attorneys for Defendants Coatesville Area School District, Catherine Van Vooren, Tomas Hanna, Kathryn Lamonte and Eugenia Roberts*