# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMILY LEE, JAMIE HOAGLAND,** and **ABBEY HOAGLAND**, Individually and as Co-Administrators of the **ESTATE OF MALINDA HOAGLAND**<br>c/o Bosworth DeAngelo LLC<br>123 South Broad Street, Suite 1100<br>Philadelphia, PA 19109<br><br>*Plaintiffs,*<br><br>v.<br><br>**COUNTY OF CHESTER**<br>313 West Market Street<br>West Chester, PA 19380<br><br>*And*<br><br>**COUNTY OF MONROE**<br>Administrative Building<br>One Quaker Plaza<br>Stroudsburg, PA 18360<br><br>*And*<br><br>**COATESVILLE AREA SCHOOL DISTRICT**<br>3030 C G Zinn Road<br>Thorndale, PA 19372<br><br>*And*<br><br>**NORTH BRANDYWINE MIDDLE SCHOOL**<br>256 Reeceville Road<br>Coatesville, PA 19320<br><br>*And*<br><br>**UPPER DUBLIN SCHOOL DISTRICT**<br>1580 Fort Washington Avenue<br>Maple Glen, PA 19002<br><br>*And* | **CIVIL ACTION NO. 2:24-cv-4180**<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br><br><br>**(continued on next page)** |

**HORACE S. SCOTT MIDDLE SCHOOL**
800 Olive Street
Coatesville, PA 19320

  *And*

**ADELAIDE GRACE**, in her individual capacity,
730 Phillips Street
Stroudsburg, PA 18360

  *And*

**EVE LARGE**, in her individual capacity,
601 Westtown Road, Suite 310
West Chester, PA 19380

  *And*

**DOUG WAEGEL**, in his individual capacity,
601 Westtown Road, Suite 310
West Chester, PA 19380

  *And*

**CATHERINE VAN VOOREN**, in her individual
capacity,
3030 C G Zinn Road
Thorndale, PA 19372

  *And*

**TOMAS HANNA**, in his individual capacity,
3030 C G Zinn Road
Thorndale, PA 19372

  *And*

**KATHRYN LAMOTHE**, in her individual
capacity,
800 Olive Street
Coatesville, PA 19320

  *And*

**LAURIE SMITH**, in her individual capacity,
1580 Fort Washington Avenue
Maple Glen, PA 19002

       *And*

**STEVEN M. YANNI**, in his individual capacity,
1580 Fort Washington Avenue
Maple Glen, PA 19002

       *And*

**EUGENIA ROBERTS**, in her individual capacity,
256 Reeceville Road
Coatesville, PA 19320,

                             *Defendants.*

## AMENDED COMPLAINT

Plaintiffs, Emily Lee, Jamie Hoagland, and Abbey Hoagland, individually and as Co-Administrators of the Estate of Malinda Hoagland, by and through their attorneys, Bosworth DeAngelo, LLC, allege as follows:

## PARTIES

1.      Plaintiff, Emily Lee, sister of Malinda Hoagland, is an adult citizen and resident of the Commonwealth of Pennsylvania, and can be contacted through her counsel, Bosworth DeAngelo, LLC, 123 South Broad Street, Suite 1100, Philadelphia, Pennsylvania 19109.

2.      Plaintiff, Jamie Hoagland, sister of Malinda Hoagland, is an adult citizen and resident of the Commonwealth of Pennsylvania, and can be contacted through her counsel, Bosworth DeAngelo, LLC, 123 South Broad Street, Suite 1100, Philadelphia, Pennsylvania 19109.

3.      Plaintiff, Abbey Hoagland, sister of Malinda Hoagland, is an adult citizen and resident of the Commonwealth of Pennsylvania, and can be contacted through her counsel, Bosworth DeAngelo, LLC, 123 South Broad Street, Suite 1100, Philadelphia, Pennsylvania 19109.

4.      Plaintiffs, Emily Lee, Jamie Hoagland, and Abbey Hoagland are co-administrators of the Estate of Malinda Hoagland.

5.      Defendant, County of Chester, is a county within the Commonwealth of Pennsylvania with its principal place of business located at 313 West Market Street, West Chester, Pennsylvania 19380.

6.      Defendant, County of Monroe, is a county within the Commonwealth of Pennsylvania with its principal place of business located at Administrative Building, One Quaker Plaza, Stroudsburg, Pennsylvania 18360.

7.      Defendant, Coatesville Area School District ("CASD"), is a municipal corporation or other corporate entity organized in and incorporated in the Commonwealth of Pennsylvania,

with its principal place of business located at 3030 C G Zinn Road, Thorndale, Pennsylvania 19372.

8.      At all times material hereto, defendant CASD has owned, operated, managed, staffed, overseen, supervised, controlled, and maintained responsibility for and over North Brandywine Middle School and Horace S. Scott Middle School.

9.      Defendant, North Brandywine Middle School, is a private corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 256 Reeceville Road, Coatesville, Pennsylvania 19320.

10.      Defendant, Horace S. Scott Middle School, is a private corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 800 Olive Street, Coatesville, Pennsylvania 19320.

11.      Defendant, Upper Dublin School District, is a municipal corporation or other corporate entity organized in and incorporated in the Commonwealth of Pennsylvania, with its principal place of business located at 1580 Fort Washington Avenue, Maple Glen, Pennsylvania 19002.

12.      Defendant, Adelaide Grace, in her individual capacity, is and was at all times material hereto, the Director of Monroe County Office of Children & Youth, with an address at 730 Phillips Street, Stroudsburg, Pennsylvania 18360.

13.      Defendant, Eve Large, in her individual capacity, is and was at all times material hereto, the Director of Chester County Children, Youth & Families, with an address at 601 Westtown Road, Suite 310, West Chester, PA 19380.

14.      Defendant, Doug Waegel, in his individual capacity, was at all times material hereto, the Director of Chester County Children, Youth & Families, with an address at 601 Westtown Road, Suite 310, West Chester, PA 19380.

2

15.     Defendant, Catherine Van Vooren, in her individual capacity, is and was at all times material hereto, the Superintendent of the Coatesville Area School District, with an address at 3030 C G Zinn Road, Thorndale, PA 19372.

16.     Defendant, Tomas Hanna, in his individual capacity, was at all times material hereto, the Superintendent of the Coatesville Area School District, with an address at 3030 C G Zinn Road, Thorndale, PA 19372.

17.     Defendant, Kathryn Lamothe, in her individual capacity, was at all times material hereto, the school Principal at Horace C. Scott Middle School 6th Grade Center, with an address at 800 Olive Street, Coatesville, PA 19320.

18.     Defendant, Laurie Smith, in her individual capacity, is and was at all times material hereto, the Superintendent of the Upper Dublin School District, with an address at 1580 Fort Washington Avenue, Maple Glen, PA 19002.

19.     Defendant, Steven M. Yanni, in his individual capacity, was at all times material hereto, the Superintendent of the Upper Dublin School District, with an address at 1580 Fort Washington Avenue, Maple Glen, PA 19002.

20.     Defendant, Eugenia Roberts, in her individual capacity, was at all times relevant hereto, the school Principal at North Brandywine Middle School, with an address at 256 Reeceville Road, Coatesville, PA 19320.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiffs' claims arise under The Fourteenth Amendment to the United States Constitution, The Eighth Amendment to the United States Constitution, and 42 U.S.C. § 1983.

