**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EMILY LEE, JAMIE HOAGLAND, and :
ABBEY HOAGLAND, Individually and :
as Co-Administrators of the ESTATE OF : CIVIL ACTION
MALINDA HOAGLAND, :
                            : Docket No. 2:24-cv-4180
                Plaintiffs, :
                            :
      v. :
                            :
COUNTY OF CHESTER, et al., :
                            :
               Defendants. :

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**COUNTY OF CHESTER, EVE LARGE, AND DOUG WAEGEL'S**
**MOTION FOR A PROTECTIVE ORDER**

Defendants, County of Chester, Eve Large, and Doug Waegel (collectively, "the Chester County Defendants"), by and through their undersigned counsel, MacMain Leinhauser PC, submit this Memorandum of Law in support of their Motion for a Protective Order pursuant to Federal Rule of Civil Procedure 26(b)(1) and (c). This memorandum particularly addresses consideration of the Third Circuit analysis set forth in *Pansy v. Borough of Stroudsburg* with respect to the balancing of interests involved with a request for confidentiality.

**I.**     **SUMMARY OF FACTS RELEVANT TO CHESTER COUNTY DEFENDANTS**

This case arises from the tragic death of Malinda Hoagland ("Malinda") who died at the age of 12 on May 4, 2024 as a result of physical abuse inflicted upon her by her biological father, Rendell Hoagland ("Hoagland") and his girlfriend, Cindy Warren ("Warren"), who lived with Malinda in Chester County.

Following this Honorable Court's Memorandum and corresponding Order (ECF 87 and 88) relating to the Defendants' Motions to Dismiss, Plaintiffs' sole remaining substantive claim

against all Chester County Defendants is for negligence in connection with their alleged failure to prevent further abuse by Rendell Hoagland and Cindy Warren.

Specifically with respect to the Chester County Defendants, the Second Amended Complaint alleges that on June 1, 2023 and November 7, 2023, CCCYF received separate referrals regarding Malinda's well-being ("General Protective Services" or "GPS" referrals) from mandated reporters through the Commonwealth of Pennsylvania's ChildLine system. (ECF 65, ¶ 62, ¶ 74). In response to each of these referrals, CCCYF staff first interviewed by telephone the mandated reporter, and thereafter interviewed the subjects of the reports, Hoagland and Warren, regarding the details of the referrals; in both instances they concluded that Malinda was not at risk and no further investigation or protective services were indicated. (ECF 65, ¶¶ 64-66, ¶¶ 78-79, ¶ 83).

Six (6) months after the second referral to CCCYF, and with no further referrals to CCCYF, Malinda died from injuries inflicted by her abusers, Hoagland and Warren, who are now awaiting trial on charges of Murder in the First Degree and other criminal offenses.

Relevant evidence in this case involves, among other things, confidential reports created by CCCYF in connection with its investigation of the two referrals from ChildLine. This case also involves the criminal investigation the reports for which the Defendants do not possess but can only assume include graphic portrayals of the abuse by Hoagland and Warren who are awaiting a criminal trial.

Pennsylvania law restricts the information that may be released related to reporting of child abuse. *See* Pennsylvania Child Protective Services Law, 23 Pa.C.S. § 6301*, et seq.* ("CPSL"). Pennsylvania law also restricts the reporting of information concerning criminal

records and investigations related to unresolved criminal matters. *See* Criminal History Record Information Act 18 P.S. §9101, *et seq.* ("CHIRA").

The Chester County Defendants submit that Plaintiffs do not have a right to obtain the confidential reports of their investigations conducted in response to the two GPS referrals from Childline. However, should the Court order disclosure of these confidential materials to Plaintiffs, in recognition of the balancing of interests under *Pansy* it should further order that Plaintiffs and their counsel are prohibited from disclosing such reports and their contents to persons or entities (including the public press) which are not authorized recipients of confidential reports under the CPSL. *See Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3d Cir. 1994). *Pansy* identifies that a public interest in disclosure exists and must be balanced with the private interest in confidentiality when information that would be available under a state freedom of information law is sought to be made confidential by protective order. *Id.* Because all information sought in this case would not be accessible under the Pennsylvania Right to Know law, and the Chester County Defendants have an interest in confidentiality that is supported by state law privilege, the *Pansy* balancing strongly favors issuing a protective order.

Lastly, under no circumstances should Plaintiffs be permitted to obtain the identity of the mandated reporters involved in the two referrals from ChildLine.

II.    __STATEMENT OF QUESTIONS INVOLVED__

A.    Should a protective order be entered limiting Plaintiffs' discovery of confidential reports of Chester County Children, Youth and Families' investigations concerning allegations of abuse and/or neglect of Malinda Hoagland to protect from public disclosure all information specified by Pennsylvania Child Protective Services Law, 23 Pa.C.S. § 6339?

*Suggested Answer: Yes.*

### III.    **LEGAL STANDARD**

####    A.    **Standard of Review**

Fed. R. Civ. P. 26(b)(1), states in part, "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any *nonprivileged* matter that is relevant to any party's claim or defense…" (Emphasis added)

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. The court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. *Stevens v. Sullum*, 2022 WL 4122195 (M.D. Pa 2022), citing *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983).

When determining privilege with respect to claims arising under state law, state law for privilege applies, and when determining privilege for claims arising out of both state and federal law, federal law applies. *See Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) (Discussing application of Rule 501 of Federal Rules of Evidence).  The Chester County Defendants respectfully contend that because Plaintiffs' only remaining claim is pursuant to state law, this Honorable Court should recognize and apply the state law privilege under the CPSL.

In this case, Malinda's sisters, in their capacity as the Administrators of Malinda's Estate and as a successor to Malinda's interests, allege that they are entitled to obtain copies of otherwise confidential records created and maintained by the Chester County Defendants. The CPSL, 23 Pa. C.S. §6340(b) allows the release of some information to the "subject" of a report who makes a written request. However, as discussed herein, whether the child as to whom the investigative reports relate (Malinda) or her Estate (Plaintiffs) are the "subject" of the reports pursuant to §6340(b) is a matter of unsettled state law.  Clearly, Hoagland and Warren are the "subjects."  But, the Plaintiffs (Estate) are not expressly among those whom the Chester County Defendants are statutorily permitted to disclose such reports under §6340(b).

Even if the child or Estate are regarded as the subject of the reports, and permitted access to these reports, the reports must not be released to persons or entities who are otherwise not permitted access under the CPSL, including the public and press. Furthermore, if the reports are produced to Plaintiffs, at a minimum they must be redacted to protect the identity of the mandated reporter because "the release of data by the department, county, institution, school, facility or agency or designated agent of the person in charge that would identify the person who made a report of suspected child abuse or who cooperated in a subsequent investigation is prohibited." 23 Pa.C.S. §6340(c).

*Pansy* instructs that when issuing an order under Fed. R. Civ. P. 26(c) the court must balance the interests asserted by the parties including privacy interests and any public interest in disclosure if it is present. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994). "It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection." *Id.* at 787. *Pansy* did not assess any public interest in confidentiality as no state law right to confidentiality was at issue in that case.

*Pansy* provides that a public interest in disclosure exists and is strong "where it is likely that information is accessible under a relevant freedom of information law." *Id*. at 791.

Pennsylvania does not have a freedom of information law, but its Right to Know Law is a close analogue. This law has several exceptions for public records. *See* 65 P.S. § 67.708. The Chester County Defendants' proposed protective order falls into the exceptions of "(16) A record of an agency relating to or resulting in a criminal investigation" and "(17) A record of an agency relating to a noncriminal investigation" among other provisions. *See* 65 P.S. § 67.708(b)(16) and (17). This explicitly includes:

(i) Complaints submitted to an agency.

(ii) Investigative materials, notes, correspondence and reports.

(iii) A record that includes the identity of a confidential source, including individuals subject to the act of December 12, 1986 (P.L. 1559, No. 169), known as the Whistleblower Law.

(iv) A record that includes information made confidential by law.

