## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EMILY LEE, JAMIE HOAGLAND, ABBEY HOAGLAND, as Co-Administrators of the Estate of Malinda Hoagland,** | : | |
| **Plaintiffs,** | : | **Civil Action No. 2:24-cv-04180** |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF CHESTER, COUNTY OF MONROE, ADELAIDE GRACE, EVE LARGE, and DOUG WAEGEL** | : | |
| **Defendants.** | : | |

## ORDER

AND NOW, this ____ day of _____, 2025, upon consideration of Non-party Chester County District Attorney's Office's Motion to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and for Entry of Protective Order, it is hereby ORDERED that the relief requested therein is GRANTED and the subpoena served on the Chester County District Attorney's Office on November 26, 2025 is hereby QUASHED. After balancing the respective interests of the Parties, it is FURTHER ORDERED that the request for entry of protective order is hereby GRANTED and discovery of the Chester County District Attorney's Office investigative files pertaining to the prosecution of the criminal capital cases *Commonwealth v. Rendell A. Hoagland*, CP-15-CR-0002704-2024 and *Commonwealth v. Cindy Marie Warren*, CP-15-CR-0002702-2024 is hereby STAYED until the conclusion of the criminal trial in aforementioned criminal capital cases.

**BY THE COURT:**


_____
MARK A. KEARNEY, J.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMILY LEE, JAMIE HOAGLAND, ABBEY HOAGLAND, as Co-Administrators of the Estate of Malinda Hoagland,** : | |
| Plaintiffs, : | **Civil Action No. 2:24-cv-04180** |
| : | |
| **v.** : | |
| : | |
| **COUNTY OF CHESTER, COUNTY OF MONROE, ADELAIDE GRACE, EVE LARGE, and DOUG WAEGEL** : | |
| Defendants. : | |
| : | |

## CHESTER COUNTY DISTRICT ATTORNEY'S OFFICE'S MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION AND FOR ENTRY OF PROTECTIVE ORDER

Non-party Chester County District Attorney's Office (hereinafter "DAO"), respectfully submits this Motion to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and for Entry of Protective Order pursuant to Federal Rules of Civil Procedure 45(d)(3)(A) and 26(c)(1). As set forth in more detail in the accompanying Memorandum of Law, the Subpoena requests documents that are protected from disclosure pursuant to the Pennsylvania Criminal History Record Information Act, 18 Pa.C.S. §§ 9101, *et seq*. (hereinafter "CHRIA"). Therefore, the DAO is prohibited from complying with the Subpoena. Furthermore, the Subpoena places an undue burden on the DAO because releasing the DAO records prior to the conclusion of the underlying criminal capital trial is likely to severely interfere with the prosecution of the criminal matters and the right to a fair trial of the criminal defendants. The Subpoena cannot be adequately modified nor can a protective order limiting

dissemination of subpoenaed records adequately protect against the release of protected information under CHRIA or this undue burden due to the risk of inadvertent disclosure. Therefore, the subpoena must be quashed until the conclusion of the underlying criminal trials in the criminal capital cases Commonwealth v. Rendell A. Hoagland, CP-15-CR-0002704-2024 and Commonwealth v. Cindy Marie Warren, CP-15-CR-0002702-2024, and a protective order must be entered staying discovery of the Chester County District Attorney's Office investigative files pertaining to the prosecution of these criminal capital cases. Additionally, the Subpoena should be quashed as it relates to requested records in the DAO's possession that are protected by the Child Protective Services Law, 23 Pa.C.S. § 6301, *et seq.* The Subpoena must also be quashed as the scope of the subpoena is overly broad, the records sought are not relevant, and it does not allow reasonable time for the DAO to comply.

WHEREFORE, the DAO respectfully requests that this Court grant its Motion to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and for Entry of Protective Order.

DATED: December 5, 2025          By: _____

Faith Mattox-Baldini
Deputy Solicitor, County of Chester
313 W. Market St., Suite 6702
P.O. Box 2748
West Chester, PA  19381-0991
*Attorney for Non-Party Chester
County District Attorney's Office*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMILY LEE, JAMIE HOAGLAND, ABBEY HOAGLAND, as Co-Administrators of the Estate of Malinda Hoagland, | : : : : | |
| Plaintiffs, | : : | Civil Action No. 2:24-cv-04180 |
| v. | : : | |
| COUNTY OF CHESTER, COUNTY OF MONROE, ADELAIDE GRACE, EVE LARGE, and DOUG WAEGEL | : : : | |
| Defendants. | : : | |

**BRIEF IN SUPPORT OF CHESTER COUNTY DISTRICT ATTORNEY'S OFFICE'S MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION AND FOR ENTRY OF PROTECTIVE ORDER**

Non-party Chester County District Attorney's Office (hereinafter "DAO"), respectfully submits this Brief in support of its Motion to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action and for Entry of Protective Order.

