IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMILY LEE, JAMIE HOAGLAND**, and **ABBEY HOAGLAND**, Individually and as Co-administrators of the **ESTATE OF MALINDA HOAGLAND**,<br><br>*Plaintiff,*<br><br>v.<br><br>**COUNTY OF CHESTER.**<br><br>*Defendants*. | Case No. 2.:24-cv-4180 |

**PLAINTIFFS' REPLY IN FURTHER OPPOSITION TO TAMI MILLER, POWER OF ATTORNEY FOR RONDALYN SMITH'S MOTION FOR LEAVE TO INTERVENE**

Angry that they weren't hired as the plaintiffs' lawyers in this civil action, lawyers for Tami Miller and Rondalyn Smith continue to try to exploit this litigation process in an unapologetic attempt to collect an attorney's fee off the back of Plaintiffs' counsel. Unable to point to any evidence or facts of record, counsel for Ms. Miller and Ms. Smith rely on rhetoric and uncited assertions. But putting aside the rhetoric of Ms. Smith's and Ms. Miller's lawyers, these are the facts:

- Tami Miller, Rondalyn Smith's Power of Attorney, was deposed today, December 16, 2025, in this litigation;

- During Ms. Miller's deposition, Ms. Miller testified that she does *not* believe that any of the Plaintiffs (Emily Lee, Jamie Hoagland, or Abbey Hoagland) are attempting to "cut out" Ms. Smith from this lawsuit;

- During Ms. Miller's deposition, Ms. Miller testified that she did receive notice of the Plaintiffs' intent to be named Administrators of the Estate. Specifically, Ms. Miller testified that she received the notice paperwork from an employee at White Hall Manor—where Ms. Smith resides—who provided Ms. Miller this paperwork the day (or the next day after)

1

the notice papers were served upon Ms. Smith at White Hall Manor. Ms. Miller further testified she read these notice papers when she received them the day (or day after) they had been served. Neither Ms. Smith nor Ms. Miller ever filed or served any objection or opposition to these notice papers in which Plaintiffs notified them their intent to be named administrators of the estate.[1]

- Plaintiffs' operative Complaint in this lawsuit explicitly lists Rondalyn Smith as a wrongful-death beneficiary;

- Plaintiffs, Emily Lee, Jamie Hoagland, and Abbey Hoagland, were deposed yesterday on December 15, 2025. Zero testimony was adduced during any of these depositions that indicated that any Plaintiff is in any way attempting to cut out Rondalyn Smith from this lawsuit;

- Malinda's biological mother, Rondalyn Smith, was deposed on December 16, 2025.

Both depositions which lawyers for Ms. Smith and Ms. Miller claim needed to occur (*i.e.* the depositions of Ms. Smith and Ms. Miller) for purposes of this lawsuit have occurred. Thus, there is no purpose for the continued involvement or presence of counsel for Ms. Miller or Ms. Smith. At this point, it is clear that lawyers for Ms. Smith and Ms. Miller's only purpose is to attempt to piggyback on the work performed by Plaintiffs' retained counsel to attempt to gouge a fee from the estate. This is buttressed by the fact that the witnesses themselves do not share the conspiracy-theory view of their own lawyers.

This Court should refrain from wading into the merits of the underlying Orphans' Court matter. With that said, the Court should note that all or nearly all of intervenors' allegations

---

[1] Again, Plaintiffs were represented by experienced counsel, Bellwoar Kelly LLP, in the process of opening the estate and Bellwoar Kelly, LLP, properly and timely executed and served this notice upon Ms. Smith and Ms. Miller.

regarding the underlying Orphans' Court matter are bereft of any citation to any exhibits supporting their allegations. On the contrary, Plaintiffs' counsel has provided, as an exhibit to Plaintiffs' response in opposition to the motion to intervene, clear evidence: a September 2025 Court Order in Orphans' Court allowing for limited discovery (which intervenors inexplicably allowed to lapse) and preventing intervenors' counsel from obtaining Plaintiffs' litigation file or deposing Plaintiffs' counsel.

Counsel for Ms. Miller and Ms. Smith cite to a video interview Plaintiff, Emily Lee, conducted in which Ms. Lee stated that she believed Malinda's biological mother was "not in the picture" at the time Plaintiffs were attempting to obtain Malinda's autopsy report after her death. From this, counsel for Ms. Miller and Ms. Smith attempt to argue Plaintiffs are not representing Ms. Smith's interests in this litigation. That just is not true. Indeed, during her deposition, when asked about this very statement, Ms. Lee testified she did not *not* mean, when she made that statement during the video interview, that she believed Ms. Smith abandoned Malinda during Malinda's life.[2]

Counsel for intervenors falsely claim that Plaintiffs did not produce in this litigation letters sent by Malinda's mother (Ms. Smith) to Malinda. Plaintiffs' counsel did do this. Specifically, Plaintiffs' counsel produced to opposing counsel in this litigation various letters and birthday cards that Rondalyn Smith sent to Malinda Hoagland. *See* Letter from Ms. Smith to Rendell Hoagland (P000042), 1/10/24 Letter from Ms. Smith to Rendell (P000043), Birthday Card Sent from Ms.