22.     This Court has subject matter jurisdiction over all state-law claims pled in this action pursuant to 28 U.S.C. § 1367.

3

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants can be found in, reside, and/or transact business in this District.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the events and/or omissions giving rise to the claims occurred in this District.

## FACTS

25.     In 2007, Cindy Warren was criminally charged by Monroe County for abusing her 3-year-old son after a neighbor contacted police with concerns that the child had extensive bruising throughout the body; Cindy Warren pled guilty to the felony crime of Endangering Welfare of Children in violation of 18 Pa. C.S. § 4304 and was sentenced to a maximum of 7 years in prison.

26.     As of 2007, Defendants, Monroe County and Adelaide Grace, appreciated that Cindy Warren was an unfit and unsafe person to be around any minor child by virtue of her guilty plea to Endangering the Welfare of Children, the facts underlying that conviction (*i.e.* starvation, beating, and forced exercise of a child), and her admitted prior involvement in the death of a 2-year-old child in December 2000.

27.     As of 2007, Defendants, Monroe County and Adelaide Grace, knew and appreciated through their own investigations that Cindy Warren posed a substantial risk of bodily harm and death to any child under Cindy Warren's care, custody, supervision, or control.

28.     In Fall 2019, Malinda Hoagland's biological father, Rendell Hoagland, met and began to date Cindy Warren; soon after meeting, Rendell Hoagland and Cindy Warren began to reside together in Monroe County, Pennsylvania.

29.     Prior to this relationship, Rendell Hoagland and Malinda Hoagland's biological mother entered into a Custody Agreement regarding Malinda Hoagland which stated, among other things, that Malinda *"shall not be left in the care of Cindy Warren, Father's fiancé, for any period of time exceeding one (1) hour unless expressly agreed upon by Mother and Father through written*

4

*communication.*"

30.     At all times material hereto, Defendants, Chester County, Monroe County, Adelaide Grace, Eve Large, and Doug Waegel, knew and appreciated this custody agreement because they had viewed this custody agreement which was available to them on the official court docket and within their internal computer system(s).

31.     As of 2019, Defendants, Monroe County and Adelaide Grace, knew that Malinda Hoagland was living with Cindy Warren, a convicted child abuser, because there was already an open case being handled concurrently by Monroe County involving a custody dispute between Rendell Hoagland and Malinda Hoagland's biological mother.

32.     In 2019, Defendants, Monroe County and Adelaide Grace took affirmative action, through implementation of custody procedures and parameters overseen and managed by Monroe County OCY and Adelaide Grace, of intentionally placing Malinda Hoagland into a home where Defendants, Monroe County and Adelaide Grace, knew that Malinda Hoagland was at a substantial risk of serious bodily injury and death by living with Cindy Warren.

33.     In August 2021, Malinda Hoagland was enrolled in the Upper Dublin School District. At this time, Malinda Hoagland remained living with Cindy Warren and her biological father, Rendell Hoagland.

34.     At no time between the July 2020 implementation of a custody agreement and August 2021 when Malinda Hoagland was enrolled in the Upper Dublin School District did Monroe County confirm or ensure that this custody agreement was being followed.

35.     Throughout Malinda Hoagland's enrollment in the Upper Dublin School District, Malinda exhibited obvious signs of physical and psychological abuse, including a large bruise on her leg, a bruise on her arm, and emaciation; at all times during her enrollment, Defendants Upper Dublin School District, Steven M. Yanni, and Laurie Smith learned and appreciated that Malinda

displayed these visible symptoms of physical and psychological abuse, including a large bruise on her leg, a bruise on her arm, and emaciation, and that this child was residing with a known convicted child abuser with no biological relationship or custodial rights to this child.

36.     Despite Malinda displaying these obvious signs of physical and psychological abuse, the teachers and authorities who were responsible for Malinda's wellbeing at school, including Upper Dublin School District Superintendents Steven M. Yanni and Laurie Smith, repeatedly placed Malinda into the care and custody of Rendell Hoagland and Cindy Warren despite knowing that they were the perpetrators of abuse against Malinda.

37.     Throughout Malinda's entire time enrolled in the Upper Dublin School District, the teachers and authorities, including Steven M. Yanni and Laurie Smith, who were responsible for Malinda's wellbeing, learned and appreciated she resided in a home with Cindy Warren who was a convicted child abuser, was unrelated to Malinda, and had zero parental or custodial rights with respect to Malinda; despite appreciating this, the teachers and authorities who were responsible for Malinda's wellbeing at school repeatedly placed Malinda into the care and custody of Cindy Warren, which increased the risk of danger to Malinda.

38.     At numerous times, Cindy Warren went, on her own, to pick up and drop off Malinda Hoagland at Malinda's school within the Upper Dublin School District. At no time when Cindy warrant went to pick up Malinda Hoagland alone did any member of the Upper Dublin School District confirm Cindy Warren's identity, or whether she had any familial or custodial rights to take Malinda from school.

39.     At no time throughout Malinda's enrollment in the Upper Dublin School District did Cindy Warren ever provide to the Upper Dublin School District any documentation or identification confirming or ensuring that Cindy Warren had legal rights to reside with, supervise, care for, or take into her custody, Malinda Hoagland, while picking up Malinda from school.

40.     Throughout Malinda's entire time enrolled in the Upper Dublin School District, the teachers and authorities, including Steven M. Yanni and Laurie Smith, who were responsible for Malinda's wellbeing, knew and appreciated that Cindy Warren had pled guilty to Endangering Welfare of Children in violation of 18 Pa. C.S. § 4304 and was a physical threat to Malinda Hoagland; despite knowing this, the teachers and authorities responsible for Malinda's wellbeing at school repeatedly and recklessly placed Malinda into the care and custody of Cindy Warren which increased the risk of danger to Malinda and exposed Malinda to a danger that she would not have otherwise encountered.

41.     In April 2022, Malinda Hoagland was removed from the Upper Dublin School District and transferred to the Coatesville Area School District ("CASD") where she began attending King's Highway Elementary School.

42.     As required by law, CASD learned and obtained state-required documentation and information, at the time of Malinda Hoagland's enrollment at CASD that Malinda was residing full-time with Cindy Warren who was a convicted child abuser and who had zero legal or custodial rights to supervise, care for, or maintain custody over Malinda.

43.     Despite knowing Malinda was residing full-time with an adult (Cindy Warren) who was a convicted child abuser, not related to Malinda, and who had zero legal rights to supervise, care for, or maintain custody over Malinda, CASD repeatedly and serially misused its authority by releasing Malinda Hoagland from school to a convicted child abuser who was not related to Malinda, and who had zero legal rights to supervise, care for, or maintain custody over Malinda. Each improper act of releasing Malinda to this horrid environment increased the risk of danger to Malinda and posed a substantial risk of bodily harm and death to Malinda to which she otherwise would not have been subjected.