65 P.S. § 67.708(b)(17)

*Pansy* was concerned with Federal Courts freely giving protective orders which would frustrate duly adopted Freedom of Information Laws at both the state and federal level. *Pansy,* at 791. Courts can give conditional protective orders which allow disclosure subject to state law. *Id.*

As for records relating to the criminal investigation and prosecution of Malinda's alleged perpetrators, the Criminal History Information Records Act, 91 Pa. C.S. § 9101 et seq. ("CHIRA") severely limits the investigative information which may be disclosed by a criminal justice agency. A criminal justice agency includes "municipal police departments." *See* § 9102. Significant limits are placed not only on the disclosure of criminal history but also investigative information which includes "Information assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing." *See* § 9102. § 9158 prescribes the process by which investigative information is disclosed, requiring certain requests for dissemination to be denied. One such reason for denial is if it "adversely affects an investigation or ongoing prosecution." *See* § 9158(a)(1)(ii).  The Chester County Defendants anticipate that the Chester County District Attorney will object to the disclosure of its investigative files given the pendency of its pending criminal prosecution of Rendell Hoagland and Cindy Warren for Murder in the First Degree.

**Rule 26(c) Permits the Entry of a Protective Order for Good Cause Shown.**

Federal Rule of Civil Procedure 26(c) allows protective orders to be issued "for good cause shown." "Good cause means that disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (Internal citations omitted)

Federal cases where the court found there was *not* a Federal Privilege, still have found protective orders to be an appropriate way to protect important interests. *See Pearson v. Miller*, 211 F.3d 57, 69 (3d Cir. 2000) (Appropriate mechanism to protect interests is protective order); *Roe W.M. v. Devereux Found.*, 2023 U.S. Dist. LEXIS 21896 *11 (E.D. Pa. 2023) (Confidentiality interest can be protected by a confidentiality agreement and/or protective order); and *Piazza v. Young*, 2021 U.S. Dist. LEXIS 103134 (M.D. Pa. 2021) (Rejecting existence of Federal privilege under CHRIA but issuing protective order for filing of confidential documents under seal).

Prior to trial, the public has no right of access to discovery materials. *Dougherty v. Heller*, 635 Pa. 507, 544 (2016).

IV.    **ARGUMENT**

A.    **Plaintiffs Do Not Have a Clear Right to Obtain Chester County's Reports of Investigations Because Those Documents Are Privileged Under the Confidentiality Requirements of the CPSL, 23 Pa.C.S. § 6339**

The Chester County Defendants possess written reports of their investigations into allegations concerning Malinda's general welfare and potential suspected child abuse or neglect which were created as the result of two GPS (General Protective Services) ChildLine referrals received by CCCYF from confidential mandated reporters at Malinda's schools in June and

November of 2023. These documents have been generally identified in the Chester County

Defendants' Rule 26 Initial Disclosures.

These written reports of investigations conducted upon receipt of the two GPS referrals

from ChildLine are confidential pursuant to the following terms of § 6339 of the CSPL:

**§ 6339. Confidentiality of reports.**

Except as otherwise provided in this subchapter or by the Pennsylvania Rules of Juvenile
Court Procedure, **reports made pursuant to this chapter, including, but not limited to,
report summaries of child abuse and reports made pursuant to section 6313
(relating to reporting procedure) as well as any other information obtained, reports
written or photographs or X-rays taken concerning alleged instances of child abuse
in the possession of the department or a county agency shall be confidential.**
(emphasis added)

Confidential reports may only be made available to specified persons or agencies in

accordance with §6340, which addresses the potential release of information in confidential

reports:

**§ 6340. Release of information in confidential reports.**

**(a) General rule.--**Reports specified in section 6339 (relating to confidentiality of
reports) shall only be made available to:

(1) An authorized official of a county agency, of a Federal agency that has a need for
such information to carry out its responsibilities under law to protect children from abuse
and neglect or of an agency of another state that performs protective services analogous
to those services performed by county agencies or the department in the course of the
official's duties, multidisciplinary team members assigned to the case and duly authorized
persons providing services pursuant to section 6370(a) (relating to voluntary or court-
ordered services; findings of child abuse).

(2) A physician examining or treating a child or the director or a person specifically
designated in writing by the director of any hospital or other medical institution where a
child is being treated when the physician or the director or the designee of the director
suspects the child of being an abused child or a child alleged to be in need of protection
under this chapter.

(3) A guardian ad litem or court designated advocate for the child.

(4) An authorized official or agent of the department in accordance with department regulations or in accordance with the conduct of a performance audit as authorized by section 6343 (relating to investigating performance of county agency).

(5) A court of competent jurisdiction, including a magisterial district judge, a judge of the Philadelphia Municipal Court and a judge of the Pittsburgh Magistrates Court, pursuant to court order or subpoena in a criminal matter involving a charge of child abuse under section 6303(b) (relating to definitions). Disclosure through testimony shall be subject to the restrictions of subsection (c).

(5.1) A court of common pleas in connection with any matter involving custody of a child as set forth in sections 5328 (relating to factors to consider when awarding custody) and 5329.1 (relating to consideration of child abuse and involvement with protective services) or temporary guardianship of a child under Chapter 56 (relating to standby and temporary guardianship).

(6) A standing committee of the General Assembly, as specified in section 6384 (relating to legislative oversight).

(7) The Attorney General.

(8) Federal auditors if required for Federal financial participation in funding of agencies except that Federal auditors may not remove identifiable reports or copies thereof from the department or county agencies.

(9) Law enforcement officials of any jurisdiction, as long as the information is relevant in the course of investigating cases of:

> (i) Homicide or other criminal offense set forth in section 6344(c) (relating to employees having contact with children; adoptive and foster parents), sexual abuse or exploitation, bodily injury or serious bodily injury caused by a perpetrator or nonperpetrator.

> (ii) Child abuse other than that identified under subparagraph (i) by a nonperpetrator.

> (iii) Repeated physical injury to a child under circumstances which indicate that the child's health, safety or welfare is harmed or threatened.

> (iv) A missing child report.

> (v) Severe forms of trafficking in persons or sex trafficking, as those terms are defined under section 103 of the Trafficking Victims Protection Act of 2000 (114 Stat. 1466, 22 U.S.C. § 7102).

(10) The district attorney's office or other law enforcement official, as set forth in county protocols for multidisciplinary investigative teams required in section 6365(c) (relating to services for prevention, investigation and treatment of child abuse), shall receive, immediately after the county agency has ensured the safety of the child, reports of abuse according to regulations, from the department or county agency in which the initial report of suspected child abuse or initial inquiry into the report gives evidence that the abuse is:

    (i) a criminal offense set forth under section 6344.3 (relating to grounds for denying employment or participation in program, activity or service), not including an offense under 18 Pa.C.S. § 4304 (relating to endangering welfare of children) or an equivalent crime under Federal law or law of another state; or

    (ii) child abuse under section 6334.1 (relating to responsibility for investigation).

(11) Designated county officials, in reviewing the competence of the county agency or its employees pursuant to this chapter. Officials under this paragraph are limited to the following:

    (i) The board of commissioners in counties other than counties of the first class.

    (ii) Mayor in a city of the first class under the act of April 21, 1949 (P.L.665, No.155), known as the First Class City Home Rule Act.

    (iii) An individual serving as a county chief executive as designated by a county home rule charter or optional plan form of government pursuant to the act of April 13, 1972 (P.L.184, No.62), known as the Home Rule Charter and Optional Plans Law.

(12) A mandated reporter of suspected child abuse under section 6311 (relating to persons required to report suspected child abuse) who made a report of abuse involving the subject child shall be limited to the following:

    (i) Whether the child abuse report is indicated, founded or unfounded.

    (ii) Any services provided, arranged for or to be provided by the county agency to protect the child.

(13) School administrators and child-care service employers, as provided under this paragraph. The following shall apply:

    (i) If the alleged perpetrator is a school employee or child-care service employee, school administrators and child-care service employers shall receive notice of a pending allegation and the final status of the report following the investigation as to whether the report is indicated, founded or unfounded.

(ii) Information disclosed pursuant to this paragraph shall be provided to the school administrator or child-care service employer within ten days of the completion of the investigation.

(iii) If the perpetrator is a school employee, the notice of the final status of the report shall be sent to the Department of Education within ten days of the completion of the investigation.