**I.       BACKGROUND**

On November 26, 2025, the DAO was served with a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (hereinafter "Subpoena"). A true and correct copy of the Subpoena is attached hereto as Exhibit A. The Subpoena was issued by counsel for Plaintiffs. *Id.* The Subpoena seeks the following:

> 1.    All documents referring or relating to Malinda Hoagland, Rendell Hoagland, and/or Cindy Warren.

2.  All evidence you have gathered, viewed, or relied upon in any way in your prosecution of Rendell Hoagland for the murder of Malinda Hoagland.

3.  All evidence you have gathered, viewed, or relied upon in any way in your prosecution of Cindy Warren for the murder of Malinda Hoagland.

4.  All emails, letters, correspondence, or other written communications sent by you or anybody at your office to Chester County or any employee, officer, attorney or agent of Chester County, Chester County District Attorney's Office, and/or Chester County Office of Children, Youth and Families ("CYF").

5.  All emails, letters, correspondence, or other written communications received by you or anybody at your office from Chester County or any employee, officer, attorney or agent of Chester County, Chester County District Attorney's Office, and/or Chester County Department of Children, Youth and Families ("CYF").

6.  All emails, letters, correspondence, or other written communications received by you or anybody at your office to Monroe County or any employee, officer, attorney or agent of Monroe County, Monroe County District Attorney's Office, and/or Monroe County Department of Children, Youth and Families ("CYF").

7.  All emails, letters, correspondence, or other written communications received by you or anybody at your office from Monroe County or any employee, officer, attorney or agent of Monroe County, Monroe County District Attorney's Office, and/or Monroe County Department of Children, Youth and Families ("CYF").

8.  All reports, press releases, statements, or documents provided by you to the press or media referring or relating to Malinda Hoagland or the Malinda Hoagland case.

9.  All video footage obtained by you that depicts Malinda Hoagland either visually or via audio.

10. All photographs that you have ever obtained, reviewed, and/or relied upon in the Malinda Hoagland case.

11. All documents, video footage, and evidence referred to or relied upon in any and all criminal complaints, police criminal complaints, and affidavits of probable cause in the Malinda Hoagland criminal case.

12. All statements obtained by you from any witness related to the Malinda Hoagland case.

13. All expert reports obtained by you related to the Malinda Hoagland case.

14. All medical records of Malinda Hoagland that you have obtained, reviewed, and/or relied upon.

15. All emails, documents, letters, correspondence, or other written communications sent by you or anybody at your office to MacMain Leinhauser, P.C. or any employee, officer, attorney or agent of MacMain Leinhauser, P.C., including but not limited to David MacMain and/or Stephen Rhoads.

16. All emails, letters, documents, correspondence, or other written communications received by you or anybody at your office from MacMain Leinhauser, P.C. or any employee, officer, attorney, agent of MacMain Leinhauser, P.C., including but not limited to David MacMain and/or Stephen Rhoads.

17. All physical evidence you have ever obtained, reviewed, and/or relied upon in the Malinda Hoagland case.

*Id.*

Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(i), (iii), and (iv), the DAO asks this Honorable Court to quash the Subpoena for the reasons stated herein. as the requested "file and documents" constitute "other protected matter" as disclosure of said records is prohibited under the Pennsylvania Criminal History Record Information Act, 18 Pa.C.S. §§ 9101, *et seq*. (hereinafter "CHRIA"), as the subpoena places an undue burden on the DAO, as records requested are protected by the Child Protective Services Law, 23 Pa.C.S. § 6301, et seq. (hereinafter "CPSL"), as the scope of the Subpoena is overly broad, as the records sought are not relevant, and as the Subpoena does not allow reasonable time for the DAO to comply. The DAO further requests the Court enter a Protective Order pursuant to Fed. R. Civ. P. 26(c)(1) Order staying discovery of the Chester County District Attorney's Office investigative files pertaining to the prosecution of the criminal capital cases *Commonwealth v. Rendell A. Hoagland*, CP-15-CR-0002704-2024 and *Commonwealth v. Cindy Marie Warren*, CP-15-CR-0002702-2024 effective until the conclusion of the underlying criminal trials.

## II.    QUESTION PRESENTED

1. Should this Honorable Court Quash the Subpoena as the requested "file and documents" constitute "other protected material" under Fed. R. Civ. P. 45(d)(3)(A)(iii) and disclosure of said records is prohibited under CHRIA?

   Suggested Answer: Yes.

2. Should this Honorable Court Quash the Subpoena as it places an undue burden on the DAO because releasing the DAO records prior to the conclusion of the underlying criminal capital trial is likely to severely interfere with the prosecution of the criminal matters and the right to a fair trial of the criminal defendants?

   Suggested Answer: Yes.