---

[2] Given that the depositions of Plaintiffs, Ms. Smith, and Ms. Miller just occurred, the stenographers have not yet produced the transcripts for these depositions. Plaintiffs respectfully request that, to the extent the Court is not inclined to deny the motion to intervene outright—which the Court should do—the Court then refrain from ruling on this motion unless and until the depositions transcripts of Plaintiffs, Ms. Smith, and Ms. Miller, have been produced any briefed by the parties. With that said, intervention should be denied as Ms. Smith and Ms. Miller have been deposed, and this Court should not wade into the intervenors' attempts to interfere in this litigation because they are not getting the result they want in the underlying Orphans' Court litigation.

3

Smith to Rendell Hoagland (P00046-P000048), Letter from Malinda to Ms. Smith (P000049-P000050), Typed Letter from Ms. Smith to Rendell Hoagland (P000051), attached collectively as Exhibit "A." Of course, Plaintiffs' production of these letters directly eviscerates Ms. Smith's and Ms. Miller's lawyers' unsupported claim that Plaintiffs are somehow attempting to "cut out" Ms. Smith, and any prospective damages she has sustained, from this lawsuit.

Of note, during Ms. Smith's deposition, Ms. Smith testified she personally witnessed Cindy Warren attempt to hit Malinda. Ms. Smith also testified that she witnessed Cindy Warren grab Malinda's arm and attempt to forcibly bathe Malinda. Ms. Smith testified she witnessed abuse of Malinda by Cindy Warren in Ms. Warren's and Mr. Hoagland's home in Coatesville, Pennsylvania. Ms. Smith testified that she did not tell anybody about witnessing any of this before Malinda died. Ms. Smith testified that her deposition, on December 16, 2025, is the first time she ever notified anybody about this. Ms. Smith also testified that she witnessed Malinda with a black eye in the presence of Cindy Warren and Rendell Hoagland.[3]

---

[3] Irrespective of whether this testimony bears any relation to Ms. Smith's right to collect monies from any settlement, it raises significant concerns that counsel for defendants in this litigation would rely upon this evidence to argue that Ms. Smith was comparatively negligent or contributorily negligent were Ms. Smith to be substituted in as Plaintiff/Administrator of the Estate. Since Ms. Smith is not at this time a Plaintiff in this action, luckily, defendants cannot presently argue that this testimony can support any claim or defense of comparative/contributory negligence.

Moreover, during the deposition of Tami Miller (Ms. Smith's power of attorney), Ms. Miller testified that she received a letter years before Malinda died warning her that Cindy Warren was a "killer" and "dangerous" and should not be in the presence of Malinda. To date, despite its relevance, counsel for Ms. Miller have not produced this letter. Ms. Miller also testified that she was notified, before Malinda died, that Malinda sustained a black eye or bruise on her eye while under the care of Rendell Hoagland and Cindy Warren. Ms. Miller testified she did not notify any authorities about this before Malinda's death. Ms. Miller testified she became aware in 2020 of the custody agreement between Rendell Hoagland and Rondalyn Smith which prohibited Malinda from being "left in the care of Cindy Warren, Father's fiancé, for any period of time exceeding one (1) hour unless expressly agreed upon by Mother and Father through written communication." Ms. Miller also testified that she became aware of Cindy Warren's criminal background prior to Malinda's death. In response to questions posed by counsel for defendant, Chester County, at her deposition, Ms. Miller testified that there were "many things we should have done" while Malinda was alive, that she feels "horrible" that she "downplayed" Malinda's black eye, that she feels "guilt" about what happened to Malinda, and that she "should have" gone to see Malinda at Ms. Warren and Mr. Hoagland's Coatesville residence while Malinda was alive. [4]

|  |  |
|---|---|
|  | By:    **BOSWORTH LAW, LLC** |
|  | */s/ Thomas E. Bosworth*<br>**THOMAS E. BOSWORTH, ESQ.**<br>Bosworth DeAngelo, LLC<br>123 S. Broad St., Suite 1620<br>Philadelphia, PA 19109<br>tom@bosworthdeangelo.com<br>*Counsel for Plaintiffs* |
| Date: 12/16/25 |  |

---

[4] Given Ms. Miller's legal status as power of attorney for Rondalyn Smith before Malinda's death, this too raises similar concerns regarding defendants' ability to make out comparative/contributory negligence arguments against the estate were Ms. Miller to be substituted in as Plaintiff/administrator of the estate.