44.     As superintendents over CASD, Catherine Van Vooren and Tomas Hanna

7

intentionally and callously ignored the documentation within their possession that Malinda Hoagland was under the supervision, control, and residence of Rendell Hoagland and Cindy Warren and affirmatively acted to release Malinda Hoagland into their custody, where she was tortured, abused, and subjected to egregious deeds, including but not limited to sexual abuse.

45.     In or around the Fall of 2022, Malinda began attending Scott 6th Grade Center.

46.     Throughout the Fall of 2022, Malinda Hoagland routinely and repeatedly showed up to school hungry and emaciated. Malinda communicated this directly to the adults employed by CASD, including lunch-room personnel. Evidence that CASD knew that Malinda was not receiving enough food at home includes the fact that CASD employees, including lunch-room personnel, routinely provided Malinda extra food to eat.

47.     During this time, CASD officials, including Kathryn Lamothe, Catherine Van Vooren, and Tomas Hanna, knew and appreciated based on these reports to CASD employees, that Malinda was exhibiting clear signs of malnutrition and starvation.

48.     During this time, CASD officials, including Kathryn Lamothe, Catherine Van Vooren, and Tomas Hanna, intentionally ignored these clear warning signs of suspected child abuse and responded by knowingly releasing Malinda each day into the home, custody, care, and supervision of Rendell Hoagland and Cindy Warren.

49.     Despite knowing that Malinda Hoagland was being starved at home by Rendell Hoagland and Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda), CASD, including Kathryn Lamothe, Catherine Van Vooren, and Tomas Hanna, routinely, repeatedly, and intentionally released Malinda into the care of Rendell Hoagland and Cindy Warren, which placed Malinda at an increased risk of danger.

50.     On December 11, 2022, Rendell Hoagland submitted a note to CASD for Malinda's absence from school on December 8, 2022. This was an absence "without excuse." Despite

8

receiving no legitimate excuse for Malinda's absence from school on December 8, 2022—which, at that point, was a pattern of absenteeism—CASD, including Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe, misused their authority by again releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

51.     In 2023, Malinda Hoagland attended North Brandywine Middle School, which is a part of CASD.

52.     Throughout her time at North Brandywine Middle School, Malinda Hoagland had 25 "unexcused" absences and 10 "excused" absences. Neither North Brandywine Middle School nor CASD ever received any documentation or confirmation that any of these 35 absences from school were legitimate in any way. Also, throughout this time period, when Malinda was present at school, she was displaying obvious and clear signs of physical and psychological abuse, including severe bruising and emaciation. CASD and North Brandywine Middle School themselves repeatedly documented Malinda's absences as "illegal absence."

53.     Despite knowing that Malinda displayed these obvious signs of mistreatment and abuse coupled with zero documentation confirming the legitimacy of 25 absences, North Brandywine Middle School and CASD repeatedly misused their authority by intentionally releasing Malinda from school to Cindy Warren (a person with zero legal rights to supervise, care for, or maintain custody over Malinda) and Rendell Hoagland.

54.     On April 4, 2023, principal, Kathryn Lamothe, sent a letter addressed to Rendell Hoagland entitled "OFFICIAL NOTIFICATION OF FIRST UNLAWFUL ABSENCE"; in this letter, Principal Lamothe consciously misrepresented the number of absences Malinda had incurred. Specifically, Principal Lamothe stated that Malinda had been absent without lawful excuse on January 26, February 22, February 23, and March 8; in reality, Malinda had been

unlawfully absent all of those days as well as on January 4, January 5, January 9, January 20, January 27, February 1, February 17, March 9, March 10, March 14, March 15, March 16, and March 17, totaling seventeen (17) illegal absences, and was habitually truant.

55.    Principal Lamothe's shocking failure to keep correct documentation regarding unexcused absences and to take timely affirmative action in rendering Malinda habitually truant affirmatively placed Malinda under the continued supervision and control by Malinda's abusers and directly subjected her to unfathomable torture, sexual abuse, and injuries.

56.    As a direct result of CASD's, North Brandywine Middle School's, Kathryn Lamothe's, Catherine Van Vooren's, and Tomas Hanna's unlawful policy, custom, and practice of ignoring state-mandated truancy law and reporting requirements, no magisterial district judge was ever notified—as required—by CASD and North Brandywine Middle School of Malinda Hoagland's truancy. This resulted subjected Malinda to sustained physical abuse, sexual abuse, torture, and starvation at the hands of Cindy Warren and Rendell Hoagland.

57.    On April 11, 2023, exactly one week after Principal Lamothe's April 4, 2023, letter, Principal Lamothe sent another letter addressed to Rendell Hoagland; in this letter, Principal Lamothe again misrepresented the number of absences Malinda had had. Specifically, Principal Lamothe stated that Malinda had been absent without lawful excuse on March 9, March 10, March 13, and March 14. However, in reality, Malinda had been unlawfully absent all of those days as well as on January 4, January 5, January 9, January 20, January 27, February 1, February 17, February 22, February 23, March 8, March 15, March 16, and March 17.

58.    Despite knowing and recognizing, per her own April 11, 2023 letter, that Malinda Hoagland's absences deemed her "habitually truant" as a matter of law requiring submission to a Magisterial District Judge, as a result of CASD's and North Brandywine Middle School's unlawful policy, custom, and practice of ignoring state-mandated truancy laws and reporting requirements,

Malinda Hoagland's habitual truancy was never reported by CASD or North Brandywine Middle School to appropriate authorities subsequent to Principal Lamothe's April 11, 2023 letter. This persistent violation by CASD and North Brandywine Middle School resulted in Malinda's continued torture, physical abuse, sexual abuse, and starvation spanning from April 11, 2023, until her death over one year later in May 2024.

59.    At numerous times, Cindy Warren went, on her own, to pick up and drop off Malinda Hoagland at Malinda's school within the CASD. At no time when Cindy Warren went to pick up Malinda Hoagland alone did any member of the CASD confirm Cindy Warren's identity, or whether she had any familial or custodial rights to take Malinda from school.

60.    At numerous times, Cindy Warren went, on her own, to pick up and drop off Malinda Hoagland at Malinda's school at Brandywine Middle School. At no time when Cindy warrant went to pick up Malinda Hoagland alone did any member of the Brandywine Middle School confirm Cindy Warren's identity, or whether she had any familial or custodial rights to take Malinda from school.

61.    Defendants, Coatesville Area School District and Brandywine Middle School, repeatedly placed Malinda Hoagland into the care and custody of Cindy Warren despite knowing Cindy Warren had no familial or custodial relationship with Malinda Hoagland.

62.    On June 1, 2023, defendants, Chester County, Eve Large, and Doug Waegel received a report "with concerns for Malinda" through ChildLine.

63.    Per this June 1, 2023 report, defendants Chester County, Eve Large, and Doug Waegel learned that Malinda Hoagland had a "healing bruise below her left eye that raised concerns with mandated reporters when [Malinda] provided multiple different explanations"; that Malinda "seemed down"; that Malinda had arrived at school with "an abrasion on her face earlier in the year" and that the reporter "had not been provided with an explanation for the injury by the

child's father or stepmother."

64.     On June 2, 2023, in response to receipt of the June 1, 2023, report that Malinda was being abused, an employee of Chester County CYF, directly called and spoke with Cindy Warren.