(14) A prospective adoptive parent, approved by an adoption agency, when considering adopting an abused child in the custody of a county agency. The county agency having custody of the child and the adoption agency shall determine the scope and detail of information which must be provided so that the prospective parent may make an informed decision to adopt.

(15) Appropriate officials of another county or state regarding an investigation related to child abuse or protective services when a family has moved to that county or state. Reports under this paragraph shall include general protective service reports and related information. Reports and information under this paragraph shall be provided within seven calendar days. The department shall promulgate regulations as necessary to carry out the purposes of this paragraph.

(16) Members of citizen review panels convened pursuant to section 6343.1 (relating to citizen review panels), provided that such members shall not disclose to any person or government official any identifying information about any specific child protective services case with respect to which the panel is provided information.

(17) A member of a child fatality or near fatality review team under section 6365(d).

(18) The Department of the Auditor General in conjunction with the performances of the duties designated to the Office of Auditor General, except that the Auditor General may not remove identifiable reports or copies thereof from the department or county agency.

Despite these numerous exceptions to the general rule of confidentiality, children who are the subject of ChildLine referrals for suspected abuse or neglect, or their legal representatives such as Plaintiffs here, are not specified in the statute as persons or entities to whom confidential records may be disclosed as a matter of course.

Plaintiffs contend that they are entitled to receive copies of the confidential reports because §6340(b) of the CPSL provides that "a subject of a report" may receive a copy of any report filed pursuant to section 6313 (relating to reporting procedure). Plaintiffs contend they

qualify as a "subject of a report."  The Chester County Defendants do not agree that they or

Malinda are the "subject of a report."

The Section 6303 of the CPSL, Definitions, defines the "Subject of a report" as follows:

**"Subject of the report."** Any child, parent, guardian or other person responsible for the welfare of a child or any alleged or actual perpetrator in a report made to the department or a county agency under this chapter.

Section 6303 defines "Person responsible for the child's welfare" as:

**"Person responsible for the child's welfare."** A person who provides permanent or temporary care, supervision, mental health diagnosis or treatment, training or control of a child in lieu of parental care, supervision and control.

In this case, the words "responsible for the welfare of a child" necessarily define the

words which precede them, "any child, guardian or other person."  The person(s) responsible for

Malinda's welfare, the persons being investigated for potential abuse or neglect of Malinda

(namely Rendell Hoagland and Cindy Warren) are the "subjects of the report."  Plaintiffs contend

that Malinda or her sisters as the Administrators of her Estate are the "subjects of the reports" at

issue because Malinda was a "child" under the above-referenced definition.  The Chester County

Defendants disagree with this interpretation of the grammar used in the statute.

This Honorable Court should recognize the important public policy objective of

protecting the information contained in these records from disclosure by excluding from

discovery the CCCYF reports of its investigations of the two Childline GPS referrals which are

privileged or otherwise confidential under §6339 as was outlined in *V.B.T. v. Family Services of*

*Western Pennsylvania,* 705 A.2d 1325, 1336 (Pa. Super. 1998).  Such confidential reports may

only be disclosed to those with a need to know in the conduct of investigations, criminal

prosecutions and the provision of medical and social services to children experiencing abuse.

The Pennsylvania Superior Court discussed these significant public policy considerations in *V.B.T.* as follows:

> The confidentiality provisions of the CPSL have several clear functions in light of the statute's broad purposes: to encourage reporting of abuse by ensuring that persons with knowledge of abuse are not deterred from reporting it by the prospect of the abuser learning their identity and seeking retribution; to facilitate the investigation of abuse by assuring potential witnesses that the information they provide to investigators will not be made public; to facilitate the rehabilitation and treatment of abused children and their families by encouraging open, frank communications with agency personnel and treatment providers; to encourage the effective operation of the child protective service by enabling it to keep complete and comprehensive files on all aspects of a family's circumstances without fear that information placed in such files will be subject to scrutiny by persons not involved in the process of rehabilitating the family; and to prevent the innocent victims of abuse from also becoming victims of public stigma by guarding information about the intimate details of their lives from the prying eyes of outsiders.

*V.B.T., supra* at 1335-36 (Held that where no constitutional claims were present and Plaintiffs were not facing potential incarceration if they did not prevail, the privileges of CPSL and other laws outweighed interest of Plaintiffs and protective order was wrongfully denied.)

The Superior Court concluded that the reports sought by plaintiffs in the *VBT* case were not subject to disclosure as summarized by the following conclusion:

> The type of disclosure advocated by these plaintiffs, in contrast, is not aimed at helping the abused child or the abusive family, nor is it intended to facilitate criminal prosecution of the abuser. Rather, it is geared towards vindicating the injuries suffered by the plaintiffs and their daughter. While these interests are important, our legislature has made the judgment that attempting to remedy the serious problem of child abuse in our society and to protect and rehabilitate the powerless victims of such abuse is of superior importance. We thus must conclude that discovery by the plaintiffs of materials protected by the Child Protective Services Law, which is neither authorized by the provisions of the **CPSL** itself nor in furtherance of its goals, may not be permitted.

Conversely, the Commonwealth Court of Pennsylvania more recently held in *Fetterman v. Westmoreland County Children's Bureau* that the administrator of the estate of a deceased child was entitled to obtain copies of reports of county child abuse investigations because the decedent whom the administrator represented qualified as a "subject" of the report. *Fetterman,*

13

336 A.3d 277 *; 2025 Pa. Commw. LEXIS 79 **; 2025 LX 96926; 2025 WL 1213672. In so

holding, the *Fetterman* court cited the same public policy considerations quoted above from the

Superior Court decision in *V.B.T.* but came to the opposite conclusion and denied a protective

order.  Instead, it held that the defendant agency "should not be able to rely upon the

confidentiality provisions meant to protect the minor child and his family and use those

provisions for purposes of protecting itself against potential liability."

*Pansy* emphasizes the importance of Federal Courts respecting state law determinations

about the public interest in determining whether to grant a protective order. Here, unlike in

*Pansy,* Pennsylvania law does not through a right to know or freedom of information request put

a thumb on the scale for public disclosure. It is not "likely that information is accessible under a

relevant freedom of information law." *Pansy*, at 791.  Rather, Pennsylvania has, through the

CPSL, created a strong interest in the confidentiality of investigations of suspected child abuse

and especially in the identity of reporters of suspected child abuse. Pennsylvania recognized the

importance of this confidentiality when carving out exceptions in its right to know law in 65 P.S.

§ 67.708(b)(17) that cover the CPSL. Both *Pansy* and the principles behind it support this court

issuing an appropriate protective order in this case given the strong confidentiality interests of

Chester County Defendants and the public embodied in the CPSL.

### If This Court Should Order Production of the Confidential Reports, It Should Direct That Such Reports Shall Not Be Disclosed to Persons Other Than Plaintiffs and Their Counsel.

The Chester County Defendants respectfully submit that this Court is not bound by either

*VBT* or *Fetterman*, given that they come from two intermediate appellate courts in Pennsylvania

and do not represent decisions from the Commonwealth's highest court.  Nevertheless, the

Chester County Defendants contend that the public policy considerations embodied in both lines

14

of cases urge that while a child or its legal successor may be entitled to receive copies of confidential reports, if this Court should deny this Motion for Protective Order it should still order that only those persons specifically authorized to receive confidential reports by §6340(b) should be granted access to those reports. This means that the general public should not be granted access to the confidential reports simply because the Plaintiffs may be granted access.

In a recent case with Plaintiffs' Counsel involving other parties, the Philadelphia Court of Common Pleas found information was of a sufficiently sensitive nature, and concerns about disclosure by Plaintiff a sufficient concern, to issue a confidentiality order proposed by Chester Count Defendants' Counsel which limited disclosure of Confidential Information and Highly Confidential Information to individuals necessary for the continued prosecution of the litigation. *See* February 21, 2025 Confidentiality Order entered in case captioned *Amanda Suranofsky v. Lehigh Valley Health Network, Inc. et al,* in Philadelphia Court of Common Pleas, January Term, 2024, Case No. 240102894 attached hereto as Exhibit "A".