3. Should this Honorable Court Quash the Subpoena as it relates to requested records in the DAO's possession that are protected by the Child Protective Services Law, 23 Pa.C.S. § 6301, et seq.?

   Suggested Answer: Yes.

4. Should this Honorable Court Quash the Subpoena as the scope of the Subpoena is overly broad, the records sought are not relevant, and the Subpoena does not allow reasonable time for the DAO to comply?

   Suggested Answer: Yes.

5. Should this Honorable Court Enter a Protective Order staying discovery of the Chester County District Attorney's Office investigative files pertaining to the prosecution of the criminal capital *cases Commonwealth v. Rendell A. Hoagland*, CP-15-CR-0002704-2024 and *Commonwealth v. Cindy Marie Warren*, CP-15-CR-0002702-2024 effective until the conclusion of the underlying criminal trials?

   Suggested Answer: Yes.

## III.    LEGAL ARGUMENT

### A.    <u>Motion to Quash</u>

Pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii), on a timely motion, the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; […] (iii) requires

disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

### i.    CHRIA Prohibits the Dissemination of the Requested Documents

CHRIA prohibits the dissemination of "[i]nvestigative and treatment information" to "[…] any department, agency or individual unless the department, agency or individual requesting the information is a criminal justice agency which requests the information in connection with its duties […]." 18 Pa.C.S. § 9106(c)(4).

A "criminal justice agency" is defined as

> Any court, including the minor judiciary, with criminal jurisdiction or any other governmental agency, or subunit thereof, created by statute or by the State or Federal constitutions, specifically authorized to perform as its principal function the administration of criminal justice, and which allocates a substantial portion of its annual budget to such function. Criminal justice agencies include, but are not limited to: organized State and municipal police departments, local detention facilities, county, regional and State correctional facilities, probation agencies, district or prosecuting attorneys, parole boards, pardon boards, the facilities and administrative offices of the Department of Public Welfare that provide care, guidance and control to adjudicated delinquents, and such agencies or subunits thereof, as are declared by the Attorney General to be criminal justice agencies as determined by a review of applicable statutes and the State and Federal Constitutions or both.

18 Pa.C.S. § 9102.

The DAO is a criminal justice agency as it is a law enforcement organization under the laws of the Commonwealth, charged with investigating and prosecuting crimes in Chester County, Pennsylvania. *See* Affidavit of First Assistant District Attorney Erin O'Brien, attached hereto as Exhibit B and incorporated by reference. This Subpoena was issued by Counsel for Plaintiffs in the instant, civil matter who are the Co-Administrators of Estate of Malinda Hoagland. *See* Exhibit A. Neither a civil attorney nor the Plaintiffs, private individuals

administering the estate of Malinda Hoagland, are a "criminal justice agency", as defined in CHRIA. Therefore, the DAO is prohibited from disseminating the requested documents to Plaintiffs as requested in the Subpoena.

   **a.  The DAO Cannot Disseminate its Investigative File and Documents as it Constitutes Investigative Information under CHRIA**

The Subpoena explicitly seeks records of the DAO's investigation in the cases of *Commonwealth v. Rendell A. Hoagland*, CP-15-CR-0002704-2024 and *Commonwealth v. Cindy Marie Warren*, CP-15-CR-0002702-2024. *See* Exhibit B at ¶14. The records sought comprise the District Attorney's Office's entire investigative file which contains police reports, text messages, interview video footage, videos and still images depicting the child victim shackled to furniture, enduring physical abuse, and being subjected to forced stress positions and physical punishment, which depicts her in a partially or fully unclothed state. *See* Exhibit B at ¶9.

CHRIA defines "investigative information" as "[i]nformation assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." 18 Pa.C.S. § 9102. The investigative file and documents regarding the cases of *Commonwealth v. Rendell A. Hoagland*, CP-15-CR-0002704-2024 and *Commonwealth v. Cindy Marie Warren*, CP-15-CR-0002702-2024, clearly relate to a criminal incident as the criminal Defendants are charged in these cases with 282 criminal offenses including Murder of the First Degree and additional charges related to the long-term abuse, neglect, and eventual murder of 12-year-old Malinda Hoagland. *See* Exhibit B at ¶¶3-4. Therefore, the  requested records fall squarely into the definition of "investigative information," and dissemination of these records is prohibited to Plaintiff's under CHRIA.