65.     During this phone call, the Chester County CYF employee learned that Malinda had multiple unexplained "bruises" throughout her body.

66.     Upon learning the identity of Cindy Warren on June 2, 2023, defendants Chester County, Eve Large, and Doug Waegel, knew that Malinda Hoagland—in addition to being the subject of a child abuse report—was living and residing in the home of a convicted child abuser who had played a role in the death of an infant, and who was not permitted to reside full-time with Malinda Hoagland.

67.     Despite appreciating, as of June 2, 2023, that Malinda Hoagland was residing full-time with a convicted child abuser in direct violation of a Custody Agreement, coupled with the objective evidence that Malinda was being physically abused and beaten, defendants, Chester County, Doug Waegel, and Eve Large, deliberately disregarded the grave risk of harm to which Malinda was subjected and never visited Malinda's home to assess her living environment and affirmatively decided to place Malinda Hoagland into a home with Cindy Warren (a convicted child abuser with no legal rights over her and who was not permitted to reside with Malinda) and Rendell Hoagland (a perpetrator of abuse, torture, and starvation against Malinda). Defendant, Chester County, repeatedly placed Malinda Hoagland into the care and custody of Cindy Warren despite actually knowing that Cindy Warren was a convicted child abuser and that placement of Malinda into Cindy Warren's custody violated the custody agreement.

68.     On October 26, 2023, Malinda had her school photographs taken, which revealed bruising around Malinda's left eye. Defendants, CASD and North Brandywine Middle School, saw this photo depicting bruising around Malinda's left eye, yet deliberately disregarded their obligation

to report these signs of physical abuse.

69.     On November 6, 2023, Cindy Warren and Rendell Hoagland attended a parent/teacher conference with one of Malinda Hoagland's teachers at North Brandywine Middle School; during this conference, Cindy Warren and Rendell Hoagland demanded that Malinda's teacher allow them to search Malinda's locker. The teacher allowed this search to occur.

70.     During Cindy Warren and Rendell Hoagland's bizarre search of Malinda's locker, which the CASD/North Brandywine Middle School teacher was present for, stashed-away food was discovered within Malinda's locker.

71.     At or around this same time, Malinda was obviously underweight and emaciated which defendants, CASD, Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, and North Brandywine Middle School, knew about and had known about for months.

72.     In response to discovering Malinda was hiding food in her locker, Cindy Warren and Rendell Hoagland ragefully burst out in anger at Malinda and her teacher.

73.     Defendants, CASD, Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, and North Brandywine Middle School again intentionally and recklessly released Malinda into the custody of Cindy Warren and Rendell Hoagland following this conference despite knowing and understanding that the aforementioned rage of anger was a clear sign of child abuse.

74.     On November 7, 2023, the day after the bizarre locker search revealed hidden food, an employee of CASD and North Brandywine Middle School made a report to Chester County CYF, and Chester County, via ChildLine.

75.     Per this November 7, 2023, report, there were concerns about Malinda's "safety and wellbeing"; reports that "Malinda often came to school hungry and asking for more food"; reports observing "Malinda to have bags under her eyes and wear baggy clothing consistently"; and concerns that Malinda had come to school "with an unexplained black eye";

13

76.     Upon receipt of a phone call from Cindy Warren on November 8, 2023, defendants, Chester County, Doug Waegel, and Eve Large, were again informed directly that Malinda was residing with a convicted child abuser who was unlawfully residing with Malinda in direct violation of an existing custody agreement which defendant, Chester County, knew about; despite appreciating this, Defendants, Chester County, Doug Waegel, and Eve Large deliberately decided to not remove Malinda from this home as required or even visit the home in person.

77.     The reckless decision by Defendants, Chester County, Doug Waegel, and Eve Large on November 8, 2023, to not remove Malinda from this home as required, or even visit the home in person, was a deliberate and intentional disregard of the risk of imminent danger and death to Malinda that affirmatively placed Malinda into the custody of a known child abuser.

78.     However, later that evening of November 8, 2023, an employee from defendants, Chester County, spoke again to Cindy Warren and Rendell Hoagland on the telephone, during which Rendell Hoagland and Cindy Warren admitted that they were deliberately not feeding Malinda breakfast.

79.     Despite this alarming information that defendants, Chester County, Doug Waegel, and Eve Large obtained based on this November 2023 report, defendant Chester County affirmatively decided to place Malinda Hoagland into a home with Cindy Warren (a convicted child abuser with no legal rights over her and who was not permitted to reside with Malinda) and Rendell Hoagland (a perpetrator of abuse, torture, and starvation against Malinda).

80.     On December 5, 2023, Malinda was abruptly removed from CASD and North Brandywine Middle School by Cindy Warren and Rendell Hoagland.

81.     At or around this same time, defendants, CASD and/or North Brandywine Middle School made another report to Chester County and Chester County CYF, "with concerns for [Malinda's] safety and access to food."

14

82.     Defendant, Chester County, knew that Malinda Hoagland had moved with Cindy Warren and Rendell Hoagland to Chester County because Chester County was informed of this move by Rendell Hoagland and/or Malinda's mother and/or her power of attorney.

83.     Upon receipt of this report "with concerns for [Malinda's] safety and access to food," consistent with the unlawful and unconstitutional policy, practice, and custom of state-mandated investigation tactics and reporting requirements regarding child abuse, Defendants, Chester County, Doug Waegel, and Eve Large, recklessly disregarded their obligation under state law to visit Malinda's home in person, interview Malinda, interview Rendell Hoagland, interview Cindy Warren, and remove Malinda Hoagland from the home.

84.     Upon receipt of this report "with concerns for [Malinda's] safety and access to food," Defendants, Chester County, Doug Waegel, and Eve Large, were again reminded and notified that Malinda was residing full-time with Cindy Warren who was a convicted child abuser and who had zero legal rights to supervise, care for, or maintain custody over Malinda.

85.     Despite the alarming and obvious information that defendants, Chester County and Chester County CYF obtained based on this report in or around December 2023, defendants, Chester County, Doug Waegel, and Eve Large affirmatively decided to place Malinda Hoagland into a home with Cindy Warren and Rendell Hoagland.

86.     In December 2023, defendants, CASD, Catherine Van Vooren, Tomas Hanna, and Kathryn Lamothe held actual knowledge that Malinda was not enrolled into a new school as required by state law and recklessly ignored this violation.

87.     On December 19, 2023, Dr. Eugenia Roberts sent a letter addressed: "To The Parent/Guardian of: Malinda Hoagland;" in this letter, Principal Roberts noted that Malinda had been illegally absent on December 4, December 5, December 6, December 7, December 11, December 12, December 13, and December 14 of 2023.

15

88.     Nevertheless, consistent with defendants CASD's and North Brandywine Middle School's unlawful policy, custom, and practice of ignoring state-mandated truancy laws and reporting requirements, Malinda Hoagland's December 2023 truancy was never reported by CASD or North Brandywine Middle School to appropriate authorities; this persistent violation by CASD, Principal Roberts, and North Brandywine Middle School was a reckless disregard of known risks of harm to Malinda Hoagland and resulted in Malinda's continued torture, physical abuse, sexual abuse, and starvation spanning from December 19, 2023, until her death over one year later in May 2024.