Moreover, to the degree that the court balances the interest of Plaintiffs in having certain documents to litigate their case, this interest can still be served while limiting the ability of Plaintiffs to disclose that information beyond the parties in this case. "The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information." *Pansy, at* 787.

### The Identity of the Mandated Reporters Must be Protected in Any Case.

Moreover, even in those instances where the CPSL permits disclosure of confidential reports, it specifically prohibits under any circumstances the disclosure of the identity of the mandated reporter who made the report to Childline which precipitated the investigation by the

county CYF agency.  23 Pa. C.S. §6340(c) of the CPSL absolutely prohibits the disclosure of information contained in reports of suspected child abuse or neglect or that could identify persons who made a report of child abuse or neglect or who cooperated in an investigation into possible child abuse or neglect. Plaintiffs' Second Amended Complaint makes particular allegations relating to alleged reports of child abuse making the confidentiality provisions of §6340(c) of the CPSL directly relevant. Allowing this confidentiality encourages reporting of suspected child abuse or neglect and facilitates cooperation with investigations into such allegations. This serves the important public interest of protecting children against abuse or neglect.

Should This Honorable Court order that the Chester County Defendants must disclose the confidential reports to Plaintiffs, at a minimum, it should direct the Chester County Defendants to redact any and all information that would identify the mandated reporters.

### **The Court Should Prohibit Plaintiffs Access to the Statewide Database.**

For similar reasons of public policy, as set forth in 23 Pa. C.S. §6335, the Chester County Defendants are prohibited from disclosing information contained in the Statewide database to which its own confidential records necessarily may refer, except to authorized employees of the department conducting required investigations or other express exceptions:

**(d) Authorized releases for governmental functions.--**No person, other than an employee of the department in the course of official duties in connection with the responsibilities of the department under this chapter, shall have access to any information in the Statewide database except as provided under this section and the following:

(1) Section 6334 (relating to disposition of complaints received).

(2) Section 6340 (relating to release of information in confidential reports).

(3) Section 6342 (relating to studies of data in records).

(4) Section 6343 (relating to investigating performance of county agency).

(5) Section 6343.1 (relating to citizen review panels).

(6) Section 6347 (relating to reports to Governor and General Assembly).

For this reason, Plaintiffs should not be granted access to the Pennsylvania statewide database.

**B.    This Court's Discovery Order Should Allow Certain Criminal Records Discovery To Be Conducted Subject to a Confidentiality Agreement**

Similarly, 91 Pa.C.S. § 9101 et seq. of CHIRA severely limits what investigative information may be disclosed by Chester County.[1] While § 9158 normally allows for dissemination of information when a proper request is made pursuant to civil litigation, §9158.3(a)(1)(ii) allows a County law enforcement agency to withhold this information if its dissemination "adversely affects an investigation or ongoing prosecution." Here, there is an upcoming criminal prosecution that disclosure by Chester County Defendants could adversely affect. The District Attorney, which is not a party to this proceeding, should be afforded the opportunity to submit its position if the Court is inclined to rule on the CHIRA issue.


**V.    CONCLUSION**

For the reasons set forth above, the Chester County Defendants respectfully request that this Honorable Court grant their Motion for a Protective Order and enter an order substantially in the form submitted herewith.

---

[1] 91 Pa.C.S. § 9101 et seq. applies to Chester County as Chester County as a whole includes "municipal police departments" which do not have a separate legal existence.

Respectfully submitted,

**MacMAIN LEINHAUSER PC**

Dated: <u>September 1, 2025</u>     By:   <u>*/s/ Stephen G. Rhoads*</u>
David J. MacMain
Stephen G. Rhoads
Matthew T Strosser
PA ID Nos. 59320 / 47458 / 336410
433 W. Market Street, Suite 200
West Chester, PA 19382
dmacmain@macmainlaw.com
srhoads@macmainlaw.com
mstrosser@macmainlaw.com
484-318-7106
*Attorney for Defendants, County of Chester,*
*Eve Large, and Doug Waegel*

# EXHIBIT A



AMANDA SURANOFSKY, Individually
and as Parent and Natural Guardian of J.R., a
minor, Aa.C., a minor, Y.C., a minor, Ar.C.,
a minor, and L.C. a minor,

                        Plaintiff,

    v.

LEHIGH VALLEY HEALTH NETWORK, INC.,
et al.

                        Defendants.

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

JANUARY TERM, 2025 2024
Case No. 240102894

## ORDER

AND NOW, this 21 day of ___FeB.___, 2025 upon consideration of the

Motion for Entry of Confidentiality Order filed by Lehigh Valley Health Network, Inc., Lehigh

Valley Health, Inc., Lehigh Valley Health Network Accountable Care Organization, Lehigh Valley

Hospital, Inc., Lehigh Valley Reilly Children's Hospital, Lehigh Valley Physician Group,

Specialty Physicians of LVHN, P.C., Lehigh Valley Physician-Hospital Organization, Inc., Debra

D. Esernio-Jenssen, M.D. and Ruchita Doshi, D.O. (collectively, the "LVHN Defendants"), and

any response thereto, it is hereby **ORDERED** and **DECREED** that the LVHN Defendants'

Motion is **GRANTED** and the parties shall be required to comply with the Confidentiality Order

attached to the Motion as Exhibit A.

BY THE COURT:

_____ J.

Discovery Deadline: August 4, 2025

ORDER-Suranofsky Etal Vs Esernio-Jensen, M.D. Etal [NAS]



24010289400220

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b) P. DIVON 02/21/2025

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626



Filed and Attested by the
Office of Judicial Records
16 JAN 2025 03:13 pm
SWEENEY

# EXHIBIT A

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

| | |
|---|---|
| AMANDA SURANOFSKY, Individually and as Parent and Natural Guardian of J.R., minor, Aa.C., a minor, Y.C., a minor, Ar.C., a minor, and L.C. a minor, <br><br> Plaintiff, <br><br> v. <br><br> LEHIGH VALLEY HEALTH NETWORK, INC., et al. <br><br> Defendants. | COURT OF COMMON PLEAS PHILADELPHIA COUNTY <br><br> JANUARY TERM, 2024 NO.: 240102894 |

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") is made with consent and agreement of

Plaintiff and Defendants (collectively, the "Parties" and each a "Party") governing the disclosure

and protection of confidential/proprietary business information and protected health information

that is being or will be provided pursuant to ongoing litigation and dispute negotiations in the

matter of *Amanda Suranofsky, Individually and as Parent and Natural Guardian of Minors J.R,*

*Aa.C., Y.C., Ar.C., and L.C. v. Lehigh Valley Health Network, Inc,, et al.,* Philadelphia Court of

Common Pleas, No. 240102894, including without limitation any aspect of the matter that is

transferred to another court, any related litigation between these parties, and any appeals of the

matter. (the "Litigation"). The Parties, through their respective counsel, agree that the terms and

conditions of this Agreement shall govern the production and handling of all documents, items, or

other information exchanged by the Parties in the Litigation including, without limitation,

responses to requests for production, interrogatories, requests for admissions, pleadings, motions,

exhibits, and deposition or other testimony, regardless of the medium or manner in which any such

materials are generated, stored, or maintained. This includes any material produced, filed, or

served by any Party in this Litigation, or any information included in any such material. In order

to maintain and preserve the confidentiality of certain documents and/or information that may be provided in connection with the Litigation, the Parties agree that:

1.    **Persons/Entities Covered.**  This Agreement shall govern the Parties to this Litigation, including their respective corporate parents, subsidiaries, affiliates, successors, or assigns and their respective counsel, agents, representatives, officers, and employees. This Agreement does not limit any Party's rights with respect to their own documents, information, and materials that they produce in discovery in this Litigation.

2.    **Scope/Purpose.**  This Agreement shall govern the use and dissemination of all information, documents or materials that are provided by the Parties and designated as "Confidential" or "Highly Confidential."