Furthermore, in 2023, legislation became effective which expanded crime victims and defendants in civil actions to obtain investigative materials that would otherwise be barred by

CHRIA and is known as the Crime Victim Right of Access (hereinafter "CVRA"). *See* 18 Pa.C.S.A. § 9158, *et seq.* However, even under the CVRA, if a request relates to a request for dissemination of information that, absent reasonable redactions, "adversely affects an investigation or ongoing prosecution", the criminal justice agency *must* deny the request. 18 Pa.C.S.A. § 9158.3(a)(ii). The prosecution of the underlying criminal cases is still ongoing, and the cases are attached for trial in the Chester County Court of Common Pleas on June 8, 2026. *See* Exhibit B at ¶ 12. Plaintiffs in this civil case will be called as witnesses in the criminal trial. *See id.* at ¶14. Release of the requested information, which comprises the DAO's entire investigative file, prior to the criminal trial to witnesses who must testify based on their own memory and their personal knowledge would adversely affect the prosecution of these cases because it could result in in the disqualification of these witnesses in the criminal trial for violations of the rule involving sequestration. *See id.* This would also compromise the Defendants' right to a fair trial and the prosecution of these matters. *See id.* Therefore, even under the expanded access requirements for victims under the CVRA, that DAO is prohibited from disseminating the requested documents to Plaintiffs as requested in the Subpoena.

### b. The Subpoenaed Documents Constitute Protected Material Not Subject to Disclosure under Fed. R. Civ. P. 45. Rule 45(d)(3)(A)(iii)

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iii), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that […] requires disclosure of privileged or other protected matter, if no exception or waiver applies […]." This Court has previously analyzed the issue of whether CHRIA, a Pennsylvania state law, requires the Court to quash a subpoena for records relating to a criminal investigation and has found that "[…] CHRIA does not create a blanket privilege" and is discoverable under Fed. R.

Civ. P. 26. *Shetayh,* at *3. However, even though investigative information may not be privileged under CHRIA, this Court has found that investigative information is "confidential" and, therefore, "protected matter" under Rule 45(d)(3)(A)(iii). *Id.,* at *4. *See also, Piazza v. Young,* 2020 WL 6544979 (E.D. Pa. November 6, 2020). In *Shetayh,* this Court held that "[…] the confidentiality duties imposed by CHRIA make the material 'protected matter' that may be quashed pursuant to Federal Rule 45 […and….] [q]uashing the subpoena here not only complies with the text of Rule 45, but also satisfies the confidentiality concerns the Pennsylvania legislature had when enacting CHRIA." *Shetayh,* at *4.

The investigative records requested in the Subpoena are confidential under CHRIA and, therefore, constitute protected matter. As such, the DAO requests this Court quash the Subpoena as required by Rule 45(d)(3)(A)(iii).

### c. The DAO will be Exposed to Sanctions if it Complies with the Subpoena

Consistent with the express prohibitions of CHRIA, CHRIA exposes the DAO to administrative sanctions and civil penalties for violating the law. 18 Pa.C.S. §§ 9106(g), 9181, and 9183.[1] Violations of CHRIA can result in actions for actual and real damages, both

---

[1] Section 9106(g) provides:

> Any person, including any agency or organization, who violates the provisions of this section shall be subject to the administrative penalties provided in section 9181 (relating to general administrative sanctions) and the civil penalties provided in section 9183 (relating to civil actions) in addition to any other civil or criminal penalty provided by law.

18 Pa.C.S. § 9106(g).

Section 9181 provides:

> Any person, including any agency or organization, who violates the provisions of this chapter or any regulations or rules promulgated under it may:
> (1) Be denied access to specified criminal history record information for such period of time as the Attorney General deems appropriate.
> (2) Be subject to civil penalties or other remedies as provided for in this chapter.

exemplary and punitive. *Id.*; *Hunt v. Pennsylvania State Police*, 983 A.2d 627 (Pa. 2009). *See*

*Schmidt v. Deutsch. Larrimore, Farnish & Anderson. LLP*, 876 A.2d 1044 (Pa. Super. 2005)

(holding CHRIA clearly provides for civil actions against criminal and non-criminal agencies as

well as individuals). If the DAO disseminates its investigative file and documents, the DAO will

violate CHRIA and be exposed to sanctions and penalties. Therefore, the Subpoena must be

quashed.

> **ii.    The Subpoena Places and Undue Burden on the DAO as Releasing the DAO Records is Likely to Severely Interfere with the Prosecution of the Criminal Matters and the Right to a Fair Trial of the Criminal Defendants.**

Federal Rule of Evidence 45(d)(3)(iv) requires a court to quash or modify a subpoena that

"subjects a person to undue burden." Accordingly, a court may quash or modify a subpoena if it

finds that the movant has established that compliance with the subpoena would be "unreasonable

and oppressive." *See First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362,

---

(3) In the case of an employee of any agency who violates any provision of this chapter, be administratively disciplined by discharge, suspension, reduction in grade, transfer or other formal disciplinary action as the agency deems appropriate.

18 Pa.C.S. § 9181.

Section 9183 provides:

(a) Injunctions.--The Attorney General or any other individual or agency may institute an action in a court of proper jurisdiction against any person, agency or organization to enjoin any criminal justice agency, noncriminal justice agency, organization or individual violating the provisions of this chapter or to compel such agency, organization or person to comply with the provisions of this chapter.