89.     From January 2024 throughout her death in May 2024, Rendell Hoagland and Cindy Warren continued to systematically subject Malinda Hoagland to unspeakable physical abuse, sexual abuse, psychological torment, humiliation, and starvation.

90.     At approximately 7:49 p.m. on May 4, 2024, Malinda Hoagland was admitted to Paoli Hospital with various serious injuries weighing merely 50 pounds at the age of 12.

91.     At 9:58 p.m., Malinda Hoagland was pronounced dead.

92.     An autopsy performed on Malinda Hoagland following her death concluded that Malinda died from starvation and multiple blunt force injuries and revealed approximately 75 bruises throughout Malinda's body; contusions, ulcers, and pressure sores; injuries to Malinda's brain, heart, lungs, liver, pancreas and intestines; and healing fractures of the pelvic bone, lower vertebrae, right forearm, and both thigh bones.

93.     On May 4 and 5, 2024, searches of the home where Malinda resided by law enforcement revealed surveillance cameras "in every home of the residence."

94.     Based on all of the conduct averred throughout this Complaint, defendants violated Malinda Hoagland's clearly established constitutional right, pursuant to the Fourteenth and Eighth Amendments to the U.S. Constitution, to remain free from torture.

16

95.     Defendants also violated Malinda Hoagland's clearly established constitutional rights, pursuant to the Fourteenth Amendment to the U.S. Constitution, to not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur; to be free from unjustified intrusions upon her personal security and bodily integrity; to not withdraw or remove Malinda from the custody of an adult (*i.e.* Cindy Warren) despite having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; to not withdraw or remove Malinda from the custody of an adult (*i.e.* Rendell Hoagland) despite having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; and placing Malinda in a home that defendants knew to be dangerous and unfit to care for a child.

96.     At all times as averred throughout this Complaint, the Defendants were deliberately indifferent to Malinda Hoagland in that the Defendants knew of and disregarded an excessive risk to Malinda's health and safety.

97.     As a direct and proximate cause and result of the affirmative conduct, deliberate indifference, intentional acts, unconstitutional conduct, negligent acts and omissions, and recklessness of the Defendants and their agents and/or employees, as stated throughout this Complaint and all of which shocks the conscience, Plaintiffs and Malinda Hoagland suffered the following avoidable injuries and damages:

  a)  Starvation;

  b)  Torture;

  c)  Physical abuse;

  d)  Psychological abuse;

  e)  Sexual abuse;

  f)  Fractures;

  g)  Injury and damage to the brain;

17

h)  Injury and damage to the heart;

i)  Injury and damage to the lungs;

j)  Injury and damage to the pancreas;

k)  Injury and damage to intestines;

l)  Injury to the eyes;

m) Cardiac arrest;

n)  Contusions and bruises;

o)  Abrasions;

p)  Hematomas;

q)  Hemorrhages;

r)  Lacerations;

s)  Organ failure;

t)  Jaundice;

u)  Ulcers;

v)  Pressure sores;

w)  Wounds;

x)  Infections;

y)  Past and future physical pain and suffering;

z)  Past and future mental, psychological, and emotional distress and suffering;

aa) Past and future medical bills and expenses;

bb) Past and future loss of income and earning capacity;

cc) Past and future loss of life's pleasures;

dd) Past and future emotional distress;

18

ii) Past and future embarrassment;

jj) Past and future disfigurement;

kk) Past and future humiliation; and

ll) Punitive damages.

98.     The injuries and damages to Malinda Hoagland and the injuries and damages to Plaintiffs were caused solely by the affirmative conduct, deliberate indifference, intentional acts, unconstitutional conduct, negligent acts and omissions, and recklessness of the Defendants and their agents and/or employees, as stated throughout this Complaint and all of which shocks the conscience.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

**COUNT I – STATE-CREATED DANGER PURSUANT TO 42 U.S.C. § 1983**
**Plaintiffs v. Defendants, Coatesville Area School District, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts in their individual capacities**

99.     The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

100.     As averred throughout this Complaint, the harm ultimately caused to Malinda Hoagland by the abuse, torture, and starvation of Rendell Hoagland and Cindy Warren was foreseeable, fairly direct, and in reckless disregard of known warnings. Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual capacities, appreciated that Malinda was being physically abused, starved, and mistreated by Rendell Hoagland and Cindy Warren. These defendants also

19

knew that Cindy Warren was a convicted child abuser with no legal rights to have custody over Malinda Hoagland.

101.    Despite this knowledge, as averred throughout the Complaint, defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual capacities, repeatedly, unlawfully, and intentionally placed Malinda into the care, control, and custody of Rendell Hoagland and Cindy Warren, knowing that each of these adults posed a serious risk of bodily injury or death to Malinda.

102.    At all times, a special relationship existed between defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual capacities, and Malinda Hoagland. These defendants were Malinda's educators and responsible for the well-being and safety of Malinda Hoagland, who was at all times a minor, and therefore, unable to make decisions on her own as to where she would reside. At all times, defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual capacities, had the authority to decide whether or not to release Malinda Hoagland to any adults, including Cindy Warren and Rendell Hoagland. These defendants also possessed the authority, at all times, to place Malinda Hoagland into an extremely dangerous home environment, which these defendants repeatedly and intentionally did.

103.    Malinda Hoagland's relationship to defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their

individual capacities—which was that of a minor-child student and school—knowingly made her a discrete class of persons subjected to potential harm brought about by these defendants' actions, as opposed to a member of the public in general.

104.    Defendants, CASC, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual capacities, affirmatively used their authority to send inaccurate and outrageously unlawful correspondence and letters to Cindy Warren and Rendell Hoagland regarding Malinda's truancy, absences, medical documentation or lack thereof, and vaccination status, all of which rendered Malinda Hoagland more vulnerable and at risk had these defendants not misused their authority in this manner.

105.    Defendants, CASC's, North Brandywine Middle School's, Horace S. Scott Middle's School's, Upper Dublin School District's, and Catherine Van Vooren's, Tomas Hanna's, Kathryn Lamothe's, Laurie Smith's, Steven M. Yanni's, and Eugenia Roberts's affirmative use of their authority repeatedly and recklessly rendered Malinda Hoagland more vulnerable to danger than had these defendants not acted at all and increased the risk of danger to Malinda Hoagland.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT II – STATE-CREATED DANGER PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, County of Chester, County of Monroe, and Adelaide Grace, Eve Large, and Doug Waegel in their individual capacities**

106.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

107.    As averred throughout this Complaint, the harm ultimately caused to Malinda Hoagland by the abuse, torture, and starvation of Rendell Hoagland and Cindy Warren was

foreseeable, fairly direct, and in reckless disregard of known danger. Defendants, County of Chester, County of Monroe and Adelaide Grace, Eve Large and Doug Waegel in their individual capacities, knew that Malinda was being physically abused, starved, and mistreated by Rendell Hoagland and Cindy Warren. These defendants also knew that Cindy Warren was a convicted child abuser with no legal rights to have custody over Malinda Hoagland.