3.    **Designation of Materials.**  Any Party responding to discovery requests or providing materials in connection with this Litigation ("Producing Party"), or any Party that has an articulable confidentiality interest in the produced material choosing to designate materials produced by any Party or non-party ("Designating Party"), may designate all, or any part, of a document, discovery response, deposition, or other material as Confidential Material (defined below) based on a good-faith belief that such materials qualify for that designation under the terms of this Agreement:

a)    The term "Confidential Material," as used in this Agreement, shall mean (a) protected health information, including but not limited to certain medical records and communications about patients; (b) any document, material, information, testimony, or tangible thing produced during discovery that reveals a trade secret, confidential research, analysis, development, competitively sensitive technical, marketing, valuations or sales information, or commercial, financial, or business information that is commercially sensitive or proprietary, and

2

has not been released into the public domain (unless through unauthorized disclosure), including but not limited to hospital policies and procedures; (c) personal identifying information, information or personally sensitive information, including but not limited to personnel files and/or credentialing files and/or employment records, as well as personal information that is protected from disclosure by statute, regulation, or is otherwise entitled to protection from public disclosure; (d) any other information for which a good faith claim of need of protection can be made under the Pennsylvania Rules of Civil Procedure and/or applicable law; (e) information required by agreement to be kept confidential; (f) any communications that disclose Confidential Information.

b)      The term "Highly Confidential Material." As used in this Agreement, shall mean any Confidential Material that is so proprietary or competitively sensitive that, if disclosed, is likely to cause significant competitive or commercial harm. By way of example only, Highly Confidential Material may include: trade secrets, highly sensitive financial information and communications that disclose any Highly Confidential Material.

c)      Confidential Material and Highly Confidential Material shall include: (i) all copies, extracts, and complete or partial summaries prepared from such Confidential or Highly Confidential Material; (ii) portions of deposition transcripts and exhibits thereto that contain or summarize the content of any such Confidential Material or Highly Confidential Material; (iii) portions of briefs, memoranda, or any other writings filed with the Court and exhibits thereto that contain or summarize the content of any such Confidential Material or Highly Confidential Material; (iv) written discovery responses and answers that contain or summarize the content of any such Confidential Material or Highly Confidential Material; and (v) deposition testimony designated in accordance with Paragraph 3(e) below. Nothing in this Agreement shall preclude or limit a Party's or their counsel's ability to summarize or characterize the nature of the Confidential

3

Material or Highly Confidential Material disclosed in discovery to persons involved in the supervision of this Litigation who are not otherwise authorized to receive Confidential Material or Highly Confidential Material, provided the specific contents of the Confidential Material or Highly Confidential Material are not disclosed through such summaries or characterizations.

        d)    Any document produced by a Producing Party or designated by a Designating Party in this Litigation may be designated as Confidential Material by marking it with a legend that in substances states **"CONFIDENTIAL"** on the face of each page that is so designated. Any document produced by a Producing Party or designated by a Designating Party in this Litigation may be designated as Highly Confidential Material by marking it with a legend that in substances states **"HIGHLY CONFIDENTIAL"** on the face of each page that is so designated. A Producing Party or Designating Party may also designate electronic documents, including electronically stored information and data produced in native form, and other non-paper media as Confidential Material or Highly Confidential Material, as appropriate, by: (i) noting such designating in an accompanying cover letter; (ii) affixing the confidentiality designation to the material or its container, including the appropriate confidentiality designation in the load file provided with the electronic production; (iii) including the appropriate confidentiality designating in the name of the file(s) provided with the electronic production; or (iv) using any other means that reasonably notifies the receiving party of the designation.

        e)    Testimony provided in this Litigation may be designated as Confidential Material or as Highly Confidential Material if the testimony would reveal a Party's Confidential Material or Highly Confidential Material. The Party desiring to designate any portion of testimony as Confidential Material or Highly Confidential Material shall do so by so stating orally on the record on the day that the testimony is being given. Following any such oral designation, the

4

portions of the testimony designated as Confidential Material or Highly Confidential Material shall be taken only in the presence of persons entitled to access such information under this Agreement. A Party may designate any or all portions of a transcript and/or video of any deposition or hearing (or of any other testimony) as containing Confidential Material or Highly Confidential Material in accordance with this Agreement by notifying all other Parties in writing within twenty (20) days of the Party's receipt of the final transcript that the transcript contains Confidential Material or Highly Confidential Material and designating the specific pages and/or lines as containing Confidential Material or Highly Confidential Material. All transcripts and/or videos of testimony in this Litigation shall be treated as Confidential Material and subject to this Agreement until twenty (20) days after a final transcript of the deposition (or other testimony) is received by the Parties. Any portion of the testimony that is not designated as Confidential Material or Highly Confidential Material in accordance with this Paragraph within twenty (20) days after a final transcript and/or video of the testimony is received by the Parties shall not be entitled to the protections afforded Confidential Material or Highly Confidential Material under this Agreement, except upon a showing of good cause.

f) Notwithstanding any of the foregoing, information shall be deemed non-confidential material under this Agreement if it is in the public domain, is already known to a Party through proper means and on a non-confidential basis, is or becomes available to a party from a source rightfully in possession of such information on a non-confidential basis, or becomes declassified under the Agreement.

4. **Individuals to Whom Confidential Material May Be Disclosed**. Unless ordered by the Court or permitted in writing by the Producing Party or the Designating Party, Confidential Material may only be disclosed to:

a)      The Parties to this Litigation;

b)      The current and former accountants, agents, attorneys, directors, employees, members, offices, owners, partners, principals, and representatives of the Parties to this Litigation who shall be bound by this Agreement;

c)      The Court and court personnel, including assistants, clerks, deputies, law clerks, and other support staff (this category hereinafter collectively referred to as the "Court");

d)      Attorneys for a Party and their employed or retained secretaries, paralegals, legal assistants (this category hereinafter referred to as "Attorneys"), and support services (including copy services, jury consultants, document management services, graphics services, and similar professional services (this category of support services hereinafter referred to as "Support Services") retained by or for a Party;

e)      Court reporters, court videographers, and similar transcription services and their support staff providing services in court or at depositions for the purpose of assisting the Court in this Litigation (this category hereinafter referred to as "Court Reporters");

f)      Any expert or consultant (including all non-party personnel and support staff assisting such expert or consultant, but not the entity itself by which such expert or consultant and assisting personnel are employed) who is retained by or for the benefit of, or otherwise consulting with, any of the Parties in this Litigation to assist counsel in this Litigation (this category hereinafter referred to as "Experts"), if the expert or consultant signs Exhibit A. A copy of the executed Exhibit A shall be provided to counsel of record for all Parties who shall have ten days to object to the disclosure. After the passage of the ten-day period, if no objections are received, the expert or consultant who executed Exhibit A may receive the Confidential Material;

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

g)      Any mediators, arbitrators, discovery masters, or judge pro tem engaged by the Parties or appointed by the Court, and their support staff (this category hereinafter referred to as "Mediators");

h)      Any person whom clearly authored, sent, or previously received the Confidential Material;

i)      Any person who has been designated as a corporate representative witness by the Producing Party or Designating Party who shall be bound by this Agreement; and

j)      Any person other than those listed in this section for whom a Party requests permission to disclose Confidential Material must sign Exhibit A and the Party must provide the other Parties with an opportunity to object.

5.      **<u>Individuals to Whom Highly Confidential Material May Be Disclosed</u>**.  Unless ordered by the Court or permitted in writing by the Producing Party or the Designating Party, Highly Confidential Material may only be disclosed to:

a)      The Court;

b)      Attorneys for the Parties to this Litigation;

c)      In house counsel for the Parties to this Litigation;

d)      Court Reporters;

Experts, provided that they have executed the agreement annexed hereto as Exhibit A.  A copy of the executed Exhibit A shall be provided to counsel of record for all Parties who shall have ten days to object to the disclosure.  After the passage of the ten-day period, if no objections are received, the expert or consultant who executed Exhibit A may receive the Highly Confidential Material;

e)      Mediators;

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

f)    Any person who has been designated as a Rule 30(b)(6) witness by the Producing Party;

g)    Witnesses in this Litigation; provided, however, that such disclosure shall only be made to a Witness:

(i)    who is a current employee, officer, director, partner, member, or principal of the Producing Party and who has or had an authorized right of access to the material in the ordinary course of that employment;

(ii)    who is a former employee, officer, director, partner, member, or principal of the Producing Party and who had an authorized right of access to the material in the ordinary course of that employment at the time the Highly Confidential material was created or exchanged; or

(iii)    who is an author, addressee, or recipient of the material in question or if there are other indicia that the witness has seen the document previously during the court of his or her affiliation with the Producing Party; and

k)    Any person other than those listed in this section for whom a Party requests permission to disclose Confidential Material must sign Exhibit A and the Party must provide the other Parties with an opportunity to object.