(b) Action for damages.--

(1) Any person aggrieved by a violation of the provisions of this chapter or of the rules and regulations promulgated under this chapter, shall have the substantive right to bring an action for damages by reason of such violation in a court of competent jurisdiction.

(2) A person found by the court to have been aggrieved by a violation of this chapter or the rules or regulations promulgated under this chapter, shall be entitled to actual and real damages of not less than $100 for each violation and to reasonable costs of litigation and attorney's fees. Exemplary and punitive damages of not less than $1,000 nor more than $10,000 shall be imposed for any violation of this chapter, or the rules or regulations adopted under this chapter, found to be willful.

18 Pa.C.S. § 9183.

383 (E.D. Pa. 2013). In ruling upon objections to a subpoena, courts must balance the competing

factors of relevance, need, confidentiality and harm. *See id.* (*quoting Mannington Mills, Inc. v.*

*Armstrong World Indus., Inc.,* 206 F.R.D. 525, 529 (D.Del.2002)). However, even if the

information sought is relevant, discovery is not allowed where no need is shown, or where

compliance is unduly burdensome, or where the potential harm caused by production outweighs

the benefit." *Id; see also* Fed.R.Civ.P. 26(b)(2)(C). As previously shown, the requested DAO

records comprise the DAO's entire investigative criminal files in criminal capital cases.

Releasing these records prior to the conclusion of the underlying criminal capital trial is likely to

severely interfere with the prosecution of criminal matters and the right to a fair trial of the

criminal defendants.

First, Plaintiffs in this civil case will be witness in the criminal trial of Rendell Hoagland

and Cindy Warren that will take place in the Chester County Court of Common Pleas. *See*

Exhibit B at ¶¶3,14. The Pennsylvania Rules of Evidence provides for the sequestration of

witnesses "so that they cannot learn of the testimony of other witnesses." Pa.R.E. 615. The

purpose of this rule in criminal prosecutions in the Commonwealth is "to prevent a witness from

molding his testimony with that presented by other witnesses." *Commonwealth v. Counterman*,

553 Pa. 370, 399, (1998). The requested records include evidence gathered from dozens of

sources such as witnesses; cell phone records, text messages, pictures, and videos; in-home

surveillance camera recordings *See* Exhibit B at ¶14. Providing access or review of the materials

to Plaintiffs prior to trial may result in the disqualification of Plaintiffs as witnesses in the

criminal trial for violations of the rule involving sequestration. *See id.*

Second, public release of any of the requested information, even inadvertently, prior to

the conclusion of the criminal trials would taint the jury pool and interfere with right to a fair

trial of the criminal defendants. The right to jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors" and "[a] fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). A juror must be indifferent and "[h]is verdict must be based upon the evidence developed at the trial." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). The public release of any of the requested information would release into the public details of criminal cases that should not be known to potential jurors prior to adjudicating a case. *See* Exhibit B at ¶15.

Because the release of the requested information would likely disqualify witnesses in the underlying criminal trial and would likely taint the potential jury pool in the underlying criminal trial, the harm caused by production clearly outweighs the benefit. This is especially true considering the facts needed to establish probable cause in the criminal cases of Rendell Hoagland and Cindy Warren are laid out in detail in the affidavits of probable cause in the criminal complaints in the matters. *See* Exhibit B at Exhibit B. The criminal complaint in each case is 60 pages and the affidavits of probable cause are 42 pages. *See id.* Therefore, Plaintiffs have access already to the information needed to prosecute their civil claims. Release of the DAO's investigative file and evidence that will be used in the underlying criminal trial prior to the conclusion of the underlying criminal capital trial is likely to severely interfere with the prosecution of criminal matters and the right to a fair trial of the criminal defendants. Therefore, the potential harm caused by production outweighs the benefit, and the Subpoena must be quashed as unduly burdensome.

### iii.    CPSL Prohibits the Dissemination of the Requested Documents

Pennsylvania law restricts the information that may be released related to reporting of child abuse. *See* Pennsylvania Child Protective Services Law, 23 Pa.C.S. § 6301, *et seq*. Some

records contained in the DAO's investigative file are confidential reports of child abuse protected under § 6339 of the CSPL. Therefore, these records constitute "protected matter" under Fed. R. Civ. P. 45(d)(3)(A)(iii), and the subpoena should be quashed.

As detailed in the affidavits of probable cause in the criminal complaints of Rendell Hoagland and Cindy Warren, two General Protective Services ChildLine referrals were received by Chester County Children, Youth, and Family. *See* Exhibit B at Exhibit B. While these records are protected by CHRIA as investigative information as argued above, the CPSL also prohibits the release of these reports under section §6339 which states:

> …[R]eports made pursuant to this chapter, including, but not limited to, report summaries of child abuse and reports made pursuant to section 6313 (relating to reporting procedure) as well as any other information obtained, reports written or photographs or X-rays taken concerning alleged instances of child abuse in the possession of the department or a county agency shall be confidential.