108.    Defendants, County of Chester, County of Monroe, and Adelaide Grace, Eve Large and Doug Waegel in their individual capacities, knew that Cindy Warren pled guilty to the felony crime of Endangering Welfare of Children in violation of 18 Pa. C.S. § 4304, was sentenced to a maximum of 7 years in prison, and was an unfit and unsafe person to be around any minor child by virtue of her guilty plea to Endangering the Welfare of Children, the facts underlying that conviction (*i.e.* starvation, beating, and forced exercise of a child), and her admitted prior involvement in the death of the aforementioned 2 year-old child in December 2000.

109.    Despite this knowledge, as averred throughout the Complaint, Defendants, County of Chester, County of Monroe and Adelaide Grace, Eve Large, and Doug Waegel in their individual capacities, repeatedly, unlawfully, intentionally, recklessly, and deliberately placed Malinda into the hands, care, control, and custody of Rendell Hoagland and Cindy Warren, knowing that each of these adults posed a serious risk of bodily injury or death to Malinda. This conduct, particularly in light of what these defendants knew and observed about Malinda Hoagland, Rendell Hoagland, and Cindy Warren (*i.e.* that Cindy Warren was a convicted child abuser who was not permitted to reside with Malinda full-time per a known custody agreement), is deplorable, outrageous, and shocks the conscience.

110.    At all times, a special relationship existed between defendants, County of Chester, County of Monroe and Adelaide Grace, Eve Large and Doug Waegel in their individual capacities, and Malinda Hoagland.

111.    At all times, defendants, County of Chester, County of Monroe and Adelaide Grace, Eve Large and Doug Waegel in their individual capacities, had the authority to decide whether to place Malinda in a residence with any adult(s), including Cindy Warren and Rendell Hoagland. These defendants also possessed the authority, at all times, to remove Malinda Hoagland from her residence with Cindy Warren and Rendell Hoagland yet consciously decided to affirmatively place Malinda into a home where she was tortured, sexually abused, and killed.

112.    Malinda Hoagland's relationship to defendants, County of Chester, County of Monroe and Adelaide Grace, Eve Large and Doug Waegel in their individual capacities in their individual capacities—which was that of a minor-child who was subject to existing custody litigation and multiple child-abuse reports—made her a discrete class of persons subjected to potential harm brought about by these defendants actions, as opposed to a member of the public in general.

113.    As averred throughout the Complaint, over a period of multiple years, defendants, County of Chester, County of Monroe, Adelaide Grace, Eve Large, and Doug Waegel in their individual capacities, affirmatively and recklessly used their authority to place Malinda Hoagland into a home in which they knew that Malinda Hoagland was the ongoing victim of serial abuse, starvation, and torment. Had these defendants not misused their authority and knowingly disregarded these clear warnings in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

114.    Defendants, County of Chester, County of Monroe and Adelaide Grace, Eve Large, and Doug Waegel in their individual capacities, affirmatively used their authority to place telephone calls to both Rendell Hoagland and Cindy Warren to discuss these adults' abuse of Malinda Hoagland while simultaneously not visiting the residence in-person, all of which rendered Malinda Hoagland more vulnerable and at risk had these defendants not misused their authority in

this manner. Had these defendants not callously misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

115.    Defendants, County of Chester, County of Monroe, Adelaide Grace, Eve Large and Doug Waegel in their individual capacities, affirmatively used their authority by knowingly and outrageously transmitting false and inaccurate information to the Commonwealth of Pennsylvania, regarding numerous reports of child abuse of Malinda Hoagland, all of which allowed Malinda to remain in a dangerous home environment without intervention or investigation, and which recklessly increased the risk of harm and danger to Malinda by subjecting her to repeated abuse, torture, and starvation. Had these defendants not misused their authority in this manner, Malinda Hoagland would have been removed from her residence, spared months of torture, abuse, and starvation, and would be alive today.

116.    Defendants, County of Chester, County of Monroe, Adelaide Grace, Eve Large, and Doug Waegel in their individual capacities, affirmative use of their authority repeatedly rendered Malinda Hoagland more vulnerable to danger than had these defendants not acted at all and increased the risk of danger to Malinda Hoagland.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive o f interest, prejudgment interest and costs.

### COUNT III – *MONELL* CLAIM FOR UNLAWFUL CUSTOMS, PRACTICES, AND POLICIES PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, Coatesville Area School District, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual capacities**

117.    The preceding paragraphs of this Complaint are incorporated as though fully set

forth herein.

118.    Defendants, CASD, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, and Eugenia Roberts, in their individual capacities, each maintained, enforced, and promulgated unlawful and deliberately indifferent official customs, practices, and policies with respect to reporting suspected child abuse of students, including Malinda Hoagland.

119.    Specifically, the customs, practices, and policies maintained by these defendants with respect to reporting suspected child abuse of students mandated a continuing violation of the law by consciously and recklessly ignoring their legal requirements in the following ways:

a)      ignoring their legal requirement to mandate that any school or district employee who has reasonable cause to suspect that a child is a victim of abuse must immediately report that abuse to state and county officials;

b)      ignoring their legal requirement to mandate, as required by law, that any school or district employee reporting suspected child abuse must make an immediate report via the telephone or in writing to state and county officials;

c)      deliberately ignoring their legal requirement to mandate, as required by law, any time a school or district employee makes a verbal report of suspected child abuse over the telephone, that employee must make a written report to state and county officials within forty-eight (48) hours of the verbal telephone report and identify every person in the child's household by name and address;

d)      deliberately ignoring their legal requirement to mandate, as required by law, any time a school or district employee makes a report of suspected child abuse, that employee must identify in their report the name and relationship of each adult individual living with the child in the child's home;

e)      deliberately ignoring their legal requirement to mandate, as required by law, any time a school or district employee makes a report of suspected child abuse, that employee must identify any evidence of any prior abuse by every adult living with the child in the child's home and immediately report this to the person/individual in charge of the school and/or school district;

f)      releasing and placing children, including Malinda Hoagland, into the care, custody, and control of adults who were unfit and unsafe to assume the care, custody and

25

control of children, *i.e.*, Cindy Warren and Rendell Hoagland.

g)  releasing children into the care and custody of adults who these defendants had actual knowledge were dangerous to the health and safety of the children being released into these adults' care.

h)  ignoring the law with regard to determinations, enforcement, and addressing habitual truancy of students, including Malinda Hoagland, by setting up mandatory conferences, referral of the child to the county children and youth agency, referral of the child to a school-based or community-based attendance improvement program, and notification to magisterial district courts and initiation of truancy proceedings.

120.    Each unlawful policy, custom, and practice of these defendants actually caused the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

121.    Each unlawful policy, custom, and practice of these defendants was officially promulgated by each of these defendant's officers and officials, all of whom had legal and supervisory authority to issue, promulgate, create, and enforce each of these unlawful policies, customs, and practices, which these officers and officials, in fact, did.

122.    Each unlawful policy, custom, and practice of these defendants, given the persistence of these policies over months and years and the defendants' course of conduct as averred throughout this complaint, was so well-settled and permanent as to virtually constitute law.

123.    Each unlawful policy, custom, and practice of these defendants was deliberately indifferent to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland, and shocks the conscience.