6.    **Handling of Confidential Material and Highly Confidential Material.**  All material designated as Confidential or Highly Confidential shall remain in the possession of the Attorneys who receive such material throughout discovery in this Litigation, and they shall not release or disclose the nature, substance, or contents thereof, except that copies of such materials may be made for the use of those assisting the Attorneys to whom disclosure may be made under Paragraphs 4 and 5 above, including Experts, and copies of such materials may be submitted to

8

the Court under seal as necessary. Anyone who receives Confidential Material is prohibited from releasing or providing Confidential Material, or summaries thereof, to the press or on social media, whether directly or indirectly or through third parties. To the extent that Attorneys for any party disclose Confidential Material or Highly Confidential Material, as contemplated in Paragraphs 4 and 5 above, the Party shall obtain from that person a fully executed copy of the agreement annexed hereto as Exhibit A as required, and shall ensure that the person complies with the requirements contained therein, including but not limited to the destruction of Confidential and Highly Confidential Material upon the completion of the person's assigned duties, as required by Paragraph 5 of Exhibit A.

7.     **Inadvertent Failure to Designate as to Confidentiality.** Except as to the extent as provided in Paragraph 3(e), in the event that a Producing Party or Designating Party fails to designate material as Confidential or Highly Confidential, the Party in receipt of that material shall, upon a written request from the Producing Party or the Designating Party, treat and preserve such information, document, paper, material, or other thing in accordance with the confidentiality designating that the Producing Party or Designating Party states should have been affixed to it. Where a Producing Party issues such written request, the Producing Party shall re-produce the information, document, paper, or thing with the new confidentiality designation unless doing so would not be feasible (as, for example, in the case of a final deposition transcript). Each Party shall replace the previously designated materials with the newly designated materials, destroy the previously designated materials, and treat the materials in accord with their new designation. Where a Designating Party issues such written request, the Parties shall affix a designation to the materials that is sufficient to identify them as Confidential or Highly Confidential, as appropriate, and shall treat the materials in accord with their new designation. Except as provided in Paragraph

9

3(e), the inadvertent failure of a Party to designate material as Confidential or Highly Confidential at the time of production shall not be deemed a waiver of the protections afforded by this Agreement, either as to specific information in the material or as to any other information relating thereto or on the same or related subject matter. No Party shall be deemed to have violated this Agreement if, prior to notification of any later designation, such material has been disclosed or used in a manner inconsistent with the later designation. If material inadvertently not designated as Confidential or Highly Confidential was filed with a court on the public record or otherwise disclosed before the time of the material's later designation, then the Producing Party or the Designating Party shall be responsible for seeking appropriate relief, including return of the material

8.    **Challenging a Confidentiality Designation.**

a)    A Party shall not be obligated to challenge the propriety of a Confidential or Highly Confidential designation at the time the designation is made. A Party may challenge a confidentiality designation at any time, and a Party's failure to have made such a challenge at any previous time, including after acceptance or receipt of material with a confidentiality designation, shall not be deemed a waiver of the Party's right to challenge any confidentiality designation.

b)    A Party seeking to challenge a Confidential or Highly Confidential designation (the "Challenging Party") shall give notice in writing of such challenge to counsel for the Producing Party or the Designating Party, specifying Bates numbers or otherwise identifying the materials at issue and setting forth the basis for the Challenging Party's challenge.

c)    Within seven (7) days of receipt of written notice that the Challenging Party objects to the confidentiality designation, counsel for the Producing Party or the Designating Party shall meet and confer with counsel for the Challenging Party to attempt to resolve the challenge.

10

d)    If the Challenging Party and Producing Party or Designating Party are unable to resolve the challenge, then the Challenging Party may move the Court for an order removing the challenged material from the restrictions under this Agreement. Any papers filed in support of or in opposition to this motion shall, to the extent necessary, be filed pursuant to Paragraph 9 below of this Agreement. The Producing Party or Designating Party bears the burden of proof on the issue of the propriety of the challenged confidentiality designation.

e)    Until the parties or the Court resolves a challenge to the designation of Confidential Material or Highly Confidential Material, the asserted designation shall remain in effect.

9.    **Filing Confidential Material and Highly Confidential Material.** If a Party intends to file any document designated Confidential or Highly Confidential, the Party shall file such document under seal. Absent written permission from the Producing Party, the Designating Party, or a Court Order, a Party may not file any Confidential Material or Highly Confidential Material, or information derived from such into the public record.

10.    **Use of Confidential Material and Highly Confidential Material.**

a)    Each Party shall only use materials produced in discovery in this Litigation, including but not limited to all materials designated Confidential and Highly Confidential, in furtherance of the prosecution, defense, or attempted settlement of this Litigation, and shall not use such materials at any time for any other purpose whatsoever, including, without limitation, any commercial or business purpose, and such materials shall not be disclosed to or made accessible to any person except as specifically permitted by this Agreement. All materials designated as Confidential or Highly Confidential must be stored and maintained by the Parties in a secure

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

manner that is no less secure than a Party would store and maintain its own confidential material, or, for Attorneys, that of its clients.

b)    This Agreement shall not restrict any attorney who is a qualified recipient under the terms of this Agreement from rendering advice to his or her client that is a Party with respect to these actions, and in the course thereof, from generally relying upon his or her examination of Confidential and/or Highly Confidential Material. In rendering such advice or in otherwise communicating with the client, the attorney shall not disclose directly or indirectly the specific content of any Confidential and/or Highly Confidential Material of another Party where such disclosure would not otherwise be permitted under the terms of this Agreement.

c)    If any Confidential Material or Highly Confidential Material is filed in the public record by the Producing Party or the Designating Party, such public filing shall constitute the Producing Party's or the Designating Party's waiver of the designation of the publicly filed material for its use by any Party in this Litigation; provided, however, that inadvertent disclosure of Confidential Material or Highly Confidential Material through a public filing shall not constitute a waiver if the inadvertent disclosure is corrected within three (3) business days by withdrawing the public filing containing Confidential Material or Highly Confidential Material, and the filing is replaced with a filing under seal pursuant to Paragraph 9. However, such public filing will not constitute a waiver of any confidentiality designations made with respect to any non-publicly filed portions of the publicly filed document or concerning any other material not actually publicly filed.

d)    Nothing in this Agreement shall be construed to prejudice any Party's right to use Confidential Material or Highly Confidential Material in any hearing or other pre-trial proceeding before the Court, or any Party's right to challenge any such use. If a Party intends to use Confidential and/or Highly Confidential Material in any hearing or other pre-trial proceeding

12

before the Court, it should alert the Court and the Producing Party or Designating Party in advance of the anticipated use so that appropriate protections can be put in place. For the avoidance of doubt, this subsection shall not apply to Court filings, and the Parties will comply with all requirements as they relate to materials to be filed under seal.

e)      Further procedures for handling of Confidential Material and Highly Confidential Material at trial shall be addressed in a final pretrial order. The Parties shall meet and confer to negotiate a proposal for Court approval addressing the treatment of material previously designated as Confidential or Highly Confidential before the entry of final pretrial order.

11.    **Other Proceedings.** Any person or Party subject to this Agreement who receives a subpoena or other request for production of information covered by this Agreement shall promptly notify the Producing Party or the Designating Party so that the Producing Party or the Designating Party may have an opportunity to appear and be heard on whether the information sought should be disclosed. Confidential Material and Highly Confidential Material shall not be produced in any other proceeding, or for any use other than in this Litigation, without an order compelling producing from a court of competent jurisdiction or the agreement of the Producing Party or the Designating Party.