23 Pa.C.S. §6339.

The CPSL, allows the release of some information to the "subject" of a report who makes a written request. 23 Pa.C.S. §6340(b). However, the Plaintiffs in this civil case are not expressly among those who are statutorily permitted to receive such reports under §6340(b). Specifically, § 6303 defines a "subject of a report" as "[a]ny child, parent, guardian or other person responsible for the welfare of a child or any alleged or actual perpetrator in a report made to the department or a county agency under this chapter." 23 P.S. 6303. This section defines "[p]erson responsible for the child's welfare" as "[a] person who provides permanent or temporary care, supervision, mental health diagnosis or treatment, training or control of a child in lieu of parental care, supervision and control." Furthermore, the CPSL protects from release disclosure the identity of the reporting source. *See* 23 Pa.C.S. §6340(c) ("the release of data…that would identify the person who made a report of suspected child abuse or who cooperated in a subsequent

investigation is prohibited." Since discovery by Plaintiffs of materials protected by the Child

Protective Services Law is prohibited by the provisions of the, these records constitute "protected

matter" under Fed. R. Civ. P. 45(d)(3)(A)(iii), and the subpoena should be quashed.

### iv.    The Subpoena is Overly Broad, the Records Sought are Not Relevant, and the Subpoena Does Not Allow Reasonable Time for the DAO to Comply.

Federal Rule of Civil Procedure 26(b)(1) delineates the general scope of discovery.

Pursuant to Federal Rule of Civil Procedure 26(b)(1):

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery **regarding any nonprivileged matter** that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and **whether the burden or expense of the proposed discovery outweighs its likely benefit.** Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphasis added).

While the scope of discovery under the Federal Rules is broad, it is not unlimited. *See*

*Bayer AG v. Betachem, Inc*., 173 F.3d 188, 191 (3d Cir. 1999). A party "may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The responses sought must

comport with the traditional notions of relevancy and must not impose an undue burden on the

responding party." *Hicks v. Arthur*, 159 F.R.D. 468, 470 (E.D. Pa. 1995). "Discovery should be

tailored to the issues involved in the particular case." *Kresefky v. Panasonic Commc'ns & Sys.

Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996). Additionally, when analyzing motions to quash courts use

a burden-shifting framework. *Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa. 2016). First, the

subpoenaing party must show that its request falls within the scope of Rule 26. *Id.* Meaning, a

party may use a subpoena only to seek "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If the subpoenaing party meets its burden, "the burden shifts to the party opposing the subpoena to establish that Rule 45(d)(3) provides a basis to quash the subpoena." *Green*, 314 F.R.D. at 169. Rule 45 requires courts to quash a subpoena that: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond [certain geographical limits]; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

### a.   The Scope of the Subpoena is Overly Broad.

The Third Circuit has recognized that, while the scope of discovery under the Federal Rules may be broad, under appropriate circumstances the court has discretion to limit and circumscribe this scope. *Bayer v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) (*citing Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1322 (Fed.Cir. 1990)). Rule 34(b) of the Federal Rules of Civil Procedures states that a request "must describe with reasonable particularity each item or category of items to be inspected". Fed.R.Civ.P. 34(b)(1)(A). "All-encompassing demands" that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A). *See Frank v. Tinicum Metal Co.*, 11 F.R.D. 83, 85 (E.D.Pa. 1950) ("a blanket request ... for the production of all books and records related to the subject matter is obviously too general and indefinite to be granted").

The Subpoena contains such blanket requests that fail the particularity standard. In particular, requests 4 and 5 seek "all letters, letters, correspondence, or other written communications" sent by anyone in the DAO to any other Chester County employee. *See* Exhibit A. Chester County employs approximately 2300 individuals across the 52 departments that make

up its government. Communications between all of these individuals and all employees of the DAO cannot possibly be relevant to this litigation. Similarly Requests 6, 7, 15, and 16 seek all communications between the DAO and any employee of Monroe County or the law firm MacMain Leinhauser P.C. without providing any subject matter for these communications. Again, any communications unrelated to the facts of this case cannot possibly be relevant, and the subpoena must be quashed. *See Michalski v. Little, No.* 1:22-CV-00262-SPB, 2025 WL 2108202, at *2 (W.D. Pa. July 28, 2025) (quashing a subpoena as overly broad and burdensome that contained sweeping requests with no contextual limitations).