124.    Each unlawful policy, custom, and practice of these defendants violated Malinda Hoagland's clearly established constitutional rights to: remain free from torture; not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur; be

free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants recklessly knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT IV – *MONELL* CLAIM FOR UNLAWFUL CUSTOMS, PRACTICES, AND POLICIES PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, County of Chester, County of Monroe, Adelaide Grace, Eve Large, and Doug Waegel, in their individual capacities**

125.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

126.    Defendants, County of Chester, County of Monroe, Adelaide Grace, Eve Large, and Doug Waegel, in their individual capacities each maintained, enforced, and promulgated unlawful and deliberately indifferent official customs, practices, and policies with respect to investigating reports of child abuse of children, including Malinda Hoagland.

127.    Defendants, County of Chester, County of Monroe, Adelaide Grace, Eve Large, and Doug Waegel, in their individual capacities, in their official and individual capacities, each maintained, enforced, and promulgated the following unlawful and unconstitutional policies:

a)    deliberately refusing to make required home visits to the residences where children were reported to be abused so as to save money and resources;

b)    deliberately ignoring their legal requirement to perform adequate investigations of reported child abuse, including by conducting in-person interviews of the children and adults who are the subject of the report;

c)    ignoring their legal requirement to perform adequate investigations of reported child abuse, including by recklessly failing to include all of the legally required information in reports to the Commonwealth of Pennsylvania;

d) deliberately ignoring their legal requirement to immediately notify the Commonwealth of Pennsylvania, via Pennsylvania's Department of Human Services, of any report of suspected child abuse;

e) deliberately ignoring their legal requirement to report to all appropriate law enforcement agencies when reports of suspected child abuse contained information that a criminal offense may have been committed, including assault, battery, indecent exposure, and sexual abuse;

f) deliberately ignoring their legal requirement to ensure that children who were at high risk for abuse or neglect were seen by an employee of Chester County and Chester County CYF, at least once per week, until the child is no longer assessed as being at high risk for abuse or neglect;

g) deliberately ignoring their legal requirement to provide or have available adequate services for the prevention, investigation and treatment of child abuse— as required by law—including, but not limited to, out-of-home placement services, protective and preventative social counseling, emergency shelter care, and emergency caretaker services;

h) deliberately ignoring their legal requirement to see any child who is the subject of a report of suspected child abuse immediately or within 24 hours of receipt of the report.

i) deliberately ignoring their legal requirement to make a determination of the safety of or risk of harm to the child or any other child in the home environment; and

j) deliberately indifferent official customs, practices, and policies with respect to the release and placement of children, including Malinda Hoagland, into the care, custody, and control of adults who were unfit and unsafe to assume the care, custody and control of children, *i.e.*, Cindy Warren and Rendell Hoagland.

128. Each unlawful policy, custom, and practice of these defendants actually caused the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

129. Each unlawful policy, custom, and practice of these defendants was officially promulgated by each of these defendant's officers and officials, all of whom had legal and supervisory authority to issue, promulgate, create, and enforce each of these unlawful policies,

28

customs, and practices, which these officers and officials, in fact, did. This includes each of these defendant's directors, executives, and supervisors in charge at the time of the events giving rise to the claims brought in this action.

130.    Each unlawful policy, custom, and practice of these defendants, given the persistence of these policies over months and years and the defendants' course of conduct as averred throughout this complaint, was so well-settled and permanent as to virtually constitute law.

131.    Each unlawful policy, custom, and practice of these defendants was reckless and deliberately indifferent to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland, and shocks the conscience.

132.    Each unlawful policy, custom, and practice of these defendants violated Malinda Hoagland's clearly established constitutional rights to: remain free from torture; not be removed from a safe environment and placed into one in which it is clear that harm is likely to occur; be free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

### COUNT V – *MONELL* CLAIM FOR FAILURE TO TRAIN PURSUANT TO 42 U.S.C. § 1983
**Plaintiffs v. Defendants, Coatesville Area School District, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, County of Monroe, County of Chester and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, Eugenia Roberts, Eve Large, Doug Waegel, and Adelaide Grace in their individual capacities**

133.    The preceding paragraphs of this Complaint are incorporated as though fully set

29

forth herein.

134.    Defendants, Coatesville Area School District, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District, County of Monroe, County of Chester and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, Eugenia Roberts, Eve Large, Doug Waegel, and Adelaide Grace in their individual capacities, at all times failed to adequately train their agents and employees, on the proper and legal means and methods of reporting and investigating suspected child abuse and neglect, proper and legal means and methods of child placement, oversight of children during custody litigation, and supervision of children living in homes with known or convicted child abusers.

135.    These defendants' failure to adequately train their employees and agents on the proper and legal means and methods of reporting and investigating suspected child abuse and neglect is evident and obvious by the pervasiveness, which spanned months and years, of these defendants' deliberate disregard of the abuse, torment, torture, and starvation that Malinda Hoagland was being subjected to.

136.    These defendants' failure to adequately train their employees and agents was the moving force behind and the cause of the injuries and damages that Plaintiffs and Malinda Hoagland suffered, including the sustained, serial, and repeated physical abuse, sexual abuse, psychological abuse, torture, and starvation of Malinda Hoagland, as well as Malinda Hoagland's death.

137.    The magnitude and severity of these defendants' failure to provide adequate training constitutes deliberate indifference to the health and safety of the children and students to whom these defendants owed a duty, including Malinda Hoagland, and shocks the conscience.

138.    These defendants' failure to provide adequate training violated Malinda Hoagland's clearly established constitutional rights to: remain free from torture; not be removed

30

from a safe environment and placed into one in which it is clear that harm is likely to occur; be free from unjustified intrusions upon her personal security and bodily integrity; to be withdrawn or removed from the custody of an adult despite defendants having knowledge that the adult posed a foreseeable and substantial risk of bodily harm to the child; not being placed a home and in hands of adults whom the defendants knew to be dangerous and unfit to care for a child.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

## COUNT VI – NEGLIGENCE AND RECKLESSNESS
### Plaintiffs v. All Defendants

139.    The preceding paragraphs of this Complaint are incorporated as though fully set forth herein.

140.    Defendants, County of Chester, County of Monroe, Coatesville Area School District, North Brandywine Middle School, Horace S. Scott Middle School, Upper Dublin School District and Catherine Van Vooren, Tomas Hanna, Kathryn Lamothe, Laurie Smith, Steven M. Yanni, Eugenia Roberts, Eve Large, Doug Waegel, and Adelaide Grace in their individual capacities, by and through their agents and employees, were each negligent and reckless, in their acts and omissions, in one or more of the following ways:

a)    Failing to properly investigate and respond to obvious signs of physical abuse, sexual abuse, starvation, and torture of Malinda Hoagland to the appropriate agencies and authorities;

b)    Failing to adequately and timely interview and speak with Malinda Hoagland, in response to reports and obvious signs of abuse, to inquire whether Malinda Hoagland was the subject of any physical, sexual, or psychological abuse at home;

c)    Failure to adequately communicate internally regarding Malinda Hoagland's signs and symptoms of physical abuse, sexual abuse, malnourishment, and starvation;

d)    Failure to notify law enforcement regarding Malinda Hoagland's physical abuse,