12.    **Unauthorized Disclosure of Confidential or Highly Confidential Material.** If any person subject to this Agreement becomes aware that he or she or any other person has, either intentionally or inadvertently, disclosed Confidential Material or Highly Confidential Material to someone not authorized to receive such material under this Agreement, they shall (i) immediately inform counsel for the Producing Party or Designating Party whose Confidential Material or Highly Confidential Material has been disclosed of all known relevant information concerning the

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

nature and circumstances of the disclosure and (ii) use his or her best efforts to obtain the return or destruction of all improperly disseminated copies of such materials (including hardcopies and electronic versions) and to prevent any further improper dissemination of the same. Each Party shall cooperate in good faith in efforts to ensure that no further or greater unauthorized disclosure or use of such material is made and to retrieve any material improperly disclosed.

13.    **Inadvertent Disclosure of Privileged Documents and Clawback Protocol.** If information subject to a claim of attorney-client privilege, work product immunity/privilege, common interest privilege, joint defense privilege, community-of-interest privilege, or any other applicable privilege or immunity (collectively, "Privilege") is produced inadvertently, the following clawback protocol shall apply:

a)    Upon learning of producing any information that a Producing Party believes is subject to a claim of Privilege, the Producing Party shall immediately notify in writing any Party such Privilege information of the claimed Privilege, the basis for it, and the produced documents (by Bates number or otherwise with particularity) for which it applies (the "Notification"). After being so notified, if any other Party contests the Producing Party's claim of Privilege, the Producing Party and the contesting Party must within seven (7) days from the receipt of any Notification meet and confer and work in good faith to resolve the dispute. If the Parties cannot resolve the dispute over the claim of Privilege within the 7-day period, the Producing Party shall promptly file a motion with the Court with the subject information under seal for a determination of the claim of Privilege.

b)    If a Party discovers or believes a Producing Party has inadvertently produced a document that is protected by Privilege, that Party shall cease any further review of the document and shall give the Producing Party immediate notice of the discovery, identifying by

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

Bates number, or otherwise with particularity, the document so discovered. If after receiving such notice, the Producing Party does not respond within five (5) days from the receipt of that notice, then any privilege over such document shall be deemed waived. Any such waiver shall not be deemed to extend to any other document, communication, material, or thing whether dealing with the same subject matter or a different matter. After being noticed of such inadvertent production of a document, communication, material, or thing that is suspected to be privileged, the Parties must, within ten (10) days from notification, meet and confer and work in good faith to resolve any dispute over a claim of Privilege. If the Parties cannot resolve the dispute within the 10-day period, the Producing Party shall file a motion with the Court with the subject information under seal for a determination of the claim of Privilege.

c)      During the pendency of the 10 day period set forth in this Paragraph 13 and the Court's determination of any disputed claim of Privilege, any Party receiving or in possession of such Privilege document, communication, information, material, or thing must sequester the document, communication, information, material, or thing in dispute, cease any further review of it, and must not use or disclose the document, communication, information, material, or thing, or create additional copies of any such document, communication, information, material, or thing except to the extent the copies are made for the sole purpose of presentation to the Court under seal for a determination of the claim of Privilege, in accordance with the procedures set forth herein.

d)      If there is no dispute concerning the Privilege at issue, or if the Court rules in favor of the Producing Party in the event of a dispute, then unless otherwise ordered by the Court, the other Parties who do not hold the privilege, must promptly return or destroy, or in the case of electronically stored information, delete the document, information, communication,

material, or thing and any reasonably accessible copies it has, and provide a written confirmation to the Producing Party that it will cease further review, dissemination, and use of the document, communication, information, material, or thing and that it and all copies thereof have been returned or destroyed.

14.    **Non-parties.**

a)    If information sought in a discovery request implicates a Producing Party's obligation to a non-party not to disclose such information, the following procedures shall be followed:

(i)    The Producing Party shall timely serve a written objection to the production of such information on the basis of its obligation to a non-party not to disclose the information.

(ii)    The Producing Party shall provide the non-party witness notice of the pending request and a copy of this Agreement.

(iii)    Unless the non-party objects to the disclosure and either the non-party or Producing Party seeks a protective order or other appropriate relief from the Court within fifteen (15) days from which the written notice of the pending request was sent by the Producing Party or such additional time as may be required by the Producing Party's obligation to the non-party, the Producing Party shall produce the materials subject to any appropriate designations under the terms of this Agreement.

(iv)    Should the non-party or Producing Party seek a protective order or other appropriate relief from the Court, no disclosure shall be made or required unless disclosure is ordered by the Court.

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

(v)     Nothing contained in this Agreement shall be deemed to prohibit, hinder, or otherwise effect any Party's or non-party's right or ability to raise any objections on any basis to requests for discovery of non-party information.

b)     Notwithstanding the foregoing, if a Producing Party determines that it is unable to comply with the procedures set forth in Paragraph 14(a), it will notify the Party seeking the discovery at issue and meet and confer to determine an alternative procedure.

c)     If any subpoenas or discovery requests are served on a non-party, the Party serving the subpoena or discovery request shall provide the non-party with notice of this Agreement.

15.    **Further Application.**

a)     Any summary, compilation, notes, copy, electronic image or database containing Confidential Material or Highly Confidential Material shall be subject to the terms of this Agreement to the same extent as the Confidential Material or Highly Confidential Material from which such summary, compilation, notes, copy, electronic image or database is made or derived.

b)     This Agreement shall remain in effect if this Litigation is transferred to another forum besides the Philadelphia Court of Common Pleas.

16.    **Reservation of Rights.**

a)     Nothing in this Agreement shall preclude any Party from applying to the Court for additional or different protective provisions if the need should arise during the Litigation.

b)     As the litigation progresses and the categories and types of documents that may be produced in the course of the litigation evolve, nothing in this Agreement shall prevent any Party from seeking to amend this Agreement by agreement or application to the Court.

17

c)     Nothing in this Agreement shall affect the Producing Party's right to object to discovery on any grounds.

d)     Nothing in this Agreement shall be deemed a waiver of the Producing Party's right to oppose production or admissibility of any information or documents on any ground, including without limitation, lack of timeliness of the request, lack of relevance, lack of materiality, as a privileged communication, or as work product of counsel.

e)     Nothing in this Agreement shall be deemed to prohibit, hinder, or otherwise affect any Party's right or ability to raise any objections on any basis to requests for discovery or to make objections to the admission of Confidential Material or Highly Confidential Material not based on confidentiality during the course of this Litigation or at trial. By designating any material as Confidential or Highly Confidential, the Parties do not acknowledge that any such material is relevant or admissible in this Litigation.

f)     Nothing in this Agreement shall be deemed to require any Producing Party to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from the Court in connection with obligations imposed by a discovery request.

g)     Nothing in this Agreement shall prohibit a Party from using or disclosing publicly available or independently discovered information, unless the Party is aware that the information has become publicly improperly or inadvertently.

h)     Nothing in this Agreement shall be deemed to restrict in any manner the use by the Producing Party of any information in his own documents and materials.

17.    **Modification.** The Parties may amend, modify, or supplement this Agreement at any time, but such amendment, modification, or supplement must be in a fully executed writing.

18.    **Conclusion of This Litigation.**

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

a)    The provisions of this Agreement will not terminate at the conclusion of this Litigation. This Agreement shall remain in full force and effect unless modified, superseded, or terminated by executed written agreement of the Parties or by a court order.

b)    Within ninety (90) days after such time as a Party's involvement in this Litigation is concluded, whether by final adjudication on the merits from which there remains no appeal by right or by other means, that Party and its counsel shall undertake commercially reasonable efforts (i) to return all Confidential Material and Highly Confidential Material to the Producing Party or Designating Party; or (ii) to destroy all Confidential Material and Highly Confidential Material (including but not limited to copies in the possession or control of any Attorney, Expert, Support Services, or employee) and certify in writing to the Producing Party or the Designating Party that all such material has been returned or destroyed. As to those materials that contain, reflect, incorporate, attach, or reference attorney work product, counsel of record for the Parties shall be entitled, without violating this Agreement, to retain such work product in their files, so long as the terms of this Agreement will continue to govern any such retained materials. The Parties acknowledge that the electronic nature of the documents produced in this dispute makes full and absolute compliance with this provision difficult. The Parties further acknowledge that their duty to return or destroy all Confidential Material and Highly Confidential Material is a continuing duty and the Parties agree to return or destroy any such information found in the future outside the aforementioned ninety (90) day period.

c)   Notwithstanding any other provision of this Agreement, the Party's counsel shall be entitled to retain pleadings, affidavits, declarations, motions, briefs, expert reports (and exhibits thereto), correspondence (including internal correspondence and e-mail), any other papers filed with the Court (including exhibits), deposition transcripts (including exhibits), hearing transcripts

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

(including exhibits), any other transcripts, and the trial record (including exhibits), even if such materials contain Confidential Material or Highly Confidential Material, so long as this Agreement will continue to govern any such retained materials. The Party's reasonable efforts shall not require the destruction of materials that (i) are stored on backup storage media made in accordance with regular data backup procedures for disaster recovery purposes; (ii) are located in the email archive system or archived electronic files of departed employees; (iii) are subject to litigation hold obligations; or (iv) are otherwise required by law to be retained. Backup storage media need not be restored for the purpose of returning or certifying destruction of materials, but any such materials retained in backup storage media shall continue to be treated in accordance with this Agreement.