**b.  The Records Sought are not Relevant.**

Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This concept of relevance is tempered, however, by principles of proportionality. Discovery sought must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" *Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 150 (M.D. Pa. 2017) (*quoting Wertz v. GEA Heat Exchangers Inc.*, No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

The Subpoena seeks the records of the DAO's investigation in the cases of Commonwealth v. Rendell A. Hoagland, CP-15-CR-0002704-2024 and Commonwealth v. Cindy Marie Warren, CP-15-CR-0002702-2024. Given the nature of the underlying criminal

charges, the DAO's investigative file is voluminous. *See* Exhibit B at ¶9. However, the facts needed to establish probable cause in the criminal cases of Rendell Hoagland and Cindy Warren are laid out in detail in the affidavits of probable cause in the criminal complaints in the matters. *See* Exhibit B at Exhibit B. The criminal complaint in each case is 60 pages, and the affidavits of probable cause are 42 pages. *See id.* Therefore, Plaintiffs have access already to the information needed to prosecute their civil claims. For the reasons stated *supra*, compliance with the Subpoena would be unduly burdensome, and, given the Plaintiffs already have access to the information needed to prosecute their civil claims, the subpoena is not proportional to the needs of the case, and the Subpoena must be quashed. *See Jackson v. Beard,* No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("Although the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.... Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information").

### c.  The Subpoena Does Not Allow a Reasonable Time for the DAO to Comply.

Rule 45(d)(3)(A)(i) requires a court to quash or modify a subpoena that "fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A). Even if the records requested from the DAO  are held to be discoverable, the volume of records that would need to be reviewed and produced makes compliance with the subpoena impossible in the time provided. The requested records include "thousands of pages of reports, over 30,000 pages of text messages, [and] 20-30 hours of interview video footage…." *See* Exhibit B at ¶9. Due to the nature of these records and their distressing content as well as a protective order issued by the presiding Judge in the Court of Common Pleas, review of the file has been limited to only the prosecuting attorney and the affiant in the criminal cases. *See id.* at ¶10. It would take these individuals approximately 8

weeks to review every item in the file to comply with the subpoena and would require them to forgo all other duties and investigations for that period of time. *See id.* This is significantly longer than the approximately 5 business days afforded in the subpoena. *See* Exhibit B at ¶ 6-8. Compliance with the subpoena would also risk the current attached trial date of the criminal trials since any disclosures made to Plaintiff would need to be made to the criminal Defendants. *See id.* at ¶13. Because the subpoena fails to allow an adequate time to respond, it must be quashed.

### B.   Motion for Protective Order for Stay Risk of Inadvertent Disclosure

Pursuant to Fed. R. Civ. P. 26(c)(1), a court may enter a protective order forbidding requested disclosure or discovery to protect a party from or person from annoyance, embarrassment, oppression, or undue burden or expense. A protective order may be issued pursuant to Rule 26(c) if the party requesting the order demonstrates "good cause." Fed. R. Civ. P. 26(c). When determining whether a protective order should be issued, a court must balance the party requesting discovery's "need for information against the injury that might result if uncontrolled disclosure is compelled" to determine whether the party requesting the order has shown good cause. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) (quotation omitted). The factors considered in this balancing process include whether the party requesting discovery has a legitimate need for the information, whether the party requesting the order has an interest in privacy, and whether sharing the information would promote fairness and efficiency. *See id.* at 787–88.

As discussed *supra*, Plaintiffs have the information required to prosecute their claims through publicly available records and through discovery that has already proceeded in this case. The DAO is not a party to this litigation, and neither are the criminal Defendants the DAO is

prosecuting. Thus the Plaintiffs do not have a legitimate need for the DAO's entire investigative file. Again, as discussed *supra*, in contrast, the DAO has a great interest in privacy. First, the records requested comprise the DAO's entire investigative file in criminal capital cases and are protected from dissemination pursuant to CHRIA. *See* 18 Pa.C.S. § 9106(c)(4). Therefore, Pennsylvania law has already recognized the DAO's privacy interest.

Additionally, the DAO has an interest in the privacy of these records so that it can prosecute these capital cases without interference and without being required to disseminate information that will disqualify witnesses and violate the criminal Defendants' sacrosanct right to a fair trial. Plaintiffs in this civil case will be witnesses in the criminal trial of Rendell Hoagland and Cindy Warren that will take place in the Chester County Court of Common Pleas. *See* Exhibit B at ¶¶3,14. Providing access or review of the materials to Plaintiffs prior to trial may result in the disqualification of Plaintiffs as witnesses in the criminal trial for violations of the rule involving sequestration. *See id.* ¶14. Additionally, public release of any of the requested information, even inadvertently, prior to the conclusion of the criminal trials would taint the jury pool and interfere with right to a fair trial of the criminal defendants. "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The criminal Defendants must be afforded a fair trial. If the DAO is forced to comply with the Subpoena, this right of the criminal Defendants would be threatened. Therefore, the DAO's interest in privacy outweighs any purported need for the requested records and a protective order must be entered.