sexual abuse, malnourishment, and starvation and the received reports of abuse;

e)      Failure to enact appropriate policies and procedures with respect to investigating and reporting child abuse;

f)      Failure to properly and timely respond to, intervene, and deal with Malinda Hoagland's absences and truancy;

g)      Failure to employ adequate interview techniques with Rendell Hoagland and Cindy Warren, with appropriate privacy and sensitivity, in order to elicit the full extent of abuse sustained by Malinda Hoagland, including physical abuse, sexual abuse, neglect, psychological abuse, and starvation;

h)      Failure to adequately and properly train their employees regarding the proper means and methods of investigating and responding to signs and symptoms of child abuse;

i)      Deliberately releasing Malinda into a home where these defendants knew that Malinda Hoagland was the subject of physical abuse, sexual abuse, neglect, psychological abuse, and starvation;

j)      Failing to properly and adequately communicate with and interact with Rendell Hoagland and Cindy Warren regarding Malinda Hoagland;

k)      Deliberately releasing Malinda Hoagland into a home where defendants knew she lived with Cindy Warren who was a convicted child abuser with no legal rights to live with Malinda Hoagland;

l)      Failing to remove Malinda Hoagland from the home of Rendell Hoagland and Cindy Warren.

141.    As a direct and proximate result and cause of the negligent and reckless acts and omissions of these defendants, Plaintiffs suffered the injuries and damages set forth in this Complaint, and Malinda Hoagland suffered the injuries and damages set forth in this Complaint.

142.    At all times material hereto, the defendants' agents and employees involved directly in the negligent and reckless acts and omissions averred throughout this Complaint were acting within the course and scope of their employment and/or agency relationship with defendants, over whom these defendants had control and right of control.

143.    These defendants' negligent and reckless acts and omissions caused the Plaintiffs' injuries and damages and the injuries and damages of Malinda Hoagland, including but not limited

32

to, subjecting Malinda Hoagland to being a victim and creating an environment where Malinda Hoagland was a victim of criminal trafficking in violation of 18 Pa. C.S. § 3011(b).

144.    Malinda Hoagland was subject to sexual servitude because, as a direct result of the negligent acts and omissions of these defendants, sex acts were performed by Rendell Hoagland and Cindy Warren that were induced or obtained from Malinda Hoagland, who was a minor at the time of these sex acts.

145.    These sex acts included forcing Malinda to strip naked, filming Malinda while naked, chaining Malinda to furniture in the bedroom while naked, filming Malinda chained to furniture naked, and rubbing lotion and/or Vaseline all over Malinda's body while naked or partially naked and were performed and undertaken for the purpose of gratifying the sexual desire of Rendell Hoagland and Cindy Warren.

146.    These defendants' negligent and reckless acts and omissions caused the Plaintiffs' injuries and damages and the injuries and damages of Malinda Hoagland, including but not limited to, subjecting Malinda Hoagland to being a victim and creating an environment where Malinda Hoagland was a victim of criminal involuntary servitude in violation of 18 Pa. C.S. § 3012.

147.    As a direct result and cause of these defendants' negligent and reckless acts or omissions, Rendell Hoagland and Cindy Warren knowingly subjected Malinda Hoagland to labor servitude and sexual servitude that was not permissible under federal or state law.

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.

## FIRST CAUSE OF ACTION – WRONGFUL DEATH
### Plaintiffs v. All Defendants

148.    The preceding paragraphs are incorporated by reference as if fully set forth herein.

33

149.    Plaintiffs bring this action under and by virtue of the Wrongful Death Act, 42 Pa.

C.S. § 8301, and the applicable Rules of Civil Procedure and decisional law.

150.    Under Pennsylvania's Wrongful Death Act, Plaintiff's Decedent, Malinda

Hoagland, left surviving adult individuals who may be entitled to recover damages, including

Plaintiffs, Emily Lee (sister), Jamie Hoagland (sister), Abbey Hoagland (sister), and Rondalyn

Smith (mother).

151.    As a cause and result of the wrongful conduct, constitutional violations, unlawful

conduct, negligence, and recklessness of the Defendants set forth throughout this Complaint,

Plaintiff's Decedent, Malinda Hoagland, was caused serious and grave injuries including death,

resulting in an entitlement to damages under the Wrongful Death Act.

152.    Plaintiffs, as the Co-Administrators of the Estate of Malinda Hoagland, Deceased,

claim the full measure of damages recoverable under the Wrongful Death Act.

153.    Rendell Hoagland, Malinda Hoagland's biological father, is legally prohibited from

recovering any damages, property, money, or relief in this action pursuant to Pennsylvania's

Slayer's Act, 20 Pa. C.S. §§ 8801 *et seq.*

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and

severally, including punitive damages, for sums in excess of $75,000, exclusive of interest,

prejudgment interest and costs.

<u>**SECOND CAUSE OF ACTION– SURVIVAL ACTION**</u>
**Plaintiffs v. All Defendants**

154.    The preceding paragraphs of this Complaint are incorporated as though fully set

forth therein.

155.    Plaintiffs bring this Survival Action on behalf of the Estate of Malinda Hoagland,

Deceased, under and by virtue of the Pennsylvania Survival Act, 42 Pa. C.S. § 8302, and the

applicable Rules of Civil Procedure and decisional law.

156.    As a cause and result of the wrongful conduct, constitutional violations, unlawful conduct, negligence, and recklessness of the Defendants set forth throughout this Complaint, Plaintiff's Decedent, Malinda Hoagland, was caused serious and grave injuries including death, resulting in an entitlement to damages under the Survival Act.

157.    On behalf of the Survival Act beneficiaries, plaintiffs claim all damages available under the Survival Act, including but not limited to all economic damages and non-economic damages.

158.    Rendell Hoagland, Malinda Hoagland's biological father, is legally prohibited from recovering any damages, property, money, or relief in this action pursuant to Pennsylvania's Slayer's Act, 20 Pa. C.S. §§ 8801 *et seq.*

**WHEREFORE**, Plaintiffs demand judgment against Defendants individually, jointly and severally, including punitive damages, for sums in excess of $75,000, exclusive of interest, prejudgment interest and costs.


Respectfully submitted,

**BOSWORTH DEANGELO, LLC**

Thomas E. Bosworth, Esq.
Terrance R. DeAngelo, Esq.
Benjamin J. Phelps, Esq.
123 S. Broad Street, Suite 1100
Philadelphia, PA 19109
(267) 928-4183
tom@bosworthdeangelo.com
terry@bosworthdeangelo.com
benjamin@bosworthdeangelo.com

Dated: 06/16/2025

**<u>VERIFICATION</u>**

I, Benjamin J. Phelps, Esq., attorney for the plaintiffs herein, verify that the facts set forth in the foregoing amended complaint are true and correct to the best of my knowledge, information, and belief.

_____
Thomas E. Bosworth, Esq.
Terrance R. DeAngelo, Esq.
Benjamin J. Phelps, Esq.
123 S. Broad Street, Suite 1100
Philadelphia, PA 19109
(267) 928-4183
tom@bosworthdeangelo.com
terry@bosworthdeangelo.com
benjamin@bosworthdeangelo.com

Dated: 06/16/2025