19.    **Termination of Access.**

a)    In the event any person, including any Attorney or Expert, or Party permanently ceases to be engaged in the conduct of the Litigation, such person's or Party's access to Confidential Material and Highly Confidential Material shall be terminated, and all copies thereof shall be destroyed in accordance with the terms of Paragraph 18 above, except that such return or destruction shall take place as soon as practicable after such person or Party ceases to be engaged in the conduct of this Litigation, but in any event, before ninety (90) days.

b)    The provisions of this Agreement shall remain in full force and effect as to any person or Party who previously had access to Confidential Material and Highly Confidential Material, except as may be specifically ordered by the Court or consented to by the Producing Party or the Designating Party.

The foregoing Agreement is hereby agreed to by:

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

**BLANK ROME LLP**

Date:_____     By:*/s/ Lauren E. O'Donnell*_____
                                   Daniel E. Rhynhart, Esquire
                                   PA Bar I.D. No. 78248
                                   Lauren E. O'Donnell, Esquire
                                   PA Bar I.D. No. 306890
                                   Charles A. Fitzpatrick, III, Esquire
                                   PA Bar I.D. 309113
                                   Justina L. Byers, Esquire
                                   PA Bar I.D. No. 76773
                                   One Logan Square, 130 N. 18th Street
                                   Philadelphia, PA 19103-6998
                                   Tel.: (215) 569-5500
                                   Fax: (215) 569-5555

                                   *Attorneys for Defendants Lehigh Valley Health
                                   Network Inc., Lehigh Valley Health Inc., Lehigh
                                   Valley Health Network Accountable Care
                                   Organization, Lehigh Valley Hospital Inc., Lehigh
                                   Valley Reilly Children's Hospital, Lehigh Valley
                                   Physician Group, Specialty Physicians of LVHN,
                                   P.C., Lehigh Valley Physician-Hospital
                                   Organization, Inc., Debra D. Esernio-Jenssen,
                                   M.D., and Ruchita Doshi, D.O.*

**BOSWORTH LAW**

Date:_____     By:_____
                                   Thomas E. Bosworth, Esquire
                                   Attorney ID No.:
                                   123 S. Broad Street, Suite 1100
                                   Philadelphia, PA 19109
                                   *Attorneys for Plaintiff*

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

**O'BRIEN & RYAN LLP**

Date:_____    By:_____
                                                  Anthony P. Demichele, Esq.
                                                  Marshall L. Schwartz, Esq.

Anthony P. Demichele, Esq.
Marshall L. Schwartz, Esq.
Steven F. Reilly, Esq.
Paul E. Peel, Esq.
Heather J. Hulit, Esq.
Suite 300 Hickory Pointe
2250 Hickory Road
Plymouth Meeting, PA  19462
*Attorneys for Defendants, Thomas Jefferson*
*University Hospitals, Inc., Thomas Jefferson*
*University, TJUH System, Jefferson Health*
*System, Inc. and Jefferson Health*

**MACMAIN LEINHAUSER PC**

Date:_____    By:_____

David J. Macmain, Esq.
Tricia M. Ambrose, Esq.
433 W. Market St., Ste. 200
West Chester, PA  19382
*Attorneys for Defendants Northampton County*
*and Northampton County Children & Youth*
*Services*

**MARSHALL DENNEHEY**

Date:_____    By:_____

Paul F. Laughlin, Esq.
Kevin M. Majernik, Esq.
620 Freedom Business Ctr., Suite 405
King of Prussia, PA  19406
*Attorneys for Defendants, Kidspeace National*
*Centers, Inc. and Kidspeace Corporation*

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

## EXHIBIT A

## AGREEMENT TO BE BOUND BY CONFIDENTIALY AGREEMENT

I, _____, am employed by: _____.

I acknowledge and certify as follows:

1.      I have read the Confidentially Agreement in in the matter of *Kimberly Steltz, et al. v. Debra D. Esenio-Jenssen, MD, et al.,* Philadelphia Court of Common Pleas, No. 231102741 (the "Litigation") and agree to be bound by its terms.

2.      I will not make copies or notes of Confidential Material or Highly Confidential Material that I receive in this Litigation except as necessary to enable me to render assistance in connection with this Litigation.

3.      I will not disclose Confidential Material or Highly Confidential Material that I receive in this Litigation to any person not expressly entitled to receive it under the terms of the Confidentiality Agreement and will retain any Confidential Material or Highly Confidential Material that I receive in this Litigation in a safe and secure place.

4.      I will not use Confidential Material or Highly Confidential Material that I receive in this Litigation for any purpose other than that authorized by the Confidentiality Agreement.

5.      I will retain all Confidential Material or Highly Confidential Material that I receive in this Litigation in my custody until I have completed my assigned duties, whereupon they will be returned or destroyed, as provided by the Confidentiality Agreement. Such destruction shall not relieve me from any of the continuing obligations imposed upon me by the Confidentiality Agreement.

*[signature page to follow]*

23

Date: _____    Signature: _____

Address: _____

_____

Certification Due Date: 01/23/2025
Response Date: 01/30/2025
Case ID: 240102894
Control No.: 25013626

## <u>CERTIFICATE OF SERVICE</u>

I, Lauren E. O'Donnell, Esquire, hereby certify that on _____, 2024, I caused a true and correct copy of the foregoing Confidentiality Agreement to be served on all counsel of record via the Court's electronic filing system.


*/s/ Lauren E. O'Donnell*
Lauren E. O'Donnell

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen G. Rhoads, Esquire, hereby certify that on this 1st day of September, 2025, a copy of the foregoing *Brief in Support of Motion for a Protective Order* filed electronically and is available for viewing and downloading from the ECF system of the United States District Court for the Eastern District of Pennsylvania. The following parties received notification of this via ECF notification:

Thomas Bosworth, Esq.
Terrance R. DeAngelo, Esq.
Benjamin J. Phelps, Esq.
Bosworth DeAngelo, LLC
123 S. Broad Street, Suite 1100
Philadelphia, PA 19109
*Attorney for Plaintiffs*

Joseph J. Santarone, Esq.
Joshua W. Brownlie, Esq.
Marshall Dennehey
2000 Market Street, Suite 2300
Philadelphia, PA 19103
*Attorneys for Upper Dubin School District Defendants*

Gerard J. Geiger, Esq.
Newman Williams, P.C.
712 Monroe Street
P.O. Box 511
Stroudsburg, PA 18360-0511
*Attorney for Monroe County Defendants*

Brian R. Elias, Esq.
Wisler Pearlstine, LLP
Blue Bell Executive Campus
460 Norristown Road, Suite 110
Blue Bell, PA 19422
*Attorney for Coatesville School District Defendants*

**MacMAIN LEINHAUSER PC**

By:    */s/ Stephen G. Rhoads*
       Stephen G. Rhoads
       PA Attorney I.D. No. 47458
       433 W. Market Street, Suite 200
       West Chester, PA 19382
       dmacmain@macmainlaw.com
       484-318-7106
       *Attorney for Defendants, County of Chester,*
       *Eve Large, and Doug Waegel*