Furthermore, although the court could attempt to restrict dissemination of information gained through civil discovery through the protective order, the possibility of inadvertent

disclosure is not insubstantial. Given the harm such disclosure would cause, a protective order staying discovery of the DAO's investigative records until the conclusion of the criminal trial is needed. *See Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980) (holding that a limited stay was required of a civil antitrust case where the civil defendant also faced a criminal antitrust proceeding, and the burden of civil discovery and motion practice would seriously hamper them in their preparations for the criminal proceeding). The Subpoena cannot be adequately modified nor can a protective order limiting dissemination of subpoenaed records adequately protect against the release of protected information under CHRIA or this undue burden due to the risk of inadvertent disclosure. Therefore, the subpoena must be quashed until the conclusion of the underlying criminal trials in the criminal capital cases *Commonwealth v. Rendell A. Hoagland*, CP-15-CR-0002704-2024 and *Commonwealth v. Cindy Marie Warren*, CP-15-CR-0002702-2024, and a protective order must be entered staying discovery pertaining to the DAO's prosecution of these criminal capital cases.

### C.  CONCLUSION

For all the foregoing reasons, the DAO respectfully requests that this Honorable Court enter the proposed Order Quashing the Subpoena and entering a Protective Order.


Respectfully submitted,


DATED: <u>December 5, 2025</u>            By:    <u>Faith Baldini</u>
                                                Faith Mattox-Baldini
                                                Deputy Solicitor, County of Chester
                                                313 W. Market St., Suite 6702
                                                P.O. Box 2748
                                                West Chester, PA  19381-0991
                                                *Attorney for Non-Party DAO*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EMILY LEE, JAMIE HOAGLAND,** | : | |
| **ABBEY HOAGLAND, as Co-** | : | |
| **Administrators of the Estate of Malinda** | : | |
| **Hoagland,** | : | |
| **Plaintiffs,** | : | **Civil Action No. 2:24-cv-04180** |
| | : | |
| **v.** | : | |
| | : | |
| **COUNTY OF CHESTER, COUNTY** | : | |
| **OF MONROE, ADELAIDE GRACE,** | : | |
| **EVE LARGE, and DOUG WAEGEL** | : | |
| **Defendants.** | : | |
| | : | |

## <u>CERTIFICATE OF COUNSEL</u>

Given the time constraints contained in the Court's November 26, 2025 Order and the additional requirements of the Order,  undersigned counsel is unable to confer with counsel for the Plaintiffs who issued the Subpoena to resolve the dispute.


DATED: <u>12/5/2025</u>          By: _____

Faith Mattox-Baldini
Deputy Solicitor, County of Chester
313 W. Market St., Suite 6702
P.O. Box 2748
West Chester, PA  19381-0991
*Attorney for Non-Party DAO*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EMILY LEE, JAMIE HOAGLAND,** : | |
| **ABBEY HOAGLAND, as Co-** : | |
| **Administrators of the Estate of Malinda** : | |
| **Hoagland,** : | |
| **Plaintiffs,** : | **Civil Action No. 2:24-cv-04180** |
| : | |
| **v.** : | |
| : | |
| **COUNTY OF CHESTER, COUNTY** : | |
| **OF MONROE, ADELAIDE GRACE,** : | |
| **EVE LARGE, and DOUG WAEGEL** : | |
| **Defendants.** : | |
| : | |

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Non-party Chester County District

Attorney's Office's Motion to Quash Subpoena to Produce Documents, Information, or Objects

or to Permit Inspection of Premises in a Civil Action, supporting Brief, and proposed Order has

been served upon the following counsel of record via ECF notification:

| | | |
|---|---|---|
| Thomas Bosworth, Esq. | David J. MacMain | Gerard J. Geiger, Esq. |
| Terrance R. DeAngelo, Esq. | Stephen G. Rhoads | Newman Williams, P.C. |
| Benjamin J. Phelps, Esq. | MacMain Leinhauser PC | 712 Monroe Street |
| Isaac Santiago, Esq. | 433 W. Market Street, Suite 200 | P.O. Box 511 |
| Bosworth Law, LLC | West Chester, PA 19382 | Stroudsburg, PA 18360-0511 |
| 123 S. Broad Street, Suite 1620 | *Attorney for Defendants,* | *Attorney for Monroe County* |
| Philadelphia, PA 19109 | *County of Chester,* | *Defendants* |
| *Attorney for Plaintiffs* | *Eve Large and Doug Waegel* | |

DATED: 12/5/2025          By: _____
                              Faith Mattox-Baldini
                              Deputy Solicitor, County of Chester
                              313 W. Market St., Suite 6702
                              P.O. Box 2748
                              West Chester, PA 19381-0991
                              *Attorney for Non-Party DAO*